UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: Refrigerant Compressors<br>Antitrust Litigation<br><br><br>This Document Relates to<br> ALL DIRECT PURCHASER ACTIONS | **Case No. 2:09-md-02042**<br><br>**Honorable Sean F. Cox**<br><br>**MASTER AMENDED COMPLAINT**<br><br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

# TABLE OF CONTENTS

**Page**

NATURE OF THE CASE ................................................................................................ 1

JURISDICTION AND VENUE ..................................................................................... 2

PARTIES ......................................................................................................................... 3

    Plaintiffs ..................................................................................................................... 3

    Defendants .................................................................................................................. 4

        The Tecumseh Defendants............................................................................. 4
        The Whirlpool Defendants............................................................................. 5
        The Danfoss Defendants ................................................................................ 7
        The ACC Defendants...................................................................................... 8
        The Panasonic Defendants............................................................................. 9

AGENTS AND CO-CONSPIRATORS ....................................................................... 10

INTERSTATE TRADE AND COMMERCE .............................................................. 10

CLASS ACTION ALLEGATIONS ............................................................................ 11

THE COMPRESSOR INDUSTRY ............................................................................. 14

DEFENDANTS' PRICE-FIXING CONSPIRACY .................................................... 14

THE CHARACTERISTICS OF THE COMPRESSOR MARKET ARE CONDUCIVE
TO COLLUSION........................................................................................................... 19

TECUMSEH'S ADMISSION OF A CRIMINAL ANTITRUST VIOLATION ......... 19

OTHER INVESTIGATIONS ...................................................................................... 20

PLAINTIFFS AND THE CLASS SUFFERED ANTITRUST INJURY .................... 22

FRAUDULENT CONCEALMENT............................................................................. 22

CLAIM FOR VIOLATION OF SHERMAN ACT § 1 ............................................... 24

PRAYER FOR RELIEF ............................................................................................... 25

JURY DEMAND .......................................................................................................... 26

Plaintiffs, on behalf of themselves, and all others similarly situated (the "Class"), bring this action for damages under the federal antitrust laws against defendants, demanding trial by jury, and allege as follows:

## NATURE OF THE CASE

1.      This lawsuit is brought as a class action on behalf of plaintiffs and all individuals and entities that purchased Refrigerant Compressor Products, as defined below, directly from one or more of the defendants during the period from and including January 1, 2004 up to and including December 31, 2008 (the "Class Period").  "Refrigerant Compressor Products" are fractional compressors, that is, compressors of less than one horsepower ("Compressors"), as well as products containing such Compressors.  Compressors does not include compressors used in air conditioners, and Refrigerant Compressor Products does not include air conditioners.

2.      Defendants Tecumseh, Whirlpool, Danfoss, ACC and Panasonic (as defined below) are the five largest manufacturers and sellers of Compressors sold in the United States. Compressors are a multi-billion dollar industry and are used for refrigeration purposes or in refrigeration products, such as, among others, condensers, residential and commercial refrigerators, freezers and water coolers.

3.      During the Class Period, defendants conspired to inflate, fix, raise, maintain, or artificially stabilize prices and to commit other anti-competitive acts for the purpose and effect of unlawfully inflating, fixing, raising, maintaining, or artificially stabilizing prices of Compressors, which had the effect of unlawfully inflating, fixing, raising, maintaining, or artificially stabilizing prices of Refrigerant Compressor Products.

4.      Defendant Tecumseh Products Company ("Tecumseh Products") admitted to having committed a criminal violation of United States antitrust laws in connection with its sales of Compressors.  The Antitrust Division of the United States Department of Justice ("DOJ") has

provided Tecumseh Products conditional leniency in exchange for full cooperation by Tecumseh Products in the DOJ's investigation of anti-competitive practices in the Refrigerant Compressor Products industry.  Other defendants have received grand jury subpoenas from the DOJ, which is conducting a criminal investigation by means of a grand jury sitting in the Eastern District of Michigan.

5.      As a direct result of the anti-competitive and unlawful conduct alleged herein, plaintiffs and the Class paid artificially inflated prices for Refrigerant Compressor Products during the Class Period and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

6.      Plaintiffs and the Class bring this action under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover damages, including treble damages, for the injuries sustained by plaintiffs and the Class resulting from violations by defendants of Sherman Act § 1, 15 U.S.C. § 1.

7.      This Court has jurisdiction over the subject matter of this action pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. §§ 1331 and 1337.

8.      Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anti-competitive effects upon interstate commerce within the United States, and upon import trade and commerce with the United States.

9.      Venue is proper in this district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this district, and one or more of the defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this district.

10.    This Court has *in personam* jurisdiction over each of the defendants because, *inter alia*, each defendant:  (a) transacted business in the United States, including in this district; (b) directly or indirectly sold or marketed substantial quantities of Refrigerant Compressor Products throughout the United States, including in this district; (c) had substantial aggregate contacts with the United States as a whole, including in this district; or (d) was engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this district.

