# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: REFRIGERANT COMPRESSORS ANTITRUST LITIGATION | MDL No. 2:09-md-02042 |
| This Document Relates to ALL DIRECT PURCHASER ACTIONS | HONORABLE SEAN F. COX UNITED STATES DISTRICT JUDGE |

## MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT BETWEEN DIRECT PURCHASER CLASS PLAINTIFFS AND DEFENDANTS TECUMSEH PRODUCTS COMPANY, TECUMSEH COMPRESSOR COMPANY, TECUMSEH DO BRASIL, LTDA., AND TECUMSEH DO BRASIL USA, LLC AND PROPOSED CLASS NOTICE

Direct Purchaser Class Plaintiffs hereby move the Court, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, for an order in the form attached hereto granting preliminary approval of the proposed settlement of this litigation with Defendants Tecumseh Products Company, Tecumseh Compressor Company, Tecumseh do Brasil, Ltda. and Tecumseh do Brasil USA, LLC, and their subsidiaries and affiliates (collectively, the "Settling Defendants"); appointing David H. Fink and The Miller Law Firm, P.C. as Class Counsel for the proposed Settlement Class; and authorizing Class Counsel to disseminate notice of the proposed settlement.

In support of this motion, Direct Purchaser Class Plaintiffs rely upon the accompanying memorandum of law.   Settling Defendants consent to this motion and to the entry of the proposed order.


Dated:  August 5, 2010                                      Respectfully submitted,

                                                            THE MILLER LAW FIRM, P.C.


                                                            By: /s/ David H. Fink_____
                                                                David H. Fink (P28235)
                                                                E. Powell Miller (P39487)
                                                                950 West University Drive, Suite 300
                                                                Rochester, MI  48307
                                                                (248) 841-2200
                                                                dhf@millerlawpc.com

                                                            *Interim Lead Counsel for the Direct
                                                            Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: REFRIGERANT COMPRESSORS ANTITRUST LITIGATION | MDL No. 2:09-md-02042 |
| This Document Relates to ALL DIRECT PURCHASER ACTIONS | HONORABLE SEAN F. COX UNITED STATES DISTRICT JUDGE |

**DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
ACTION SETTLEMENT BETWEEN DIRECT PURCHASER CLASS PLAINTIFFS
AND DEFENDANTS TECUMSEH PRODUCTS COMPANY, TECUMSEH
COMPRESSOR COMPANY, TECUMSEH DO BRASIL, LTDA. AND
<u>TECUMSEH DO BRASIL USA, LLC AND PROPOSED CLASS NOTICE</u>**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................1

II.  PROCEDURAL HISTORY  ...........  ................................................ 3

III.  THE BASIC TERMS OF THE SETTLEMENT .......................................................4

    A.  The Settlement Amount and Cooperation Provisions................................4

    B.  Release and Discharge .................................................................4

    C.  Stipulation to Class Certification ................................................5

    D.  Settling Defendants' Right to Withdraw from the Settlement.................5

    E.  Proposed Timing of the Notice ..................................................6

IV.  THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL  .................................................................7

    A.  The Rule 23(e) Standard for Preliminary Approval of Class Settlements..............7

    B.  The Proposed Settlement Meets the Standard for Preliminary Approval Under Rule 23(e).......................................................... 8

        1.  The Proposed Settlement Was Negotiated At Arm's Length ...........................8

        2.  The Proposed Settlement Has No Obvious Deficiencies....................................9

        3.  The Proposed Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives ...............................................10

        4.  The Proposed Settlement Falls Within The Range Of Possible Approval .......11

    C.  The Proposed Settlement Class Should be Certified Pursuant to Rule 23 for the Purpose of Sending Notice to the Settlement Class................................11

        1.  The Proposed Settlement Class Meets the Requirements of Rule 23(a) ..........11

            (a)  The Numerosity Requirement Is Met ...........................................11

            (b)  The Commonality Requirement Is Met .........................................12

            (c)  The Typicality Requirement Is Met...............................................13

(d)    The Class Representatives Will Fairly and Adequately Represent the Settlement Class ........................................................ 14

