UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Refrigerant Compressors                     Case No. 2:09-md-02042
Antitrust Litigation

                                                   Honorable Sean F. Cox
                                                   United States District Court


_____/

**MEMORANDUM OPINION**
**REGARDING THE COURT'S JULY 10, 2012 ORDER**

At a July 10, 2012 hearing, the Court addressed Defendants' argument that the named

Indirect Purchaser ("IP") Plaintiffs lack Constitutional standing to bring claims under the laws of

states/territories where no named IP Plaintiff claims to reside or have been injured.  This same

issue was raised in the following motions:  a) Defendants' Joint Motion to Dismiss the IP

Plaintiffs' complaint (D.E. No. 162); b) the Tecumseh Defendants' Motion to Dismiss the IP

Plaintiffs' complaint (D.E. No. 166); and c) the motions seeking to dismiss the *Gaffet* and *Strong*

*Electric* IP Plaintiffs' "Tag-Along" Complaints (D.E. Nos. 239 & 240).

Defendants contend that the named IP Plaintiffs lack standing to bring claims under the

laws of states/territories where no named IP Plaintiff claims to reside or have been injured.  In

response, IP Plaintiffs contend that the Court should defer any ruling on Constitutional standing

until the class certification stage.

In an order issued on July 10, 2012, this Court noted that the federal courts are split on

this issue, the Sixth Circuit has not ruled on the issue, and district courts within the Eastern

District of Michigan have issued conflicting opinions on the subject.  This Court further stated

that it was following the approach taken in *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d

642, (E.D. Mich. 2011), a recent MDL putative class action in the Eastern District of Michigan involving antitrust and consumer protection act claims asserted under the laws of many states, and would address the standing issue now. In addressing the standing issue at this stage of the litigation, this Court concluded that, based on the allegations in the IP Plaintiffs' Third Consolidated Amended Complaint:

1)     there is at least one named IP Plaintiff with Constitutional Standing to assert claims under the laws of the following states/territories: Arizona; California; District of Columbia; Kansas; New Hampshire; New Mexico; New York; North Carolina; Michigan; West Virginia; Wisconsin; Rhode Island; Maine; Nebraska; Minnesota; Florida; Tennessee; and Massachusetts; and

2)     the named IP Plaintiffs lack Constitutional standing to bring claims under the laws of states/territories where no named IP Plaintiff claims to reside or have been injured.

Accordingly, the Court DISMISSED the IP Plaintiffs' claims asserted under the laws of the following states/territories: Arkansas; Hawaii; Iowa; Louisiana; Mississippi; Nevada; North Dakota; Puerto Rico; South Dakota; Utah; and Vermont. This Memorandum Opinion sets forth the Court's reasons for that ruling.

## BACKGROUND

Beginning in February 2009, Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs filed complaints in various jurisdictions asserting claims against Defendants. Those actions were consolidated for pretrial proceedings by the United States Judicial Panel on Multidistrict Litigation.

On May 26, 2010, the Court issued Case Management Order No. 1, which was agreed to by counsel for the parties. (D.E. No. 152). It provides that the Direct and Indirect Purchaser

Plaintiffs shall separately file Master Amended Complaints including each Defendant no later than June 30, 2012.  (*Id.* at 8).  It also provides that Defendants may thereafter file motions to dismiss the master amended complaints.  (*Id*. at 9-10).

The IP Plaintiffs filed their Consolidated Amended Complaint on June 30, 2010.  (D.E. No. 154).

On September 21, 2010, they filed their Second Consolidated Amended Complaint. (D.E. No. 174).  In it, they seek class certification and assert state-law antitrust claims, consumer protection / unfair competition claims, and unjust enrichment claims against all Defendants.