11.    The activities of the defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States.

## PARTIES

### Plaintiffs

12.    Plaintiff Appliance Parts Distributors, Inc. ("APD") is a Pennsylvania corporation with its principal place of business in Croydon, Pennsylvania.  During the Class Period, APD purchased Refrigerant Compressor Products directly from one or more defendants and has been injured in its business or property by reason of the antitrust violations alleged in this complaint.

13.    Plaintiff B & B Appliance Parts of Mobile, Inc. ("B&B") is an Alabama corporation with its principal place of business in Mobile, Alabama.  During the Class Period, B&B purchased Refrigerant Compressor Products directly from one or more defendants and has been injured in its business or property by reason of the antitrust violations alleged in this complaint.

14.    Plaintiff OK TV & Appliances, LLC ("OK TV") is a Hawaii limited liability company with its principal place of business in Pearl City, Hawaii.  During the Class Period, OK TV purchased Refrigerant Compressor Products directly from one or more defendants and has

been injured in its business or property by reason of the antitrust violations alleged in this complaint.

15.     Plaintiff Sanden Vendo America, Inc. ("Sanden Vendo") is a Delaware corporation with its principal place of business in Dallas, Texas.  During the Class Period, Sanden Vendo purchased Refrigerant Compressor Products directly from one or more defendants and has been injured in its business or property by reason of the antitrust violations alleged in this complaint.

16.     Plaintiff The Mitchell Company, Inc. ("Mitchell") is an Alabama corporation with its principal place of business in Mobile, Alabama.  During the Class Period, Mitchell purchased Refrigerant Compressor Products directly from one or more defendants and has been injured in its business or property by reason of the antitrust violations alleged in this complaint.

17.     Plaintiff Wettstein and Sons, Inc. ("Wettstein's") is a Wisconsin corporation with its principal place of business in La Crosse, Wisconsin.  During the Class Period, Wettstein's purchased Refrigerant Compressor Products directly from one or more defendants and has been injured in its business or property by reason of the antitrust violations alleged in this complaint.

**Defendants**

**The Tecumseh Defendants**

18.     Defendant Tecumseh Products Company is a Michigan corporation with its principal place of business in Ann Arbor, Michigan.  Tecumseh Products employs over 10,000 people worldwide and is one of the world's largest independent producers of Compressors.  During the Class Period, Tecumseh Products marketed and sold Refrigerant Compressor Products in the United States, including in this district.  Tecumseh Products manufactures Refrigerant Compressor Products in the United States and elsewhere.

19.     Defendant Tecumseh Compressor Company ("Tecumseh Compressor") is a Delaware corporation with its principal place of business in Ann Arbor, Michigan.  Tecumseh Compressor is a wholly-owned subsidiary of defendant Tecumseh Products.  During the Class Period, Tecumseh Compressor, either directly, or through its subsidiaries, manufactured, marketed or sold Refrigerant Compressor Products in the United States, including in this district.

20.     Defendant Tecumseh do Brasil, Ltda. ("Tecumseh Brasil") was at relevant times a Brazilian corporation with its principal place of business in São Carlos, Brazil.  Tecumseh Brasil was wholly-owned by Tecumseh Products.  During the Class Period, Tecumseh Brasil, either directly or through its subsidiaries, manufactured Compressors in Brazil that it marketed and sold in the United States, including in this district.  Tecumseh Brasil was Tecumseh Product's largest foreign manufacturing source of Compressors.

21.     Defendant Tecumseh do Brasil USA, LLC ("Tecumseh Brasil USA") was a Delaware limited liability company.  Tecumseh Brasil USA was at relevant times wholly-owned by defendant Tecumseh Brasil.  During the Class Period, defendant Tecumseh Brasil USA, either directly or through its parent, subsidiaries or affiliates, manufactured Compressors in Brazil which it marketed and sold in the United States, including in this district.

22.     Defendants Tecumseh Products, Tecumseh Compressors, Tecumseh Brasil, and Tecumseh Brasil USA are collectively referred to herein as "Tecumseh."

**The Whirlpool Defendants**

23.     Defendant Whirlpool Corporation is a Delaware corporation with its principal place of business in Benton Harbor, Michigan.  Whirlpool Corporation is the world's leading manufacturer and marketer of major home appliances, with annual sales of approximately $19 billion, 70,000 employees, and 69 manufacturing and technology research centers around the

world.  Beginning in 1997, Whirlpool Corporation possessed an ownership interest in Empresa Brasileria de Compressores S.A. ("Embraco"), through its partial ownership of Multibrás S.A. Electrodomesticos ("Multibrás"), which in turn wholly-owned Embraco.  As explained below, in 2006, Whirlpool Corporation acquired full ownership of Multibrás, and Multibrás was merged with Embraco to create Whirlpool S.A.  During the Class Period, Whirlpool Corporation manufactured, marketed, and sold Refrigerant Compressor Products in the United States, including in this district.