2.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ...... 14

D.    The Forms of Notice Should be Approved. .......................................................... 15

V.     NON-SETTLING DEFENDANTS SHOULD BE ORDERED TO PRODUCE WITHIN TEN (10) DAYS THEIR CUSTOMER LISTS ................................................. 16

VI.    CONCLUSION ..................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ..........................................................................................................14

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) .................................................................................13, 15

*Bobbitt v. Academy of Court Reporting, Inc.,*
    No. 07-10742, 2009 WL 2168833 (E.D. Mich. July 21, 2009) ................................7, 8, 10

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)............................................................................................................16

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) ............................................................................... 11-12, 14

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) .................................................................................11

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
    No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009)...........................7, 8

*In re Linerboard Antitrust Litig.,*
    292 F.Supp.2d 631 (E.D. Pa. 2003) ................................................................................10

*In re Scrap Metal Antitrust Litig.,*
    527 F.3d 517 (6th Cir. 2008) ...........................................................................................15

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Ford Motor Co.,*
    Nos. 05-74730, 06-10331, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ...............12, 13

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. General Motors Corp.,*
    497 F.3d 615 (6th Cir. 2007) ............................................................................................8

*Tenn. Ass'n of Health Maintenance Organizations, Inc. v. Grier,*
    262 F.3d 559 (6th Cir. 2001) ............................................................................................7

*Thacker v. Chesapeake Appalachia, LLC,*
    259 F.R.D. 262 (E.D. Ky. Aug. 5, 2009) ............................................................. 11, 14-15

*Williams v. Vukovich,*
    720 F.2d 909 (6th Cir. 1983) .......................................................................................7, 10

**Statutes**                                                                    **Page**

Fed. R. Civ. P.  23(a) ....................................................................................5, 11, 12, 13, 14

Fed. R. Civ. P.  23(a)(1)................................................................................................11, 12

Fed. R. Civ. P. 23(a)(2) ....................................................................................................12

Fed. R. Civ. P. 23(a)(3).....................................................................................................13

Fed. R. Civ. P. 23(a)(4).....................................................................................................14

Fed. R. Civ. P. 23(b) .........................................................................................................14

Fed. R. Civ. P. 23(b)(3)................................................................................................5, 15

Fed. R. Civ. P. 23(e) ...........................................................................................................7

Fed. R. Civ. P. 23(e)(1)......................................................................................................15

## Other Authorities

5 *Moore's Federal Practice* (3d ed. 2003) .....................................................................16

## STATEMENT OF THE ISSUES PRESENTED

1.  Should the Court preliminarily approve the settlement between Direct Purchaser Class Plaintiffs and Defendants Tecumseh Products Company, Tecumseh Compressor Company, Tecumseh do Brasil, Ltda. and Tecumseh do Brasil USA, LLC, and their subsidiaries and affiliates, as set forth in the Settlement Agreement dated June 24, 2010?

    Direct Purchaser Plaintiffs' Answer:      Yes

2.  Should the Court preliminarily certify a Direct Purchaser Settlement Class for purposes of disseminating notice of the settlement to potential class members?

    Direct Purchaser Plaintiffs' Answer:      Yes

3.  Should the Court approve the proposed form and method of class notice?

    Direct Purchaser Plaintiffs' Answer:      Yes

4.  Should the Court appoint David H. Fink and The Miller Law Firm, P.C. as Settlement Class Counsel?

    Direct Purchaser Plaintiffs' Answer:      Yes

5.  Should the Court schedule a fairness hearing and set related deadlines?

    Direct Purchaser Plaintiffs' Answer:      Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

### Rules of Civil Procedure

Fed. R. Civ. P. 23(a)(1)-(4) and (b)(3)

Fed. R. Civ. P. 23(e)

### Case Law

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007)

*Tenn. Ass'n of Health Maintenance Organizations, Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001)

*Bobbitt v. Acad. of Court Reporting, Inc.*, No. 07-10742, 2009 WL 2168833 (E.D. Mich. July 21, 2009)

*Int'l Union United Auto, Aerospace & Agric. Implement Workers of American v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