The SCAC describes the nature of the case as follows.  This case arises from "a long-running, world-wide conspiracy" among Defendants "to fix, raise, maintain, and/or stabilize the prices of, and to allocate customers and markets for, Hermetic Compressors," thus artificially raising the prices for Hermetic Compressors and products containing Hermetic Compressors." (SCAC at ¶ 1).  IP Plaintiffs allege that the conspiracy was effective and that "end-payor purchasers of Hermetic Compressor Products were among its many victims."  (SCAC at ¶ 2). "The Hermetic Compressor is the critical engine in refrigeration products."  (SCAC at ¶ 3). "Defendants sold Hermetic Compressors through a number of channels, including in the refrigerator and freezer channel (the 'R&F' channel or 'R&F Market'), which is dominated by a few large Original Equipment Manufacturers ('OEMs'), including Electrolux and General Electric."  (SCAC at ¶ 4).  "Sales of Hermetic Compressors in the R&F channel involve a yearly bidding process by which the OEMs invite Defendants to compete for each OEM's yearly compressor needs.  The OEMs invite all the manufacturers of Hermetic Compressor to participate in the bidding at a location and time of the OEM's choosing.  These negotiations are

critical for buyers and sellers alike as the prices at which Hermetic Compressors are sold to the

OEMs for the entire year are determined in the course of a few days.  All five Defendants

actively participated in these meetings."  (SCAC at ¶ 5).  "Defendants, however, created a sham

bidding system, secretly meeting before the annual contract negotiations, sharing bids with one

another and agreeing upon prices.  In addition, Defendants allocated among each other

respective shares of the OEM market."  (SCAC at ¶ 6).  As a result, "prices between 1996 and

2009 were artificially inflated.  This overcharge was then passed on to end payors in the form of

inflated prices for Hermetic Compressors and products containing them, such as refrigerators and

freezers."  (SCAC at ¶ 7).

The SCAC asserts the following counts:  1) "Violation of State Antitrust Statutes" (Count

I), which asserts antitrust claims under the laws of twenty-five different states; 2) "Violation of

State Consumer Protection and Unfair Competition Statutes" (Count II), which asserts claims

under the consumer protection acts of eleven different states; and 3) "Unjust Enrichment" (Count

III).

There are seventeen named IP Plaintiffs in the SCAC.  (*See* ¶¶ 20-36).  These named IP

Plaintiffs consist of four corporate entities and thirteen individuals who reside in various states.

The SCAC alleges that, during the class period, the named IP Plaintiffs "purchased

Hermetic Compressor Products as end payors, and not for resale, manufactured by one or more

Defendants.  As a result of the conspiracy alleged, Plaintiffs suffered pecuniary injury."  (SCAC

at ¶ 19).  Notably, with the exception of one named IP Plaintiff (Royal W. Leith), the SCAC did

not allege where any of the named IP Plaintiffs made their alleged purchases.

With respect to the all named IP Plaintiffs other than Leith, the SCAC contained

4

allegations regarding each one's state of residence or principal place of business, but contained no allegations as to where each purchased Compressor Products or where the alleged injury was incurred.

The SCAC also did not identify who manufactured any of the compressor products that they purchased.  (SCAC at ¶ 19 & ¶¶ 20-36).

The SCAC states that the IP Plaintiff seek to bring a class action on behalf of the following class:

> All persons and entities that purchased Hermetic compressors ("Hermetic Compressors") or products that contained Hermetic Compressors as an end payor, and not for resale, in the states of Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin at any time from January 1, 1996 through December 31, 2009 from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator.
>
> Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, person who purchased Hermatic Compressors directly, and persons who purchased Hermetic Compressors indirectly for resale.

(SCAC at ¶ 130). The SCAC further stated that "[i]n the alternative, Plaintiffs may seek the certification of subclasses."  (SCAC at ¶ 131).

**The *Gaffet* And *Strong Electric* "Tag-Along" Actions**

Two "tag-along" actions, one from Rhode Island and one from Maine, were transferred to this Court on March 16, 2011 – after the IP Plaintiffs had filed their SCAC.  (D.E. No. 227).

Thus, the claims of these two named IP Plaintiffs were not in the IP Plaintiffs' SCAC.

Defendants filed a joint "Motion to Dismiss the *Gaffet* and *Strong Electric* Indirect Purchaser Plaintiffs' Tag-Along Complaints" on May 6, 2011. (Docket Entry No. 239). In this motion, Defendants challenge the claims in this action on the same grounds raised in their joint Motion to Dismiss the IP Plaintiffs' operative complaint, including lack of Constitutional standing.

In addition, the Tecumseh Defendants filed their own "Motion to Dismiss the *Gaffet* and *Strong Electric* Tag-Along Indirect Purchaser Actions" on May 6, 2011. (Docket Entry No. 240). That motion also includes a challenge based on lack of Constitutional standing.