24.     Defendant Whirlpool S.A is a wholly-owned subsidiary of Whirlpool Corporation with its principal place of business in Joinville, Brazil.  Whirlpool S.A. came into existence in 2006 when Whirlpool Corporation merged Multibrás and Embraco, and the surviving entity was named Whirlpool S.A.  Embraco was a Brazilian company with its principal place of business in Joinville, Brazil.  Embraco, and now Whirlpool S.A., comprise Whirlpool's Refrigerant Compressor Products business.  Whirlpool S.A. employs approximately 10,000 people worldwide, including in sales offices in the United States.  Whirlpool S.A. has a production capacity of 27 million compressors per year and holds itself out as the world's leading hermetic compressor manufacturer with annual sales of about $1.5 billion.  Embraco, and now Whirlpool S.A.,  has sold Refrigerant Compressor Products since at least 1978, including selling Refrigerant Compressor Products in the United States.  Defendant Whirlpool Corporation dominated and controlled the finances, policies, and affairs of Embraco and Whirlpool. S.A. relating to the antitrust violations alleged in this complaint.

25.     Defendant Embraco North America, Inc. ("Embraco N. A.") is a wholly-owned subsidiary of Embraco and now Whirlpool S.A.  Embraco N.A. is a Delaware company with its principal place of business in Suwanee, Georgia.  Embraco N.A. is responsible for, among other

things, selling Embraco Refrigerant Compressor Products in North America, including in the United States.  During the Class Period, Embraco N.A. marketed and sold Refrigerant Compressor Products in the United States, including in this district.  Defendants Whirlpool Corporation and Embraco dominated and controlled the finances, policies, and affairs of Embraco N.A. relating to the antitrust violations alleged in this complaint.

26.     Defendants Whirlpool Corporation, Whirlpool S.A., Embraco, and Embraco N.A. are collectively referred to herein as "Whirlpool."

### The Danfoss Defendants

27.     Defendant Danfoss A/S is a privately-held Danish company with its principal place of business in Nordborg, Denmark.  Danfoss A/S operates globally as a leading supplier of Refrigerant Compressor Products.  Danfoss A/S' products are sold in 115 countries, including countries in Europe, North America, South America, Asia/Pacific, and Australia.  During the Class Period, Danfoss A/S manufactured, marketed and sold Refrigerant Compressor Products in the United States, including in this district.

28.     Defendant Danfoss, Inc. is a Delaware corporation with its principal place of business in Baltimore, Maryland.  Defendant Danfoss, Inc. is an indirectly-owned subsidiary of defendant Danfoss A/S.  During the Class Period, Danfoss, Inc. manufactured, marketed and sold Refrigerant Compressor Products in the United States, including in this district.  Defendant Danfoss A/S dominated and controlled the finances, policies, and other affairs of Danfoss, Inc. relating to the antitrust violations alleged in this complaint.

29.     Defendant Danfoss Commercial Compressors, Ltd. ("DCC") is a Delaware corporation with its principal place of business in Lawrenceville, Georgia.  DCC, either directly or indirectly, is a wholly-owned subsidiary of defendant Danfoss A/S.  During the Class Period,

DCC manufactured, marketed, and sold Refrigerant Compressor Products in the United States, including in this district.  Defendant Danfoss A/S dominated and controlled the finances, policies, and affairs of DCC relating to the antitrust violations alleged in this complaint.

30.     Defendant Danfoss Scroll Technologies, LLC f/k/a Scroll Technologies, LLC ("DST") is a Delaware limited liability company with its principal place of business in Arkadelphia, Arkansas.  DST, either directly or indirectly, is a wholly-owned subsidiary of defendant Danfoss A/S.  During the Class Period, DST manufactured, marketed and sold Refrigerant Compressor Products in the United States, including in this district.  Defendant Danfoss A/S dominated and controlled the finances, policies, and affairs of DST relating to the antitrust violations alleged in this complaint.

31.     Defendant Danfoss Turbocor Compressors, Inc. ("DTC") is a Delaware corporation with its principal place of business in Tallahassee, Florida.  DTC, either directly or indirectly, is a wholly-owned subsidiary of defendant Danfoss A/S.  During the Class Period, DTC manufactured, marketed and sold Refrigerant Compressor Products in the United States, including in this district.  Defendant Danfoss A/S dominated and controlled the finances, policies, and affairs of DTC relating to the antitrust violations alleged in this complaint.

32.     Defendants Danfoss A/S, Danfoss, Inc., DST, DTC, and DCC are collectively referred to herein as "Danfoss."

**The ACC Defendants**

33.     Defendant Appliances Components Companies SpA ("ACC SpA") is an Italian company with its principal place of business in Pordenone, Italy.  During the Class Period, ACC SpA, directly and through its subsidiaries, marketed and sold Refrigerant Compressor Products in the United States, including in this district.  ACC SpA manufactures its Refrigerant

Compressor Products in Italy, Austria and China.  Its annual production is 18 million Compressors.