## I.     INTRODUCTION

Direct Purchaser Class Plaintiffs[1] have entered into a settlement agreement with Defendants Tecumseh Products Company, Tecumseh Compressor Company, Tecumseh do Brasil, Ltda. and Tecumseh do Brasil USA, LLC, and their subsidiaries and affiliates (the "Settling Defendants"). Pursuant to the June 24, 2010 settlement agreement (the "Settlement Agreement"), the Settling Defendants have paid $7,000,000 into a settlement fund, have paid an additional $250,000 for up to that amount in notice and administrative costs, and will also provide significant and prompt cooperation to Direct Purchaser Class Plaintiffs in the claims against the non-settling Defendants.  *See* Exhibit 1, Settlement Agreement.  The Settlement Agreement is within the range of possible approval and was negotiated at arm's length by experienced counsel.  *See* Exhibit 2, Declaration of David H. Fink in Support of Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Settlement with Defendants Tecumseh Products Company, Tecumseh Compressor Company, Tecumseh do Brasil, Ltda., and Tecumseh Do Brasil USA, LLC (the "Fink Decl.").  Thus, the Court should grant preliminary approval of the settlement, authorize the dissemination of notice to class members and schedule a hearing on the fairness of the settlement.

Before this litigation began, Settling Defendants entered into an "Antitrust Leniency Agreement" with the United States Department of Justice Antitrust Division ("DOJ").  As a result, Settling Defendants are "antitrust leniency applicants" as set forth under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 (Pub. L. No. 108-237) ("ACPERA").  Pursuant to ACPERA, the Settling Defendants' damage exposure to a civil "claimant" is limited

---

[1]  This term as used herein includes "Plaintiffs," the "Settlement Class," "Settlement Class Counsel" and "Settlement Class Member" as defined in paragraphs 10, 17, 18 and 19 of the Settlement Agreement attached as Exhibit 1.

to single damages based solely upon their sales of the affected products, provided that the Settling Defendants otherwise meet their cooperation obligations under the statute.  Moreover, the Settlement Agreement provides that the Settling Defendants' sales of Refrigerant Compressor Products[2] shall remain in the case for the purposes of calculating the joint and several liability of the non-settling Defendants, who remain liable for treble damages based upon all sales of Refrigerant Compressor Products by all Defendants including sales by the Settling Defendants.  Therefore, this settlement does not in any way diminish the potential recovery by the Direct Purchaser Class Plaintiffs against Defendants, and Settling Defendants' cooperation greatly enhances the potential recovery from the non-settling Defendants.  The proposed Settlement Agreement is also the first reached in this litigation.  Indeed, the settlement here represents an "ice-breaker" settlement and increases the likelihood that other Defendants will commence serious settlement negotiations.  Furthermore, there are issues with respect to Settling Defendants' financial condition, since Tecumseh Products Company had a net loss of $93.4 million for the year ended December 31, 2009 and a net loss of $41.9 million for the three months ended March 31, 2010.

Direct Purchaser Class Plaintiffs now move the Court for entry of a Preliminary Approval Order:  (1) finding that the settlement with the Settling Defendants is sufficiently fair, reasonable, and adequate to justify dissemination of notice to the proposed Settlement Class; (2) appointing David H. Fink and The Miller Law Firm, P.C. as Class Counsel for the Settlement Class; (3) approving the form and contents of the class notice; (4) approving the notice plan and

---

[2] "Refrigerant Compressor Products" are defined as compressors of less than one horsepower used for refrigeration, freezing or cooling purposes, and/or refrigeration products, including condensers, manufactured by a defendant containing compressors of less than one horsepower also manufactured by a defendant.  Refrigerant Compressor Products specifically exclude compressors used in air conditioning products.  *See* Exhibit 1, Settlement Agreement at ¶ 12.

2

directing that notice be mailed and published; (5) ordering that Defendants provide, in electronic form, the names and addresses of the members of the Settlement Class within ten (10) days of entry of the Preliminary Approval Order; (6) establishing a schedule for filing papers in support of final approval of the proposed settlement, for the filing of objections (if any) by Settlement Class Members, for Settlement Class Members to exclude themselves from the proposed Settlement Class and setting a date for a final approval hearing; (7) approving the establishment of an escrow account as set forth in the Settlement Agreement; (8) approving The Garden City Group, Inc. as Claims Administrator; and (9) granting a stay of all proceedings in this Action against the Settling Defendants as provided in the Settlement Agreement.  A proposed Preliminary Approval Order has been submitted with this motion.  *See* Exhibit 3, Proposed Preliminary Approval Order.  The proposed Notice and Summary Notice are attached as Exhibits A and B, respectively, to the proposed order for Preliminary Approval submitted herewith.  A Proposed Final Judgment and Order of Dismissal Granting Final Approval To Proposed Class Action Settlement is also attached.  *See* Exhibit 4, Final Judgment and Order of Dismissal.