**The IP Plaintiffs File Their Third Consolidated Amended Complaint, Which Now Includes Gaffet and Strong Electric, On July 6, 2012.**

The Court scheduled a hearing to take place on July 10, 2012. Prior to that hearing, the Court advised counsel for the parties to familiarize themselves with *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642, (E.D. Mich. 2011) prior to the hearing.

Thereafter, the IP Plaintiffs sought leave to file an amended complaint. (*See* Docket Entry Nos. 307, 311 & 312).

Following a Status Conference, the parties agreed that: 1) Defendants do not oppose the IP Plaintiffs' requests to file an amended complaint as requested in Docket Entry Nos. 307, 311 and 312; 2) Defendants reserved all issues raised in their pending motions; and 3) the IP Plaintiffs would file their amended complaint by July 6, 2012. (*See* 6/29/12 Order, D.E. No. 313).

The IP Plaintiffs filed their Third Consolidated Amended Complaint ("TCAC") on July

6, 2012. The TCAC now includes allegations as to where each of the named IP Plaintiffs

purchased their respective compressor products and where they sustained injury. The TCAC

also added the two "tag-along" IP Plaintiffs (Gaffet and Strong Electric) and two new named IP

Plaintiffs (Peter Jacobus and Steve Larson).

On July 10, 2012, the Court heard oral argument on the Constitutional standing issue.

## ANALYSIS

**I.      Should This Court Address The Constitutional Standing Issue Now Or Defer Any
         Ruling Until The Class Certification Stage?**

"Standing to pursue a claim is a threshold question in every federal case." *McGlone v.*

*Bell,* __ F.3d __, 2012 WL 1403233 at *7 (6th Cir. 2012).   The burden of establishing standing

is on the party seeking federal court action. *Id.*; *see also Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d

787, 793 (6th Cir. 2009) ("A plaintiff bears the burden of demonstrating standing and must plead

its components with specificity."). "To establish Article III, constitutional standing, a plaintiff

must show: (1) it has suffered an injury in fact that is (a) concrete and particularized and (b)

actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision." *McGlone, supra*, at * 8; *Wuligar*, 567 F.3d at

793.

Defendants contend that the named IP Plaintiffs lack standing to bring claims under the

laws of states/territories where no named IP Plaintiff claims to reside or have been injured.

Defendants contend that a claim cannot be asserted on behalf of a class unless at least one named

plaintiff has suffered the injury that gives rise to that claim and that courts regularly dismiss

indirect purchasers' state law claims where, as here, no named plaintiff has standing to pursue

such claims.  They direct the Court to decisions from several district courts concerning antitrust

MDL cases.

In response, the IP Plaintiffs do not deny their burden of establishing Article III standing.

They assert, however, that Defendants have raised this issue prematurely.  They contend that the

Court should not consider the Constitutional standing issue until the class certification stage.


"In the cases of *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138

L.Ed.2d 689 (1997) and *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d

715 (1999), the Supreme Court considered the question whether a determination of standing or a

determination of class certification should come first."  *Smith v. Lawyers Title Ins. Corp*., 2009

WL 514210 (E.D. Mich. 2009, J. Murphy).  "In those cases, the Supreme Court found that since

the class certification issue was 'logically antecedent' to the standing issue, it was appropriate to

consider class certification first, instead of standing."  *Smith, supra* (citing *Amchem* and *Ortiz*).

There is currently a split among federal courts as to the application of the "logical

antecedent" language and the question of whether standing can be considered prior to class

certification in class action lawsuits.  *Id.*

At least two district courts in the Eastern District of Michigan have concluded that

standing can, and should be, considered prior to class certification.  *Smith, supra*; *In re Packaged*

*Ice Antitrust Litig.*, 779 F.Supp.2d 642, (E.D. Mich. 2011).

Like this case, *In re Packaged Ice* was an MDL putative class action and indirect

purchaser plaintiffs filed a complaint asserting antitrust and consumer protection act claims

under the laws of numerous states.  As in this case, the defendants in *In re Packaged Ice* asserted

that the IP Plaintiffs lacked standing to sue under the law of states where no named Plaintiff

resides.  The IP Plaintiffs in that case, like the IP Plaintiffs here, asserted that the standing

challenge was premature and that the court should defer its decision until the class certification

stage.  The court noted that the federal courts are split on this issue, that the Sixth Circuit has not

ruled on this issue, and that district courts within this district have issued conflicting opinions on

the subject.  *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d at 654.