34.     Defendant ACC USA, LLC ("ACC USA") is a limited liability company with its principal place of business in Madison, Alabama.  ACC USA is wholly-owned by defendant ACC SpA.  During the Class Period, ACC USA marketed and sold Refrigerant Compressor Products in the United States, including in this district.  Defendant ACC SpA dominated and controlled the finances, policies, and affairs of ACC USA relating to the antitrust violations alleged in this complaint.

35.     Defendants ACC SpA and ACC USA are collectively referred to herein as "ACC."

### The Panasonic Defendants

36.     Defendant Panasonic Corporation f/k/a Matsushita Electric Industrial Co., Ltd. ("Panasonic Corporation") is a Japanese corporation with its principal place of business in Osaka, Japan.  During the Class Period, Panasonic Corporation, directly and through its subsidiaries, manufactured, marketed and sold Refrigerant Compressor Products in the United States, including in this district.

37.     Defendant Panasonic Corporation of North America ("Panasonic NA") is a Delaware corporation with its principal place of business in Secaucus, New Jersey.  Panasonic NA is a wholly-owned subsidiary of defendant Panasonic Corporation.  During the Class Period, Panasonic NA manufactured, marketed and sold Refrigerant Compressor Products in the United States, including in this district.  Defendant Panasonic Corporation dominated and controlled the finances, policies, and affairs of Panasonic NA relating to the antitrust violations alleged in this complaint.

9

38.     Defendants Panasonic Corporation and Panasonic NA are collectively referred to herein as "Panasonic."

## AGENTS AND CO-CONSPIRATORS

39.     Each defendant acted as the principal, agent, or for other defendants with respect to the acts, violations, and common course of conduct alleged by plaintiffs.

40.     Various other persons, firms, and corporations not named as defendants have participated as co-conspirators with the defendants and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

41.     Whenever this complaint refers to any act, deed, or transaction of any corporation or limited liability entity, that allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's or limited liability entity's business or affairs.

## INTERSTATE TRADE AND COMMERCE

42.     The defendants are the leading manufacturers of Compressors sold both globally and in the United States.

43.     During the Class Period, each defendant, or one or more of its subsidiaries, sold Refrigerant Compressor Products throughout the United States in a continuous and uninterrupted flow of interstate commerce, including through and into this judicial district.

44.     Defendants' and their co-conspirators' activities, and the marketing and sale of Refrigerant Compressor Products, have taken place within, and have had and were intended to have, a direct, substantial, and reasonably foreseeable anti-competitive effect upon interstate commerce within the United States and upon import commerce with foreign nations.

45.     The restraints alleged in this complaint have directly and substantially affected interstate commerce in that defendants have deprived plaintiffs and the Class of the benefits of free and open competition in the purchase of Refrigerant Compressor Products throughout the United States.

46.     Defendants' agreement to inflate, fix, raise, maintain or artificially stabilize prices of Refrigerant Compressor Products and their actual inflating, fixing, raising, maintaining or artificially stabilizing of those prices was intended to and had a direct, substantial and reasonably foreseeable effect on United States commerce and on import trade and commerce with the United States.

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs bring this action on behalf of themselves and, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), as representatives of a Class defined as follows:

> All persons or entities (but excluding government entities and defendants, their officers, directors, and employees, as well as defendants' parents, predecessors, successors, subsidiaries, affiliates) who purchased Refrigerant Compressor Products in the United States, its territories or possessions, directly from any defendant, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from and including January 1, 2004 up to and including December 31, 2008.  "Refrigerant Compressor Products" are compressors of less than one horsepower ("Compressors"), as well as products containing such Compressors.  Compressors does not include compressors used in air conditioners, and Refrigerant Compressor Products does not include air conditioners.

48.     The Class definition encompasses those who bought a Refrigerant Compressor Product directly from a defendant, even if the Compressor contained therein was manufactured by an affiliated entity, principal, agent, or co-conspirator.

49.     Members of the Class are so numerous and geographically dispersed across the United States that joinder is impracticable.  While the exact number of Class members is unknown to plaintiffs, it is believed to be in the tens of thousands and geographically dispersed

throughout the United States.  Furthermore, the Class is readily identifiable from information and records in possession of the defendants.

50.     Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and the Class were damaged by the same wrongful conduct by the defendants, that is, they have paid artificially inflated prices for Refrigerant Compressor Products as a result of defendants' anti-competitive and unlawful conduct.

51.     Plaintiffs are members of the Class and will fairly and adequately protect and represent the interests of the Class.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the Class.

52.     Plaintiffs are represented by counsel who are experienced and competent in the prosecution of class action antitrust litigation.