## II.    PROCEDURAL HISTORY

This litigation began in February 2009, when numerous class action complaints were filed against the Settling Defendants and other manufacturers of Refrigerant Compressor Products, alleging violations of the federal antitrust laws.  On June 9, 2009, the Judicial Panel on Multidistrict Litigation ("JPML") centralized the related antitrust class actions and transferred the actions to this Court.  On November 2, 2009, the Court appointed David H. Fink and The Miller Law Firm, P.C. to act as Interim Lead Counsel for the Direct Purchaser Plaintiffs.  Direct Purchaser Class Plaintiffs filed a Master Amended Complaint ("MAC") on June 30, 2010.

III.    **THE BASIC TERMS OF THE SETTLEMENT**

A.    **The Settlement Amount and Cooperation Provisions**

Settling Defendants are required to pay $7,000,000 into a Settlement Fund and up to an additional $250,000 to pay for notice to the class and administrative costs. *See* Exhibit 1, Settlement Agreement at ¶¶ 32-33, 36. The aforementioned amounts have already been transmitted into an escrow account and any interest earned on the settlement funds will become part of the Settlement Fund.

Additionally, Settling Defendants are required to cooperate in the continued litigation against the non-settling Defendants. *See Id.* at ¶¶ 44-61. Among other things, Settling Defendants are required to present Direct Purchaser Class Plaintiffs with a recitation of the facts establishing the conspiracy and its participants. *Id.* at ¶ 44. Further, Settling Defendants are required to supply Direct Purchaser Class Plaintiffs with transactional data, along with any documents they provided to the DOJ or other investigative bodies. *Id.* at ¶¶ 46-48. Settling Defendants are further required to provide testimonial evidence, by deposition or at trial, as Direct Purchaser Class Plaintiffs may request. *Id.* at ¶¶ 53-54.

B.    **Release and Discharge**

In exchange for monetary and other considerations paid by Settling Defendants, the Direct Purchaser Class Plaintiffs have agreed to release and discharge Settling Defendants from any and all Claims[3] and all other causes of action of any kind against the Settling Defendants arising from or in any way relating to the direct purchase of Refrigerant Compressor Products in the United States or its territories or possessions at any time prior to the signing of the Settlement Agreement, except as provided in paragraphs 27 and 28 of the Settlement Agreement.

---

[3] *See* Exhibit 1, Settlement Agreement at ¶ 2.

Additionally, Direct Purchaser Class Plaintiffs will, if so required and warranted, certify that Settling Defendants have fulfilled their ACPERA obligations as set forth in paragraphs 44 through 61 of the Settlement Agreement. *See* Exhibit 1, Settlement Agreement at ¶ 64.

### C.   Stipulation to Class Certification

The Settlement Agreement stipulates that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied for settlement purposes and, subject to Court approval, the following direct purchaser class should be certified for settlement purposes:

> All persons or entities (but excluding Defendants, Defendants' parents, predecessors, successors, subsidiaries, affiliates and the current and former officers, directors, and employees of each of the foregoing, as well as government entities) who purchased Refrigerant Compressor Products in the United States, its territories or possessions, directly from any Defendant named in the Action, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from and including January 1, 2004 up to and including December 31, 2008. Refrigerant Compressor Products shall mean compressors of less than one horsepower used for refrigeration, freezing or cooling purposes, and/or refrigeration products, including condensers, manufactured by a Defendant containing compressors of less than one horsepower also manufactured by a Defendant. Refrigerant Compressor Products specifically excludes compressors used in air conditioning products.

*Id.* at ¶ 22.