The court noted that two Supreme Court opinions, *Ortiz* and *Amchem* "are at the heart of

the issue."  *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d at 654.  The court concluded, as

did the Ninth Circuit in *Easter*, that "neither *Ortiz* nor *Amchem requires* that Article III standing

issues be deferred until a class has been certified."  *Id.* (emphasis added)  The court agreed with

the *Easter* court that although *Ortiz* examined class issues before the question of Article III

standing, it did so in the very specific context of a mandatory global settlement class and that the

decision does not require courts to consider class certification before standing.  *Id.*  The court

explained:

> The IP Plaintiffs cite a string of cases holding that the issue of class certification
> may be addressed prior to the threshold issue of standing.  None of these cases is
> from the Sixth Circuit and none is binding on this Court.  This Court chooses to
> follow what it finds to be the better-reasoned opinions on this issue which
> recognize and refuse to abandon the fundamental prudential standing
> requirements of Article III.  *See, e.g., Easter and Wellbutrin*.  The Court
> concludes that many of those courts that have adopted the "but for" approach, and
> put off for another day this fundamental inquiry, ignore the limited context in
> which *Ortiz* and *Amchem* permit the Article III standing analysis to be deferred.
> As in *Wellbutrin*, "[t]his case does not present an issue that is "logically
> antecedent" to a standing inquiry. The standing issues in *Ortiz* and *Amchem*
> related to proposed class members, i.e., persons who were not yet parties to the

case.  It would be illogical to find that a non-party lacks standing to pursue a
claim precisely because they are not pursuing a claim.  Thus, the question of
whether the proposed class members could become parties to the case was
logically antecedent to the question of whether they had standing to make claims
against the defendants in those cases.  In this case, however, the Court reviews the
standing of actual, not proposed, plaintiffs." *Wellbutrin*, 260 F.R.D. at 154.  In
cases such as the instant case, where the putative plaintiffs' injury is in doubt,
Article III standing issues should be resolved in the first instance.

*Id.* at 656.

The court found another district court's discussion of this standing issue, in the context of

a class action in which the named plaintiffs sought to bring claims under the laws of states where

no named plaintiff were located, to be persuasive.  *Id.* (citing *In re Wellbrutrin XL Antitrust*

*Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009)).  It quoted from that decision, a paragraph that concisely

explains why, as a practical matter, the plaintiffs' position should be rejected in cases like this:

The alternative proposed by the plaintiffs would allow named plaintiffs in a
proposed class action, with no injuries in relation to the laws of certain states
referenced in their complaint, to embark on lengthy class discovery with respect
to injuries in potentially every state in the Union.  At the conclusion of discovery,
the plaintiffs would apply for class certification, proposing to represent the claims
of parties whose injuries and modes of redress they would not share.  That would
present the precise problem that the limitations of standing seek to avoid.  The
Court will not indulge in the prolonged and expensive implications of the
plaintiffs' position only to be faced with the same problem months down the road.

*Id*. (quoting *In re Wellbrutrin XL Antitrust Litig.*, 260 F.R.D. at 155).

This Court finds *In re Packaged Ice* and *Wellbrutrin XL Antitrust Litig*. persuasive and

concludes that the standing issue should be addressed now.


II.     **Do The Named IP Plaintiffs Have Constitutional Standing To Assert The Claims In
        The TCAC?**

10

This Court must now determine whether the named IP Plaintiffs have Constitutional standing to assert the claims in the TCAC.

After determining that the standing issue does not have to be deferred, the district court in *In re Packaged Ice Antitrust Litig.* then proceeded to address whether the named IP Plaintiffs had standing. *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d at 657. There, the named IP Plaintiffs resided in five states yet asserted claims in 26 additional states in which admittedly none of them resided. *Id.* The court concluded that the named IP Plaintiffs did have standing to assert claims under the laws of their respective home states, noting that their complaint alleged that the named IP Plaintiffs suffered injury in their home states. *Id.* at 659.