53.     Questions of law and fact common to the Class predominate over questions, if any, that may affect only individual Class members because defendants have acted on grounds generally applicable to the entire Class.  Such generally applicable conduct is inherent in defendants' anti-competitive and unlawful conduct.

54.     Questions of law and fact common to the Class include, but are not limited to:

a.      Whether the defendants combined, agreed, or conspired to fix, raise, maintain, or stabilize the prices of Refrigerant Compressor Products sold in the United States;

b.      The existence, extent and duration of the illegal contract, combination, or conspiracy alleged herein;

c.      Whether the contract, combination, or conspiracy caused prices of Refrigerant Compressor Products to be higher than they would have been in the absence of defendants' conduct;

    d.      Whether defendants' conduct caused the prices of Refrigerant Compressor Products sold in the United States to be at artificially high and non-competitive levels;

    e.      Whether plaintiffs and other members of the Class were injured by the defendants' conduct;

    f.      Whether defendants' conduct violates Section 1 of the Sherman Act;

    g.      The appropriate measure of the amount of damages suffered by the Class; and

    h.      Whether defendants took steps to actively conceal the combination or conspiracy from plaintiffs or other Class members.

55.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged Class members is impractical.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender.  Prosecution as a class action will eliminate the possibility of repetitive litigation.  Class treatment will permit the adjudication of relatively small claims by Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this litigation.  Thus, absent the availability of a class action, it would not be feasible for Class members to redress the wrongs done to them.

56.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

57.     There will be no material difficulty in the management of this action as a class action.

## THE COMPRESSOR INDUSTRY

58.     A compressor (see below) is a device that compresses a refrigerant gas.  When the gas is later permitted to expand, it absorbs and transfers heat, producing a cooling effect, which forms the basis for a wide variety of refrigeration products.  For example, in a household refrigerator, compressors are part of the system creating cold air that keeps food fresh or frozen.



59.     Fractional compressors (meaning those less than one horsepower), which are the Compressors at issue here, are used for refrigeration purposes or in refrigeration products, such as, among others, condensers, residential and commercial refrigerators, freezers and water coolers.

## DEFENDANTS' PRICE-FIXING CONSPIRACY

60.     Defendants have engaged in a wide-ranging conspiracy during the Class Period to raise, fix, maintain or stabilize the price of Compressors sold in the United States and elsewhere and have engaged in anti-competitive practices in furtherance of their conspiracy.  As a direct

result of the conspiracy alleged herein, plaintiffs and the Class paid artificially inflated prices for Refrigerant Compressor Products purchased from the defendants during the Class Period.

61.     Increases in the prices for Compressors increased the prices for Refrigerant Compressor Products, even when the Refrigerant Compressor Products contained Compressors manufactured by the same or a related defendant.  For example, when an Embraco Compressor was used in a refrigerator manufactured by Whirlpool, a "transfer price" was applied and incorporated into the final price of the refrigerator.

62.     The defendants carried out the conspiracy alleged herein through regular, secret meetings and communications throughout the entire Class Period, during which the prices of Compressors, as well as other market information relating to Compressors, were discussed and exchanged.  Such meetings and communications began as early as 2004, and possibly earlier.

63.     For example, in mid-March 2004, Gerson Verissimo, the managing director of Tecumseh Brasil, Jose Celso Lunardelli Furchi, who was responsible for Tecumseh Brasil's North American Compressor business, and Januário Domingos Soligon also of Tecumseh, met with Ernesto Heinzelmann and Ingo Erhardt of Embraco, at Embraco's headquarters in Joinville, Brazil.  At the time, Heinzelmann was responsible for the pricing of Embraco and Whirlpool S.A.'s Compressors sold in the United States.

64.     At this meeting, the attendees discussed, among other subjects, the Compressor markets throughout the world, including the United States.  The attendees also discussed the need for price increases with respect to Compressors.  Specifically, the meeting attendees discussed and reached an agreement to raise Compressor prices by 8-10% in June 2004 throughout the world, including in the United States.  The pricing agreement reached during this meeting, and other discussions and meetings among the defendants, generally involved a

percentage increase in price that the defendants would seek as well as an agreement on what they were likely to achieve.  For example, some attendees would agree to tell customers that they were raising prices by 12% to 14%, while they were secretly agreeing with each other to settle for price increases of at least 8% to 10%.  The meeting attendees also frequently discussed and agreed to refrain from taking each other's Compressor customers.

65.     Following this meeting, in or around May 2004, Gerson Verissimo of Tecumseh, made telephone calls to at least Valter Taranzano, President and CEO of ACC, and Lars Snitkjaer, Director of Compressors Sales and Marketing at Danfoss.  Both Taranzano and Snitkjaer had pricing responsibility for Compressors sold in the U.S. for their respective companies.  During these telephone conversations, Verissimo discussed with them the agreement to raise Compressor prices by 8-10% and Taranzano and Snitkjaer agreed to raise Compressor prices by 8-10% in June 2004 on behalf of their respective companies.  Ernesto Heinzelmann of Embraco discussed the agreement with Masanobu Matsuda, who was responsible for the pricing of Compressors sold by Panasonic in the United States, and Matsuda also agreed to raise prices by 8-10% in June 2004 on behalf of Panasonic.