### D.   Settling Defendants' Right to Withdraw from the Settlement

The Settlement Agreement further provides that Class Counsel will supply Settling Defendants with a written list of all Settlement Class Members who have timely exercised their rights to be excluded from the Settlement Class within ten (10) business days after the deadline established by the Court for Settlement Class Members to so exclude themselves. *Id.* at ¶ 43. The parties will then ascertain the "opt-out amount" by calculating Settling Defendants' sales of Refrigerant Compressor Products during the Settlement Class Period to the sales of such products to Settlement Class Members requesting exclusion from the settlement. Settling

Defendants have the right to withdraw from the settlement if the opt-out amount exceeds a certain percentage of Settling Defendants' sales of Refrigerant Compressor Products as stated in a separate letter agreement that will be filed in camera and under seal with the Court, if so requested.[4]

### E.      Proposed Timing of the Notice

The proposed Preliminary Approval Order sets forth a procedure and timeline for disseminating notice to the Settlement Class and for final approval.  The proposed Preliminary Approval Order provides that Notice will be mailed within twenty (20) days following the date on which Class Counsel receives the Refrigerant Compressor Products purchaser information from non-settling Defendants (the "Notice Date").  Summary Notice will be published on one occasion in the national edition of the *Wall Street Journal* within ten (10) days of the Notice Date.  Requests for exclusion from the Settlement Class must be postmarked no later than forty-five (45) days after the Notice Date.  The final approval hearing (the "Hearing") will be scheduled at the Court's convenience on a date no earlier than eighty (80) days after the Notice Date.  Direct Purchaser Plaintiffs' motion for final approval of the settlement, and papers in support thereof, will be filed thirty (30) days prior to the date of the Hearing.  Any objection to the settlement must be filed with the Court and served on Class Counsel and counsel for Settling Defendants no later than twenty (20) days prior to the Hearing.  Affidavits or declarations that notice to the Settlement Class was made in accordance with the Preliminary Approval Order will be filed ten (10) days prior to the Hearing.

---

[4]  As a general practice, such separate letter agreements are kept confidential and filed under seal to encourage settlement and discourage opt-outs.  *See In re HealthSouth Corp. Securities Litigation*, 334 Fed.Appx. 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

## IV.    THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

### A.    The Rule 23(e) Standard for Preliminary Approval of Class Settlements

Pursuant to Fed. R. Civ. P. 23(e), court approval is required to settle a class action lawsuit.  There are three steps district courts follow when approving class action settlements:

> (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable.

*Tenn. Ass'n of Health Maint. Organizations, Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001) (*citing Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)).  When determining whether preliminary approval of a proposed settlement is appropriate, the court makes an initial inquiry into the "fairness, reasonableness, and adequacy of the settlement."  *See Bobbitt v. Acad. of Court Reporting, Inc.*, No. 07-10742, 2009 WL 2168833, at *1 (E.D. Mich. July 21, 2009).

The Court should also "evaluate whether the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'"  *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *7 (W.D. Ky. Dec. 22, 2009) (*citing In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).  In determining "whether the compromise embodied in the decree is illegal or tainted with collusion" the court should rely on "its familiarity with the issues, the results of discovery, and the character of the negotiations prior to the entry of the decree." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

At the preliminary approval stage, the court is not required to determine whether it ultimately will order final approval of the settlement.[5] "[T]he court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval" at the preliminary approval stage. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *9 (W.D. Ky. Dec. 22, 2009) (*citing Manual for Complex Litigation* § 21.63 (4th ed. 2009)). Once the judge is satisfied with the results of the preliminary fairness evaluation, notice of a formal fairness hearing is given to class members. *See Bobbitt*, 2009 WL 2168833, at *1.

**B.     The Proposed Settlement Meets the Standard for Preliminary Approval Under Rule 23(e)**

The proposed settlement meets the preliminary approval standard because it (1) was the product of serious, informed and non-collusive negotiation, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class and (4) falls within the range of possible approval.

**1.     The Proposed Settlement Was Negotiated At Arm's Length**

The settlement negotiations were conducted at arm's length between experienced counsel and, thus, there was no fraud or collusion. *See* Exhibit 2, Fink Decl. at ¶¶ 1-2. Settlement deliberations took place over several weeks and Direct Purchaser Plaintiffs' Counsel and counsel for the Settling Defendants engaged in numerous, good-faith discussions over the course of the

---

[5] When the court ultimately determines whether a proposed settlement is fair, reasonable and adequate for final approval, the following factors guide the inquiry: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007) (citation omitted).

negotiations. Both sides vigorously negotiated their positions on all material terms of the Settlement Agreement. *See* Exhibit 2, Fink Decl. at ¶¶ 2-4.