The court also concluded, however, that as in many cases in which "courts have chosen to address the standing issue prior to class certification, named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no jury." *Id.* (citations omitted). The court noted that the "IP Plaintiffs' claims under the antitrust and consumer protection act claims of states in which they do not reside do 'little more than name the preserve on which they intend to hunt.'" *Id.* (quoting *Cornelius v. Fidelity Nat'l Title Co.*, 2009 WL 596585 (D. Wash. 2009)). It concluded that the IP Plaintiffs' complaint "fails to name plaintiffs who have suffered the injuries giving rise to claims under the laws of any of the states in which the named Plaintiffs do not reside. The current Plaintiffs have no standing to bring those claims." *Id.* at 659. Thus, the court dismissed the IP Plaintiffs' claims under the laws of 26 states.

In this case, the IP Plaintiffs seek to assert state-law antitrust, consumer protection act, and unjust enrichment claims against Defendants under the laws of Puerto Rico, Washington

D.C., and 27 different states.  The SCAC included twenty-one named IP Plaintiffs who reside in, or have their principal place of business in, the following states/territories:   Arizona; California; District of Columbia; Kansas;  New Hampshire; New Mexico; New York; North Carolina; Michigan; West Virginia; Wisconsin;  Rhode Island; Maine; Nebraska; Minnesota; Florida; Tennessee; and Massachusetts.

The SCAC alleged that the named IP Plaintiffs "purchased Hermetic Compressor Products as end payors, and not for resale, manufactured by one or more Defendants.  As a result of the conspiracy alleged, Plaintiffs suffered pecuniary injury."  (SCAC at ¶ 19).  Notably, however, with the exception of one named IP Plaintiff (Royal W. Leith), the SCAC did not allege where any of the named IP Plaintiffs' alleged purchases took place or where they claim to have suffered any injury.

The IP Plaintiffs' Third Consolidated Amended Complaint ("TCAC"), now alleges where each of the named IP Plaintiffs purchased their respective Hermetic Compressor Products and claims to have suffered injury.

It is undisputed that at least one named IP Plaintiff has Constitutional standing to assert claims under the laws of the followings states/territories: Arizona; California; District of Columbia; Kansas;  New Hampshire; New Mexico; New York; North Carolina; Michigan; West Virginia; Wisconsin;  Rhode Island; Maine; Nebraska; Minnesota; Florida; Tennessee; and Massachusetts.

Defendants contend that the TCAC's claims asserted under the laws of all remaining states and territories, however, must be dismissed for lack of standing.

These remaining claims are akin to the claims that were dismissed in *In re Packaged Ice*

12

and *In re Wellbrutrin* because no named IP Plaintiff resides in or was injured in those states.

The TCAC contains no factual allegations that connect any injuries by the named IP Plaintiffs to

any causes of action arising in these states.  Thus, the TCAC alleges no facts "on which to find a

connection between an alleged injury and some wrongful conduct that would implicate the laws

of" these states in which no named IP Plaintiff resides.  *In re Wellbrutrin*, 260 F.R.D. at 157.

Accordingly, the Court concludes that the claims in the TCAC that are asserted under the laws of

the following states/territories must be DISMISSED for lack of Constitutional standing:

Arkansas; Hawaii[1]; Iowa; Louisiana; Mississippi; Nevada; North Dakota; Puerto Rico; South

Dakota; Utah; and Vermont.

CONCLUSION & ORDER

For the reasons set forth above, Defendants' pending motions to dismiss are GRANTED

IN PART.  The motions are GRANTED to the extent that the Court ORDERS that the IP

Plaintiffs' claims in the TCAC, asserted under the laws of the following states/territories, are

DISMISSED: 1) Arkansas; 2) Hawaii; 3) Iowa; 4) Louisiana; 5) Mississippi; 6) Nevada; 7)

North Dakota; 8) Puerto Rico; 9) South Dakota; 10) Utah; and 11) Vermont.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  July 17, 2012

---

[1]The IP Plaintiffs' SCAC included claims asserted under Hawaii law.  Their TCAC no longer asserts claims under the law of Hawaii but the IP Plaintiffs had not advised the Court that they intended to dismiss claims asserted under Hawaii law.  The Court therefore includes Hawaii here, in the event that claims asserted under Hawaii law were deleted in error.

13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Refrigerant Compressors                     Case No. 2:09-md-02042
Antitrust Litigation

                                                   Honorable Sean F. Cox
                                                   United States District Court


_____/

PROOF OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon counsel of record

on July 17, 2012, by electronic and/or ordinary mail.

                                   S/Jennifer Hernandez_____
                                   Case Manager