66.     In June 2004, the defendants increased Compressor prices in the United States by 8-10%.  Following the June 2004 price increase, there were numerous conversations among the defendants to discuss their customers' reactions to the price increase, and to ensure that the defendants were adhering to their agreement.

67.     Such meetings and communications continued throughout the entire Class Period and resulted in additional Compressor price increases.  Such meetings and communications were bilateral and multilateral, occasionally involving all defendants.

68.     For example, during the period of October 13-15, 2004, in connection with a trade fair known as IKK being held in Nuremberg, Germany, representatives of the defendants met secretly at a hotel in Nuremberg.  They traveled to the meeting separately so as not to be seen together, and reserved a room at the hotel under a false name so as not to be detected.  At least the following representatives of the defendants attended the meeting:  Valter Taranzano, Dino Turus, and Jordi Riu of ACC; Lars Snitkjaer and Jorn Westermann from Danfoss; Ernesto Heinzelmann, Gilberto Heinzelmann and Laércio Hardt of Embraco; Gerson Verissimo, Jean-Marc Sassier and Bartolomeo Genta from Tecumseh; and Masanobu Matsuda from Panasonic.

69.     The primary subject of this meeting was a Compressors price increase for 2005. Specifically, the meeting attendees discussed and agreed upon a 10% price increase to be implemented in 2005.  In addition to the discussion and agreement regarding price increases, the meeting attendees exchanged confidential information, including information regarding specific customers, capacity and production levels.

70.     In January 2005, the defendants implemented Compressor price increases consistent with the agreement that had been reached at the October 2004 meeting in Nuremberg, Germany, including price increases in the United States.

71.     Further meetings occurred in September 2005, in order to agree upon Compressors pricing for 2006.  In September 2005, there was a meeting among at least Gerson Verissimo of Tecumseh; Dailson Farias and Ernesto Heinzelmann of Embraco, and Paulo Frederico Meira de Oliveira Periquito of Whirlpool at Embraco's headquarters in Joinville, Brazil.  Periquito was President and Chief Executive Officer of Embraco and Whirlpool S.A. during the Class Period and was also President of Whirlpool International, a division of

17

Whirlpool Corporation.  At this meeting, there was discussion about, among other things, the need for a multilateral meeting to discuss Compressor prices for 2006.

72.     Following the meeting in Joinville, later in September 2005, there was a meeting among at least Gilberto Heinzelmann and Laércio Hardt of Embraco; Lars Snitkjaer of Danfoss; Dino Turus of ACC; and Bartolomeo Genta and Michel Jorge Geraissate Filho of Tecumseh at the Frankfurt Airport in Frankfurt, Germany.  The meeting attendees discussed Compressor prices for 2006 and agreed to maintain current prices and resist customers' efforts to obtain lower Compressor prices.  Following this meeting, there were numerous telephone calls at least among Gerson Verissimo of Tecumseh; Laércio Hardt and Dailson Farias of Embraco; Valter Taranzano of ACC; and Lars Snitkjaer of Danfoss, and between representatives of Embraco and Panasonic, to discuss the agreement reached at the Frankfurt meeting, and to ensure that each of the defendants was adhering to the agreement.

73.     Throughout the entire Class Period, there were regular telephone communications between defendants intended to implement and monitor the conspiracy.   Further, representatives of the defendants regularly attended trade association meetings, such as the IKK Trade Fair during October 18-20, 2006 in Nuremberg, Germany.

74.     One of the final meetings of the conspiracy occurred in July 2008, at which representatives of the defendants attended.  The pricing of Compressors for the remainder of 2008 and for 2009 was discussed.  Following this meeting, as described below, defendant Tecumseh Products sought leniency from the DOJ and a worldwide investigation by various competition authorities into the Compressor market and these defendants ensued.

## THE CHARACTERISTICS OF THE COMPRESSOR
## MARKET ARE CONDUCIVE TO COLLUSION

75.     The structure and characteristics of the Compressor market in the United States is conducive to a price-fixing agreement.

76.     Defendants collectively dominate and control the United States Compressor market.  Collectively, the defendants have a combined share of Compressor sales in the United States of more than ninety percent.

77.     There are substantial barriers that preclude or reduce entry into the Compressor market.  The primary barrier to entry is high start-up costs.  A new entrant into the business would have to incur multi-million dollar costs, including building a manufacturing plant and establishing a distribution infrastructure.  Such barriers are conducive to a conspiracy because they protect existing suppliers from competition and perpetuate high market concentration.

78.     Therefore, throughout the Class Period, defendants possessed market power to raise prices above competitive levels in the United States market for Compressors.