### 2.    The Proposed Settlement Has No Obvious Deficiencies

The proposed settlement has no obvious deficiencies and, in fact, includes two very valuable components:  (1) Settling Defendants have paid $7,000,000 into the Settlement Fund; and (2) Settling Defendants are required to provide extensive cooperation to Direct Purchaser Class Plaintiffs, which should assist in establishing certain facts of the conspiracy against the non-settling Defendants.

The settlement amount of $7,000,000 is a significant payment for the benefit of the Settlement Class.  The Settling Defendants, as previously noted, have been accepted into the DOJ's leniency program.  As the leniency applicant, Settling Defendants are only responsible for single damages for their own sales and are not subject to joint and several liability, as are the non-settling Defendants.  Moreover, considering that non-settling Defendants are liable for treble damages based on all Defendants' sales, including the sales of the Settling Defendants, this settlement does not in any way diminish the potential recovery for the class in this case. Furthermore, Direct Purchaser Plaintiffs have reason to be concerned about the financial strength of the Settling Defendants, who have funded the settlement amounts.[6]

Moreover, this Settlement Agreement is the first reached in this matter.  Direct Purchaser Plaintiffs anticipate that the testimonial and documentary evidence that Settling Defendants are required to provide will significantly enhance Direct Purchaser Class Plaintiffs' continued litigation against the non-settling Defendants, both in terms of litigation efficiency and recovery

---

[6]   Tecumseh Products Company's 10-K for its fiscal year 2009, which ended on December 31, 2009, disclosed a net loss of $93.4 million.  In its Form 10-Q for the quarter ending March 31, 2010, Tecumseh Products Company had a net loss of $41.9 million.

amounts. Similar cooperation provisions have been recognized to confer substantial benefits to a class. *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 643 (E.D. Pa. 2003). The Court in *Linerboard* noted that the first settlement "has significant value as an 'ice-breaker' settlement" and "should increase the likelihood of future settlements. An early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations." *Id.*

### 3.     The Proposed Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives

As indicated above, the proposed settlement was negotiated at arm's length by experienced counsel. Class Counsel advocated for and protected the interests of the entire class during the settlement negotiations with the Settling Defendants. Moreover, the settlement proceeds will be distributed in a manner that is fair and equitable. Additionally, all Settlement Class Members will benefit from the cooperation provided by Settling Defendants.

### 4.     The Proposed Settlement Falls Within The Range Of Possible Approval

An initial inquiry into the "fairness, reasonableness, and adequacy of the settlement" supports a finding that the settlement falls within the range of possible approval. *See Bobbitt*, 2009 WL 2168833, at *1. The compromise embodied in the settlement is not "illegal" or "tainted with collusion" and is clearly the result of meticulous, informed negotiations between qualified counsel. *Williams,* 720 F.2d at 921. In the opinion of Class Counsel and the class representatives, a settlement with the Settling Defendants is in the best interests of the entire Settlement Class.

Furthermore, the proposed settlement includes a significant payment by the Settling Defendants for the benefit of the Settlement Class Members, especially in light of Settling

Defendants' reduced exposure to damages as the DOJ leniency applicant and concerns regarding their financial status. The proposed settlement also provides for cooperation by the Settling Defendants that will enhance Direct Purchaser Plaintiffs' potential recovery from the non-settling Defendants. In this complex case, with witnesses on three continents, the cooperation of the Settling Defendants in proving the facts of the alleged conspiracy is particularly valuable.

Therefore, Direct Purchaser Plaintiffs respectfully submit that the proposed settlement merits preliminary approval because it was the product of non-collusive negotiation by competent counsel, contains two valuable components and no obvious deficiencies, does not grant improper preferential treatment, and falls within the range of possible approval.