79.     Compressors supplied by one producer are readily interchangeable with Compressors supplied by any other supplier.  As a result, purchasers of Compressors make purchase decisions based largely, if not entirely, on price.

80.     There are no economically reasonable substitutes for Compressors.

81.     The demand for Compressors is price inelastic.  Thus, the producers of Compressors are able to artificially raise their prices without losing sales revenue.

## TECUMSEH'S ADMISSION OF A CRIMINAL ANTITRUST VIOLATION

82.     The DOJ has a policy of according leniency to corporations reporting their illegal antitrust activity at an early stage, if they meet certain conditions.  Under this policy, an applicant for leniency, "must admit its participation in a criminal antitrust violation involving price fixing,

bid rigging, capacity restriction, or allocation of markets, customers, or sales or production volumes before it will receive a conditional leniency letter."  (Department of Justice, Frequently Asked Questions Regarding the Antitrust Division's Leniency Program and Model Leniency Letters (Nov. 19, 2008), http://www.usdoj.gov/atr/public/criminal/239583.pdf).

83.     In late 2008, Tecumseh applied under the DOJ's corporate leniency policy to report price-fixing activity and other conduct potentially violative of Sherman Act § 1 in the Compressor market in the United States and elsewhere.

84.     On February 12, 2009, Tecumseh was accepted into the DOJ corporate leniency program and extended full federal government immunity for the reported price-fixing and other anti-competitive activities related to Compressors.

85.     On February 23, 2009, Ed Buker, then Chairman, President and CEO of Tecumseh, issued a letter to Tecumseh employees acknowledging that Tecumseh had "entered into amnesty agreements in the United States, Brazilian and EU jurisdictions" in connection with criminal antitrust investigations that had been commenced concerning "anti-competitive practices in the Compressor industry."

## OTHER INVESTIGATIONS

86.     There has been a coordinated worldwide probe of anti-competitive activities in the worldwide Compressor market conducted by at least the United States, European Union and Brazilian competition authorities.

87.     On February 17, 2009, Brazilian investigators conducted raids of the offices of Whirlpool and Tecumseh in Brazil.  The Brazilian Justice Ministry confirmed that the participants in the price-fixing scheme had agreed through their managers to raise, fix and stabilize prices and exchange commercially sensitive information about Compressors, hindering free competition.  The agreements, illicit communications and other conspiratorial conduct was

conducted through e-mails, phone calls and meetings, including at restaurants and hotels.  It was reported that the investigation began near the end of 2008 when one of the companies advised authorities of the cartel in exchange for leniency.

88.     On February 17, 2009, European Commission officials and others searched the premises of Whirlpool, Danfoss, and Tecumseh in several European Union member states.  On February 18, 2009, the European Commission confirmed that it had reason to believe that the companies searched had engaged in price-fixing in the Compressor industry.

89.     On February 19, 2009, the DOJ announced that the Antitrust Division had initiated an investigation involving anti-competitive practices in the Compressor industry and confirmed that it is coordinating its investigation with foreign authorities.  The DOJ has convened a grand jury in the Eastern District of Michigan.  Defendants Tecumseh, Whirlpool and Danfoss have each confirmed receipt of grand jury subpoenas.

90.     Separately, Whirlpool confirmed the United States antitrust investigation in an SEC filing dated February 19, 2009, stating "On February 17, 2009, we received a grand jury subpoena from the United States Department of Justice requesting documents relating to an antitrust investigation of the global compressor industry.  Whirlpool subsidiaries in Brazil and Italy were visited on the same day by competition authorities seeking similar information."

91.     Around the same time, Tecumseh disclosed that it had received subpoenas from antitrust authorities in the United States and Brazil regarding an investigation into possible price-fixing in the Compressor market.

92.     Danfoss A/S also disclosed that its offices in Denmark, Italy, Germany and the United States were raided by antitrust regulators as part of an investigation into possible price-fixing in the Refrigerant Compressor Products market.

93.     On February 27, 2009, Panasonic USA acknowledged that it was under investigation by antitrust authorities in the United States.

## PLAINTIFFS AND THE CLASS SUFFERED ANTITRUST INJURY

94.     Defendants' price-fixing conspiracy had the following effects, among others:

a.      Price competition has been restrained or eliminated with respect to Refrigerant Compressor Products;

b.      The prices of Refrigerant Compressor Products have been fixed, raised, maintained, or stabilized at artificially inflated levels; and

c.      Direct purchasers of Refrigerant Compressor Products have been deprived of free and open competition.

95.     During the Class Period, defendants charged plaintiffs and the Class anti-competitive prices for Refrigerant Compressor Products.  By reason of the alleged violations of the antitrust laws, plaintiffs and the Class have sustained injury to their businesses or property, having paid higher prices for Refrigerant Compressor Products than they would have paid in the absence of an illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## FRAUDULENT CONCEALMENT

96.     As a result of defendants' fraudulent concealment of their conspiracy, the running of any statue of limitations has been equitably tolled with respect to any claims that plaintiffs and the Class have as a result of the anti-competitive conduct alleged in this complaint.