### C.   The Proposed Settlement Class Should be Certified Pursuant to Rule 23 for the Purpose of Sending Notice to the Settlement Class

Plaintiffs seek conditional certification of a class of direct purchasers of Refrigerant Compressor Products for the purpose of sending notice to members of the Settlement Class. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 516 (E.D. Mich. 2003) ("[F]or purposes of the Settlement and Settlement Agreement only and pending final approval of the Proposed Settlement, the Court conditionally certified a Settlement Class . . . [and] preliminarily found that the proposed Settlement Class met all the applicable requirements of Fed.R.Civ.P. 23."). Direct Purchaser Plaintiffs will later seek unconditional certification for settlement purposes. *See Id.* at 517; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266 (E.D. Ky. 2009).

### 1.   The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### (a)   The Numerosity Requirement Is Met

First, Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Sixth Circuit has found that a class of thirty-five is large enough to meet the numerosity requirement of Rule 23(a). *See In re Am. Med. Sys., Inc.*,

75 F.3d 1069, 1076 (6th Cir. 1996).  While the exact number of direct purchasers of Refrigerant Compressor Products is unknown, the MAC alleges that "it is believed to be in the tens of thousands and geographically dispersed throughout the United States." *See* MAC at ¶ 49.  Given the size and scope of the Settlement Class, joinder is impracticable and therefore the numerosity requirement of Rule 23(a)(1) is met.

(b)   <b>The Commonality Requirement Is Met</b>

Second, Rule 23(a) requires that a proposed class action involve "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  One question of law or fact that is common to all class members is sufficient to meet the commonality requirement.  *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) (hereinafter "*Ford*").  Here the commonality requirement is satisfied.

The overarching allegation in the MAC is that Defendants engaged in an illegal conspiracy in violation of Section 1 of the Sherman Act to inflate, fix, raise, maintain, and/or artificially stabilize prices of Refrigerant Compressor Products.  Questions of law and fact common to the proposed Settlement Class include, for example:

> (i)   Whether Defendants engaged in a combination or conspiracy among themselves to fix, raise, maintain, and/or stabilize prices of Refrigerant Compressor Products sold in the United States;

> (ii)   The existence, extent and duration of the contract, combination, or conspiracy alleged in the MAC and the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

> (iii)   Whether Defendants' conduct violated Section 1 of the Sherman Act;

12

     (iv)    Whether Defendants' conduct caused the prices of Refrigerant Compressor Products sold in the United States to be at artificially high and non-competitive levels;

     (v)    The effect of Defendants' alleged conspiracy on the price of Refrigerant Compressor Products, and whether the alleged conspiracy caused injury to the businesses or property of Direct Purchaser Plaintiffs and other members of the settlement class.

*See* MAC at ¶ 54.

### (c)    The Typicality Requirement Is Met

Third, Rule 23(a) requires that the claims of the representative parties be typical of the claims of the settlement class. Fed. R. Civ. P. 23(a)(3). The typicality requirement "is not onerous." *Ford*, 2006 WL 1984363, at *19. "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (*quoting In re Am. Med. Sys., Inc.*, 75 F.3d at 1082). Even when there are factual distinctions among the class representatives and other class members, the Sixth Circuit has found claims to be typical. *See Id.*; *Ford*, 2006 WL 1984363, at *19.

Here, the claims of the representative Plaintiffs are typical when compared to those held by the other members of the Settlement Class. Named Plaintiffs' claims arise from the Defendants' alleged conspiracy to inflate, fix, raise, maintain, and/or artificially stabilize prices of Refrigerant Compressor Products and violations of the antitrust laws; the same course of conduct and legal claims as the members of the Settlement Class. Therefore, the typicality requirement of Rule 23(a) is met.

> **(d)  The Class Representatives Will Fairly and Adequately Represent the Settlement Class**

Fourth, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members" to satisfy Rule 23(a)(4). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citation omitted). Accordingly, adequacy of representation is determined by two standards. First, the class representatives must have "common interests with unnamed members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (*quoting Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)). Second, "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.*

Both criteria are satisfied here. Named Plaintiffs' interests are aligned with those of the Settlement Class. All class members seek to prove that Defendants violated the antitrust laws and all class members share an overriding interest in maximizing monetary recovery. In addition, all class members share a common interest in obtaining cooperation in pursuing claims against the non-settling Defendants. Further, the class representatives have retained qualified and experienced counsel. The Court appointed David H. Fink and The Miller Law Firm, P.C. as Interim Lead Counsel for the Direct Purchaser Plaintiffs on November 2, 2009 and should appoint David H. Fink and The Miller Law Firm, P.C. as Class Counsel for the proposed direct purchaser Settlement Class for the same reasons.