97.     Defendants affirmatively and fraudulently concealed from plaintiffs and the Class the existence of the unlawful contract, combination, or conspiracy alleged herein through various devices and techniques of secrecy.  Defendants' wrongful conduct was carried out in part

through means and methods which were designed to avoid detection, including attending secret meetings, engaging in secret conversations concerning price increases and agreements not to compete for customers for Refrigerant Compressor Products, and agreeing not to record such meetings or to destroy any record that might be made. These efforts were, in fact, successful in preventing detection. As discussed above, defendants traveled separately to meetings and reserved meetings rooms under false names in order to avoid detection.

98.     In addition, defendants concealed the existence of the unlawful contract, combination, or conspiracy alleged herein by agreeing on a range of percentage increases in prices to communicate to their customers that was higher than the lower, secret range of price increases to which they had agreed. For example, defendants agreed to tell their customers that they were seeking, for example, a 12%-14% increase in price, when in fact defendants had agreed with each other to settle for price increases of at least 8%-10%.

99.     Before February 18, 2009, defendants represented publicly, both to customers and otherwise, that their pricing activities were attributable to factors other than defendants' illegal scheme and unlawful conduct. Specifically, defendants represented that their pricing activities were unilateral, rather than collusive, and were based upon market conditions and legitimate business purposes, such as increased input costs, increased demand or declining supply. In making those false representations, defendants misled plaintiffs and the Class as to the true, collusive, and coordinated nature of their price-fixing and other illegal anti-competitive activities.

100.     Because the contract, combination, or conspiracy was kept secret by defendants, plaintiffs and the Class were unaware that prices of Refrigerant Compressor Products were secretly agreed upon until at least February 18, 2009, when Tecumseh publicly announced that it

was the subject of investigations by the DOJ and Brazilian antitrust authorities into the Refrigerant Compressor Products industry, and that the European Commission was investigating the industry as well (although no specific conduct was delineated at that time).

101.    Plaintiffs diligently sought to protect themselves from unlawful activity, but it was not until on or about February 18, 2009 that plaintiffs and the Class were able to, or could have been able to, detect the conspiracy alleged in this complaint.

## CLAIM FOR VIOLATION OF SHERMAN ACT § 1

102.    Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

103.    The acts done by each of the defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of defendants' affairs.

104.    Defendants' and their unnamed co-conspirators' anti-competitive activities have proximately caused injury to plaintiffs and the Class in the United States.

105.    As a direct and proximate result of the contract, combination, or conspiracy among defendants alleged in this complaint, the prices charged to plaintiffs and the Class for Refrigerant Compressor Products were unlawfully raised, fixed, maintained, or stabilized in the United States.

106.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

107.    The contract, combination, or conspiracy had the following direct, substantial and reasonably foreseeable effects upon commerce in the United States and upon import commerce:

a.      Prices charged to plaintiffs and the Class for Refrigerant Compressor Products were raised, fixed, maintained, or stabilized at non-competitive levels;

b.      Plaintiffs and the Class have been deprived of the benefits of free, open, and unrestricted competition in the markets for Compressors and Refrigerant Compressor Products; and

c.      Competition in establishing the prices paid for Refrigerant Compressor Products has been unlawfully restrained, suppressed, or eliminated.

108.    As a direct and proximate result of defendants' unlawful conduct, plaintiffs and the Class have been damaged in their business or property by paying prices for Refrigerant Compressor Products that were higher than they would have been but for defendants' unlawful conduct resulting in an amount of ascertainable damages to be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that:

A.      The Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

B.      The unlawful contract, combination, or conspiracy alleged herein be adjudicated and decreed to have been in violation of Section 1 of the Sherman Act;

C.      Joint and several judgments be entered for plaintiffs and the Class against defendants for three times the amount of damages sustained by plaintiffs and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees; and

D.      Plaintiffs and the Class be granted such further and other relief as the case may require or as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiffs demand a trial by jury.

Dated: June 30, 2010

THE MILLER LAW FIRM, P.C.

By: /s/ David H. Fink
    David H. Fink (P28235)
    E. Powell Miller (P39487)
    The Miller Building
    950 West University Drive, Suite 300
    Rochester, MI 48307
    Tel.: (248) 841-2200
    Fax: (248) 652-2852
    dhf@millerlawpc.com

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 30, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record registered for electronic filing.

THE MILLER LAW FIRM, P.C.

By: <u>/s/ David H. Fink</u>
     David H. Fink (P28235)
     E. Powell Miller (P39487)
     The Miller Building
     950 West University Drive, Suite 300
     Rochester, MI 48307
     Tel.: (248) 841-2200
     Fax: (248) 652-2852
     dhf@millerlawpc.com

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*