> **2.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

Once the four prerequisites of Rule 23(a) are met, as in this case, plaintiffs must also show that the proposed settlement class meets one of the criteria of Rule 23(b). *See Thacker v.*

*Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 268 (E.D. Ky. 2009). Here, Direct Purchaser Plaintiffs meet the requirements of Rule 23(b)(3). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Classes satisfy the predominance requirement where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (6th Cir. 2007) (*quoting In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)). In this case, proving that the Defendants participated in a conspiracy to fix prices will predominate. The Sixth Circuit affirmed certification of a class and a district court's finding that the Rule 23(b)(3) requirements were met in an antitrust class action where, as here, price-fixing was alleged. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535-36 (6th Cir. 2008).

### D.      The Forms of Notice Should be Approved

The proposed notice program and forms of notice satisfy the requirements of Rule 23(e)(1). Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Here, the proposed mailed notice identifies the following in plain, easily understood language: the nature of the action; the definition of the Settlement Class certified; a description of the settlement, including a full recital of the release terms; how to object to the settlement, as well as the deadline for doing so; the binding effect of the final judgment on class members; and the final approval hearing date and location.

Direct Purchaser Class Plaintiffs propose that the Notice be sent by First-Class mail to all persons and entities Defendants identify as direct purchasers of Refrigerant Compressor Products in the United States during the Class Period. Copies of the Notice will also be posted on the Claims Administrator's web site. Additionally, a Summary Notice, which explains how to obtain a copy of the Notice, will be published once in the national edition of the *Wall Street Journal*. The Summary Notice will be published shortly after the Court grants preliminary approval of the settlement and after the Notice is mailed.

This type of notice program is frequently used in class action cases and complies with the requirements of Rule 23. *See, e.g.*, 5 *Moore's Federal Practice* (3d ed. 2003) at § 23.63[8][a] ("Notice of the class action is normally sent to the identified individual class member by first-class mail."); § 23.63[8][b] ("Publication of notice is often the best notice practicable for class members who cannot be identified or located specifically through reasonable efforts."); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974) (due process is satisfied by mailed notice to all class members who reasonably can be identified). Accordingly, approval of the notice program is appropriate.

## V.    NON-SETTLING DEFENDANTS SHOULD BE ORDERED TO PRODUCE WITHIN TEN (10) DAYS THEIR CUSTOMER LISTS

Direct Purchaser Plaintiffs have requested that Defendants provide the names and addresses of their Refrigerant Compressor Products customers so that notice may be mailed. To date, non-settling Defendants have responded with various qualifiers, but none have agreed to produce this information by a date certain. Direct Purchaser Plaintiffs request that the Court order non-settling Defendants to produce their customer lists in an electronic format within ten (10) days.

## VI.    CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court grant preliminary approval of the proposed settlement between Direct Purchaser Class Plaintiffs and Defendants Tecumseh Products Company, Tecumseh Compressor Company, Tecumseh do Brasil, Ltda. and Tecumseh do Brasil USA, LLC, and their subsidiaries and affiliates, and order the non-settling Defendants to produce their customer lists so that notice may be effectuated.


Dated:  August 5, 2010                          Respectfully submitted,

                                                THE MILLER LAW FIRM, P.C.


                                                By: /s/ David H. Fink_____
                                                    David H. Fink (P28235)
                                                    E. Powell Miller (P39487)
                                                    950 West University Drive, Suite 300
                                                    Rochester, MI  48307
                                                    (248) 841-2200
                                                    dhf@millerlawpc.com

                                                    *Interim Lead Counsel for the Direct*
                                                    *Purchaser Plaintiffs*

17

<u>CERIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record registered for electronic filing.

**THE MILLER LAW FIRM, P.C.**

By:     /s/ David H. Fink
        David H. Fink (P28235)
        E. Powell Miller (P39487)
        Interim Lead Counsel for Direct Purchaser Plaintiffs
        950 West University Drive, Suite 300
        Rochester, Michigan  48307
        (248) 841-2200
        dhf@millerlawpc.com
        epm@millerlawpc.com