UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Refrigerant Compressors                    Case No. 2:09-md-02042
Antitrust Litigation

                                                   Honorable Sean F. Cox
                                                   United States District Court

_____/

## OPINION & ORDER

This Multi District Litigation matter involves putative class action claims asserted against

multiple corporate Defendants by: 1) Direct Purchaser ("DP") Plaintiffs (who assert federal

antitrust claims); and 2) Indirect Purchaser ("IP") Plaintiffs (who assert state-law antitrust,

consumer protection act, and unjust enrichment claims).  This Court has already ruled with

respect to Motions to Dismiss as to the DP Plaintiffs' claims.

The matter is now before the Court with respect to remaining challenges to the claims

asserted by the IP Plaintiffs.  For the reasons that follow, with respect to the IP Plaintiffs' state-

law antitrust claims, this Court shall rule:

> 1)     consistent with its rulings as to the DP Plaintiffs' claims, that the IP Plaintiffs'
>        current complaint now alleges plausible antitrust claims under *Twombly*;
>
> 2)     that the *AGC* test should be used to determine whether antitrust standing
>        exists under the laws of most of the states at issue and, under that test, the
>        IP Plaintiffs lack antitrust standing; and
>
> 3)     that the IP Plaintiffs have failed to allege a substantial effect on intrastate
>        commerce and therefore cannot proceed with an antitrust claim under
>        Tennessee's antitrust statute.

Thus, the only antitrust claims that will remain in this action are the IP Plaintiffs' claims under

1

the antitrust statutes of North Carolina and Minnesota.

With respect to the IP Plaintiffs' state-law consumer protection act claims, this Court shall:

1)    dismiss claims brought under the consumer protection acts of New Hampshire and North Carolina, for lack of intrastate commerce allegations;

2)    dismiss claims brought under the consumer protection act of Florida, for failure to plead such claims with particularity;

3)    dismiss claims brought under the consumer protection act of Wisconsin because, except with respect to limited circumstances that are not alleged here, there is no private right of action under the section at issue;

4)    dismiss claims brought under the consumer protection act of the District of Columbia because the sole named D.C. IP Plaintiff does not, and could not, assert that it purchased primarily for personal, household, or family uses, as required by the act; and

5)    deny all other challenges to the consumer protection act claims without prejudice.

Thus, the only consumer protection act claims that will remain in this action are the claims under the consumer protection acts of California, Massachusetts, New Mexico, and Rhode Island.

With respect to the IP Plaintiffs' unspecified unjust enrichment count, this Court shall dismiss that count with prejudice.

This Court declines to rule on the statute of limitations challenges at this time, because those issues would be more appropriately addressed in a motion for summary judgment following discovery.

The Court also declines to address the Foreign Trade Antitrust Improvements Act challenges as this stage of the litigation.  Defendants can renew these arguments, if they choose

2

to do so, after discovery.

## BACKGROUND

Beginning in February 2009, the DP Plaintiffs and IP Plaintiffs filed complaints in various jurisdictions asserting claims against Defendants. Those actions were consolidated for pretrial proceedings by the United States Judicial Panel on Multi district Litigation.

**Case Management Order No. 1**

The Court issued Case Management Order No. 1 (the "CMO") on May 26, 2010. (D.E. No. 152). Among other things, the CMO provides that the DP & IP Plaintiffs shall separately file Master Amended Complaints including each Defendant no later than June 30, 2012. (*Id.* at 8). It also provides that Defendants may thereafter file motions to dismiss the master amended complaints. (*Id.* at 9-10). In addition, the CMO provides that within thirty days of any transfer to this Court of a "tag-along" action, Defendants may file or renew motions to dismiss. (*Id.* at 10).

**The IP Plaintiffs' First Two Consolidated Amended Complaints**

The IP Plaintiffs filed their Consolidated Amended Complaint on June 30, 2010. (D.E. No. 154).

On September 21, 2010, the IP Plaintiffs filed their Second Consolidated Amended Complaint ("SCAC"). (D.E. No. 174). In it, they seek certification of a nationwide class, and assert state-law antitrust claims, consumer protection / unfair competition claims, and unjust enrichment claims against Defendants.

The SCAC describes the nature of the case as follows. This case arises from "a long-running, world-wide conspiracy" among Defendants "to fix, raise, maintain, and/or stabilize the

prices of, and to allocate customers and markets for, Hermetic Compressors," thus artificially raising the prices for Hermetic Compressors and products containing Hermetic Compressors." (SCAC at ¶ 1). The IP Plaintiffs allege that the conspiracy was effective and that "end-payor purchasers of Hermetic Compressor Products were among its many victims." (SCAC at ¶ 2). "The Hermetic Compressor is the critical engine in refrigeration products." (SCAC at ¶ 3). "Defendants sold Hermetic Compressors through a number of channels, including in the refrigerator and freezer channel (the 'R&F' channel or 'R&F Market'), which is dominated by a few large Original Equipment Manufacturers ('OEMs'), including Electrolux and General Electric." (SCAC at ¶ 4). "Sales of Hermetic Compressors in the R&F channel involve a yearly bidding process by which the OEMs invite Defendants to compete for each OEM's yearly compressor needs. The OEMs invite all the manufacturers of Hermetic Compressor to participate in the bidding at a location and time of the OEM's choosing. These negotiations are critical for buyers and sellers alike as the prices at which Hermetic Compressors are sold to the OEMs for the entire year are determined in the course of a few days. All five Defendants actively participated in these meetings." (SCAC at ¶ 5). "Defendants, however, created a sham bidding system, secretly meeting before the annual contract negotiations, sharing bids with one another and agreeing upon prices. In addition, Defendants allocated among each other respective shares of the OEM market." (SCAC at ¶ 6). As a result, "prices between 1996 and 2009 were artificially inflated. This overcharge was then passed on to end payors in the form of inflated prices for Hermetic Compressors and products containing them, such as refrigerators and freezers." (SCAC at ¶ 7).

The SCAC asserts the following counts: 1) "Violation of State Antitrust Statutes" (Count

4

I), which asserts antitrust claims under the laws of twenty-five different states; 2) "Violation of State Consumer Protection and Unfair Competition Statutes" (Count II), which asserts claims under the consumer protection acts of eleven different states; and 3) "Unjust Enrichment" (Count III).

There are seventeen named IP Plaintiffs in the SCAC (*see* SCAC at ¶¶ 20-36), which consist of four corporate entities and thirteen individuals who reside in various states.

The proposed class in the SCAC consists of "[a]ll persons and entities that purchased Hermetic compressors ("Hermetic Compressors") or products that contained Hermetic Compressors as an end payor, and not for resale, in the" specified states, "at any time from January 1, 1996 through December 31, 2009 from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator."  (SCAC at ¶ 130).

The SCAC alleges that, during the class period, the named IP Plaintiffs "purchased Hermetic Compressor Products as end payors, and not for resale, manufactured by one or more Defendants.  As a result of the conspiracy alleged, Plaintiffs suffered pecuniary injury."  (SCAC at ¶ 19).  Notably, with the exception of one named IP Plaintiff (Royal W. Leith), the SCAC does not allege where the named IP Plaintiffs made any of their alleged. purchases.  As to Leith, the SCAC alleges that he resides in Massachusetts and that he made his purchase in Massachusetts. (SCAC at ¶ 31).  With respect to the other named IP Plaintiffs, the SCAC contains allegations regarding each one's state of residence or principal place of business, but contains no allegations as to where each one purchased Compressor Products or where it claims to have been injured. The SCAC does not identify who manufactured any of the compressor products that they purchased.  (SCAC at ¶ 19 & ¶¶ 20-36).

5

**Motions to Dismiss The IP Plaintiffs' Claims**

As permitted by the CMO, Defendants filed a joint Motion to Dismiss the IP Plaintiffs'

claims (D.E. No. 162), and that motion asserts numerous challenges.

In addition, two separate motions challenging the IP Plaintiffs' complaints were also filed

by: 1) the Tecumseh Defendants (D.E. No. 166); and 2) Appliances Components Companies

S.p.A. (Docket Entry No. 218).[1]

**Tag-Along Actions and Additional Motions to Dismiss The Claims Raised in Those Actions**

Two "tag-along" actions, one from Rhode Island and one from Maine, were transferred to

this Court on March 16, 2011 – after the IP Plaintiffs had filed their SCAC. (D.E. No. 227).

Thus, the claims of these two named IP Plaintiffs were not in the IP Plaintiffs' SCAC.

Defendants filed a joint "Motion to Dismiss the *Gaffet* and *Strong Electric* Indirect

Purchaser Plaintiffs' Tag-Along Complaints" (D.E. No. 239) on May 6, 2011. In this motion,

Defendants challenge the claims in this action on the same grounds raised in their Joint Motion

to Dismiss the IP Plaintiffs' operative complaint.

In addition, the Tecumseh Defendants filed their own "Motion to Dismiss the *Gaffet* and

*Strong Electric* Tag-Along Indirect Purchaser Actions." on May 6, 2011. (D.E. No. 240). That

motion contains the same or very similar challenges.

The *Strong Electric* and *Gaffet* IP Plaintiffs filed a combined response that responds to

both motions to dismiss their claims.

---

[1]Whirlpool Corporation also filed its own motion challenging both the DP and IP
Plaintiffs' claims against it, but it has been dismissed from this action.

**This Court's Ruling On Defendants' *Twombly* Challenge And The IP Plaintiffs' Request To File Another Consolidated Amended Complaint**

On June 7, 2009, this Court heard oral argument on the "*Twombly* challenge" set forth in Defendants' Joint "Motion to Dismiss the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint" (D.E. No. 162). After that hearing, the Court ruled that "the Indirect Purchaser Plaintiffs' current operative complaint, the 'Second Consolidated Amended Complaint', fails to state a claim under *Twombly*, except as to the claims asserted against Defendants Panasonic Corporation and Embraco North America, Inc., for the approximately three-year period set forth in the respective plea agreements." (D.E. No. 294). On June 11, 2012, this Court also issued a Memorandum Opinion, setting forth the basis for that ruling. (D.E. No. 300).

On June 21, 2012, the IP Plaintiffs filed a "Motion to Amend or Clarify the Court's June 7, 2012 Order and for Leave to File a Third Consolidated Amended Complaint" (D.E. No. 307). In that motion, the IP Plaintiffs asked the Court to clarify that the Court's June 7, 2009 Order did not foreclose the IP Plaintiffs from seeking leave to file another amended complaint.

The parties were scheduled to appear before this Court on June 29, 2012, at 2:30 p.m., for the continuation of the hearing on the motions challenging the IP Plaintiffs' claims. (*See* 6/20/12 Docket Entry).

On the morning of June 29, 2012, the IP Plaintiffs filed two separate submissions titled "Indirect Purchaser Plaintiffs' Supplemental Motion to Amend or Clarify the Court's June 7, 2012 Order and for Leave to File a Third Consolidated Amended Complaint" (D.E. Nos. 311 & 312). Those submissions attached proposed Third Consolidated Amended Complaints.

On the afternoon of June 29, 2012, the Court did not continue the motion hearing.

7

Rather, the Court held a Status Conference with the parties to discuss the IP Plaintiffs' recent filings and the most efficient manner with proceeding.  During the Status Conference, the parties were able to resolve certain issues.  Specifically, "[a]s stated on the record on June 29, 2012, Defendants and the IP Plaintiffs agreed" as follows:

1.     Defendants do not oppose the IP Plaintiffs' requests to file an amended complaint, as requested in Docket Entry Nos. 307, 311 and 312.

2.     Defendants reserve all issues raised in their pending Motions to Dismiss.

3.     The IP Plaintiffs will enter into a stipulation and order with Defendant Whirlpool Corporation (similar to Docket Entry No. 310) that dismisses their claims against Whirlpool Corporation with prejudice.

4.     On or before July 6, 2012, the IP Plaintiffs shall file their Revised Third Consolidated Amended Complaint.  The amended pleading shall be the same pleading attached to the IP Plaintiffs' Motion to Amend or Clarify the Court's June 7, 2012 Order and for Leave to File a Third Consolidated Amended Complaint (Docket Entry No. 307-2), with *only* the following additions or changes:

    a.     The two named IP Plaintiffs in the "Tag-Along" *Gaffett* and *Strong Electric* actions (i.e., Nat Gaffet and Strong Electric) shall be included as named IP Plaintiffs in the Revised Third Consolidated Amended Complaint.[2]

    b.     The two additional named IP Plaintiffs identified in Docket Entry Nos. 311 & 312 (i.e., Peter Jacobus and Steve Larson) may be included as named IP Plaintiffs in the Revised Third Consolidated Amended Complaint.

    c.     The IP Plaintiff may correct any "scrivener's errors" regarding the allegations specific to the existing named IP Plaintiffs in Docket Entry No. 307-2.

---

[2]As such, the Motions to Dismiss directed to the tag-along Defendants were terminated.

8

      d.      The IP Plaintiffs may delete Whirlpool Corporation as a Defendant.

5.      Barring a very exceptional circumstance, no further amendments shall be permitted.

6.      Following the filing of the IP Plaintiffs' Revised Third Amended Complaint, the briefing schedule for supplemental briefs addressing the pending motions to dismiss shall be as follows:

      a.      No later than July 20, 2012, Defendants may file brief addressing the IP Plaintiffs' Revised Third Amended Complaint.

      b.      No later than August 3, 2012, the IP Plaintiffs may file responses to those briefs.

      c.      No later than August 10, 2012, Defendants may file reply briefs.

(D.E. No. 313).

**The IP Plaintiff's Third Consolidated Amended Complaint**

On July 6, 2012, the IP Plaintiffs filed their revised Third Consolidated Amended Complaint ("TCAC").  (D.E. No. 314)  This is now the operative complaint for purposes of the remaining challenges in the pending motions.  Notably, in the TCAC, the IP Plaintiffs: 1) added the more specific factual allegations regarding the conspiracy that were contained in the DP Plaintiffs' consolidated complaint; 2) revised the proposed class definition such that it asserts claims for a reduced time period; 3) added the named IP Plaintiffs from the *Gaffet* and *Strong Electric* "tag-a-long" actions; 4) added two entirely new IP Plaintiffs (Peter Jacobus and Steve Larson); 5) added allegations as to where the named IP Plaintiffs made their respective purchases; and 6) added Danfoss Flensburg GmbH, formerly Danfoss Compressors GmbH as a named Defendant.

On July 10, 2012, the IP Plaintiffs dismissed all claims against Defendant Whirlpool Corporation with prejudice, subject to terms set forth in a Stipulated Order.  (D.E. No. 317).[3]

**This Court's Ruling Regarding Constitutional Standing**

On July 10, 2012, the Court held a hearing regarding Defendants' argument that the named IP Plaintiffs lack constitutional standing to bring claims under the laws of states/territories where no named IP Plaintiff claims to reside or have been injured.  Following the hearing, the Court ruled that based upon the allegations in the IP Plaintiffs' TCAC:  1) there is at least one named IP Plaintiff with constitutional standing to assert claims under the laws of the following states/territories: Arizona; California; District of Columbia; Kansas; New Hampshire; New Mexico; New York; North Carolina; Michigan; West Virginia; Wisconsin; Rhode Island; Maine; Nebraska, Minnesota; Florida; Tennessee; and Massachusetts; and 2) the named IP Plaintiffs lack constitutional standing to bring claims under the laws of states/territories where no named IP Plaintiff claims to reside or have been injured.  The Court therefore dismissed the IP Plaintiffs' claims asserted under the laws of the following states/territories: Arkansas; Hawaii; Iowa; Louisiana; Mississippi; Nevada; North Dakota; Puerto Rico; South Dakota; Utah; and Vermont. (*See* D.E. Nos. 318 & 319).

Thereafter, the IP Plaintiffs and Defendants filed supplemental briefs regarding the remaining issues raised in the Defendants' Motions to Dismiss.  Thus, the motions have been exhaustively briefed by the parties.  The Court finds that additional oral argument would not significantly aid the decisional process.  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern

---

[3]As such, Whirlpool Corporation's Motion to Dismiss as to the IP Plaintiffs was terminated.

District of Michigan.  The Court therefore orders that the remaining issues will be decided upon the briefs.

**LEGAL STANDARD**

Where subject matter jurisdiction is challenged pursuant to FED. R. CIV. P. 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.  *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded factual allegations as true.  *Evans-Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1948 (2009).  Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account.  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

**ANALYSIS**

The following pending Motions to Dismiss challenge claims asserted by the IP Plaintiffs: 1) Defendants' Joint Motion to Dismiss (Docket Entry No. 162); 2) the Tecumseh

11

Defendants' Motion to Dismiss (Docket Entry No. 166); and 3) Appliances Components Companies S.p.A.'s Motion to Dismiss (Docket Entry No. 218). This Court has already ruled on the constitutional standing arguments raised in Defendants' motions. The Court shall now address the remaining challenges contained in those motions.

I. **Should The IP Plaintiffs' Current Complaint Be Dismissed For Failure To Allege Plausible Antitrust Claims Under *Twombly*?**

Because Defendants wish to preserve their argument on this challenge, they included a reference to it in their supplemental briefs. But given the Court's rulings on the Motions seeking to dismiss the federal antitrust claims against the Direct Purchaser ("DP") Plaintiffs (*see* D.E. No. 245 at 18-21), and the fact that the IP Plaintiffs' operative complaint now contains the very same factual allegations as are contained in the DP Plaintiffs' complaint, the Court concludes that the IP Plaintiff's current complaint now alleges plausible antitrust claims under *Twombly*.

II. **Do The IP Plaintiffs Lack Antitrust Standing To Assert Claims As "End Payers" Of Products Containing Compressors Under *Associated General Contractors*?**

The pending motions assert that the IP Plaintiffs lack antitrust standing to assert claims as "end payors" of products containing compressors, under *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*") and its progeny.

A. **Does *AGC* Govern Whether Plaintiffs Have Antitrust Standing Under The State Statutes At Issue?**

In Count I of the IP Plaintiffs' TCAC, they assert claims under the state antitrust statutes of the following states: 1) Arizona; 2) California; 3) District of Columbia; 4) Kansas; 5) Maine; 6) Michigan; 7) Minnesota; 8) Nebraska; 9) New Hampshire; 10) New Mexico; 11)

New York; 12) North Carolina; 13) Tennessee; 14) West Virginia; and 15) Wisconsin. (*See* TCAC at 47-50).[4]

The first issue the Court must decide is which states apply *AGC* in determining whether an antitrust plaintiff has standing under its state antitrust laws.

The IP Plaintiffs concede that the *AGC* test must be applied to their antitrust claims asserted under Nebraska law. (*See* D.E. No. 328 at 3; *Kanne v. Visa U.S.A., Inc.*,723 N.W.2d 293 (Neb. 2006)).[5]

Defendants contend that the following[6] states also follow the *AGC* test to claims brought under their antitrust statutes: 1) Arizona; 2) California; 3) District of Columbia; 4) Kansas; 5) Maine; 6) Michigan; 7) New Hampshire; 8) New Mexico; 9) New York; 10) West Virginia; and 11) Wisconsin. (D.E. No. 325 at 2 and Ex. 1 to D.E. No. 325).

Defendants contend that the IP Plaintiffs lack standing to assert state antitrust claims based on purchases of refrigeration products. They note that, under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977), only direct purchasers of an allegedly price-fixed product may pursue private actions for monetary damages under federal antitrust laws. They assert that several states responded to *Illinois Brick* by "repealing," either statutorily or judicially, the categorical bar

---

[4]The TCAC also asserted claims under additional states, but the Court has since dismissed those claims due to lack of constitutional standing.

[5]In fact, under *Kanne*, the *AGC* test must also be applied to the IP Plaintiff's claims under Nebraska's consumer protection act. *Id*. at 301.

[6]Defendants' motions also asserted that the *AGC* test applied to any antitrust claims asserted under the laws of additional states, such as Florida and Massachusetts. But the IP Plaintiffs' TCAC does not assert antitrust claims asserted under the laws of those states.

13

against indirect purchaser lawsuits under their own respective state antitrust laws.  They assert that even in such "repealer" jurisdictions, however, the mere fact that a plaintiff claims to be an indirect purchaser does not mean that plaintiff has antitrust standing.  They contend that while such repealer states removed the automatic bar, an indirect plaintiff must still establish antitrust standing requirements.  Although the test was developed in the context of federal antitrust claims, Defendants content that in order to decide if indirect purchasers have standing, the *AGC* Test should be applied.  Under that test, the evaluating court weighs five factors.  Defendants contend that most states expressly prohibit indirect purchaser claims by plaintiffs who fail to satisfy the *AGC* standing requirements.  They also contend that other jurisdictions have "harmonization provisions" that require their respective antitrust laws to be construed in accordance with federal law, and thus the *AGC* standing requirements apply to those state-law claims.

In response, the IP Plaintiffs first assert that it makes no sense to apply *AGC* to repealer states' antitrust laws.  (D.E. No. 189 at 9).  They assert that "[a]pplying *AGC* factors to determine standing under the laws of states that have deliberately repealed *Illinois Brick* would revive precisely the barriers to recovery that the pertinent states deliberately rejected by 'repealing' *Illinois Brick*."  (*Id*. at 10).  They also assert that federal courts have refused to apply *AGC* to state antitrust laws absent a clear directive from a state.  The IP Plaintiffs acknowledge that the *AGC* test must be applied to their antitrust claims asserted under the laws of Iowa and Nebraska because the supreme courts of those two states have so held.  (D.E. No. 189 at 11).  As to the remaining states, they contend that decisions cited by Defendants are from state trial or appellate courts and therefore do not provide the "'clear directive' necessary for indicating a wholesale

adoption of AGC."  (*Id.*).

The IP Plaintiffs argue that in looking at whether a given state applies *AGC* to its antitrust laws this Court should only consider decisions by a state's supreme court.  They assert that some federal courts looking at this issue have found lower state-court decisions to be insufficient.  IP Plaintiffs direct the Court to *In re Graphics Processing Units Antitrust Litig.*, 540 F.Supp.2d 1085, 1097 (N.D. Cal. 2007) and *D.R. Ward Constr. Co. v. Rohm and Haas Co.*, 470 F.Supp.2d 485, 496 (E.D. Pa. 2006).

Defendants, on the other hand, contend that numerous federal courts have applied *AGC* to the state antitrust laws at issue.  They direct the Court to *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F.Supp.2d 1072, 1085-96 (N.D. Cal. 2007); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F.Supp.2d 1129, 1135 & n.2 (N.D. Cal. 2008); *In re Intel Corp. Microprocessor Antitrust Litig.,* 496 F.Supp.2d 404, 408-09 (D. Del. 2007); and *Sahagian v. Genera Corp. (In re Aftermarket Auto. Lighting Prods. Antitrust Litig.)*, No. 08-7613, slip op. at p.7 (C.D. Cal. July 6, 2009).

This is a complex issue and, although it has repeatedly arisen in both state and federal courts, it has "resulted in a number of splintered opinions."  *Determining Antitrust Standing Under State Law,* 3 J. Bus. Entrepreneurship & L. 255 (2010).

In this Court's view, the most persuasive of the decisions relied on by the parties is *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F.Supp.2d 1072, 1085-96 (N.D. Cal. 2007) ("DRAM I").  In that case, the district court looked at thirteen states.  With respect to eight of the states, it concluded that they would support application of the *AGC* test in assessing antitrust standing.  *Id.* at 1093-94.  Specifically, it found that with respect to eight states, the state

15

courts in each had "concluded not only that antitrust standing is distinct from the issue of indirect

purchaser standing, but that application of the *AGC* factors is a proper means of determining

antitrust standing." *Id*. at 1094.  It then cited numerous trial and appellate courts from those

states.  *Id*. The district court explained:

> The court finds these authorities persuasive, and has relied on them as helpful
> guidance in concluding that application of the *AGC* factors to the instant case is
> appropriate.  While the cases do not emanate from the states' highest courts, they
> do emanate from courts with jurisdictional authority over the individual states in
> question, which courts are called upon to interpret the individual state laws at
> issue with more frequency and regularity than this court.  Moreover, plaintiffs
> have failed to come forward with any contrary authority from the states in
> question.

*Id.* at 1094-95.

This Court chooses to follow the approach taken by the district court in *In re Dynamic*

*Random Access Memory (DRAM) Antitrust Litig.*, 516 F.Supp.2d at 1085-96.  That approach

entails: 1) considering whether the states at issue have adopted the *AGC* test; and 2) then

applying the *AGC* test for those states that have adopted it.

There are only three states whose supreme courts have ruled on this issue: 1) Iowa, which

ruled that *AGC* test is to be applied (*Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 198 (Iowa

2007)); 2) Nebraska, which also applies the *AGC* test (*Kanne v. Visa U.S.A., Inc.*, 272 Neb. 489,

723 N.W.2d 293 (2006)); and 3) Minnesota, which ruled that the *AGC* test does not provide the

benchmark for antitrust standing in Minnesota (*Lorix v. Crompton Corp.*, 736 N.W.2d 619

(2007)).  Only two of those states (Nebraska and Minnesota) are relevant here.

As to the remaining states that are at issue in this case, there are only trial court and

appellate court decisions on the issue.

16

"Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court deciding a diversity case under state law must apply the law of the state's highest court.  If, however, the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from 'all relevant data.'" *Anderson Dev. Co. v. Travelers Indem*. Co., 49 F.3d 1128, 1131 (6th Cir. 1995) (quoting *Bailey v. V. & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)).  The "sources of data which may guide" such an inquiry include the decisional law of state appellate and trial courts which "are accorded weight," although "a federal court is not bound by lower determinations if convinced by other data that the state's highest court would determine otherwise."  *Bailey,* 770 F.2d at 604.  In addition, "consideration may be given to" positions expressed in restatements of law, law review commentaries, "and decisions from other jurisdictions or the 'majority rule.'"  *Id.*

Defendants have identified the following decisions in support of their position that these states apply *AGC*:  *Luscher v. Bayer AG*, No. 2004-01485, slip. op. at 2-3 (Arizona Super. Ct. Sept. 14, 2005); *Vinci v. Waste Mgmt., Inc.*, 43 Cal. Rptr.2d 337, 338-40 (Cal. App. 1995); *In re Wholesale Elec. Antitrust Cases I & II*, 147 Cal.App.4th 1293, 1309 (2007); *Peterson v. Visa U.S.A., Inc.*, No. 03-8080, 2005 D.C. Super. LEXIS 17, at *12 (D.C. Super. Ct. 2005); *Wrobel v. Avery Dennison Corp.*, No. 05-1296, slip. op. at 6-7 (Kan. Dist. Ct. Feb. 1, 2006); *Orr v. Beamon*, 77 F.Supp.2d 1208, 1211-12 (D. Kan. 1999); *DRAM*, 516 F.Supp.2d at 1094; *Knowles v. Visa U.S.A., Inc.*, No. 03-707, 2004 Me. Super LEXIS 227, at *13 (Me. Super. Ct. Oct. 20, 2004); *Stark v. Visa U.S.A., Inc.*, 2004 WL 1879003 (Mich. Cir. Ct. Jul. 23, 2004); *Ho v. Visa U.S.A., Inc.*, 787 N.Y.S.2d 677 (N.Y. Sup. Ct. 2004), aff'd 793 N.Y.S.2d 8 (N.Y. App. Div. 2005); and *Strang v. Visa U.S.A., Inc.*, No. 03-011323, 2005 WL 1403769, at *3 (Wis. Cir. Feb.

17

8, 2005). (*See* D.E. No. 162 at 15 and Appendix 2; D.E. No. 166 at 5; *see also* D.E. No. 325 at 2 and Ex. 1 to D.E. No. 325).

In response, the only contrary authority as to these states that the IP Plaintiffs provide is as to California. (*See* D.E. No. 189 at 12). That is, IP Plaintiffs do not offer any contrary authority (i.e., authority showing that these states do not apply the *AGC* test) as to Arizona, District of Columbia, Kansas, Maine, Michigan, New York, or Wisconsin.

As to California, IP Plaintiffs contend that *Clayworth* "makes clear that Defendants' argument is incorrect under California law." (D.E. No. 189) (citing *Clayworth v. Pfizer, Inc.,* 49 Cal.4th 758, 233 P.3d 1066 (2010)). But the Court fails to see how *Clayworth* helps the IP Plaintiffs. The decision did not address the issue of whether the *AGC* factors should be applied to determine if indirect purchasers have antitrust standing. Rather, it addressed whether the Cartwright Act permits a pass-on defense or whether, like federal law, it precludes it. It determined that "under the Cartwright Act, as under federal law, generally no pass-on defense is permitted." *Clayworth,* 233 P.3d at 49 Cal.4th at 671. As Defendants note, the decision's passing reference to "antitrust causation" cites favorably to *AGC* and the *Vinci* decision that Defendants rely on. *Id*. at 680.

Accordingly, the Court concludes that the following jurisdictions apply the *AGC* test: Arizona, California, District of Columbia, Kansas, Maine, Michigan, New York, and Wisconsin. The above cases illustrate why the IP Plaintiffs' argument –  that repealer jurisdictions simply allow all indirect purchaser plaintiff actions to go forward – should be rejected. If that position were accepted, those jurisdictions would "grant standing to the purchaser of a used bicycle asserting that the purchase price of the twice-sold bicycle was inflated due to a price fixing

18

conspiracy of a rubber manufacturer whose product was used to manufacture the tires of the bike." *Strang, supra*, at *3.

This Court shall also apply the *AGC* test to the claims asserted under the laws of the three relevant states with harmonization provisions (New Hampshire, New Mexico, and West Virginia). *See* N.H. Rev. Stat. Ann. § 356:14 (2010) ("In any action or prosecution under this chapter, the courts may be guided by interpretations of the United States' antitrust laws."); *Donovan v. Digital Equip. Corp.*, 883 F.Supp. 775, 786 (D. N.H. 1993) (applying federal antitrust standing requirements based on harmonization statute); N.M. Stat. Ann. §57-1-15 (2010) (providing the state statute "shall be construed in harmony with judicial interpretations of the federal antitrust laws. This construction shall be made to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices."); *Romero v. Phillip Morris, Inc.*, 109 P.3d 768, 771 (N.M. Ct. App. 2005) ("We interpret the Antitrust Act in harmony with federal antitrust laws when, as here, we have no New Mexico authority on point to guide us."); *Nass-Romero v. Visa U.S.A, Inc.*, 279 P.3d 772 (N.M. 2012) (Applying the *AGC* test because of the New Mexico antitrust statute's harmonization provision); W. Va. Code § 47-18-16 (2010) (providing that the state antitrust act shall "be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes.").

**B.  Do The IP Plaintiffs Have Antitrust Standing Under *AGC*?**

The next step is to actually apply the *AGC* test to the IP Plaintiffs' current complaint, to determine if they have antitrust standing.

"[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement" the Court must dismiss it as a matter of law. *Nicand,*

19

*Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007).

In *AGC,* the Supreme Court identified the following factors that courts are to weigh to determine "whether the plaintiff is a proper party to bring a private antitrust action": 1) the causal connection between the antitrust violation and harm to the plaintiff and whether that harm was intended to be caused; 2) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market; 3) the directness or indirectness of the injury; 4) the potential for duplicative recovery or complex apportionment of damages; and 5) the existence of more direct victims of the alleged antitrust violation. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519 (1983); *see also Southaven Land Co., Inc. v. Malone & Hyde, Inc*., 715 F.2d 1079, 1085 (6th Cir. 1983)**.** "These factors are to be balanced; no single factor is conclusive." *Bodie-Rickett and Assocs. v. Mars, Inc.,* 957 F.2d 287, 290 (6th Cir. 1992).

As explained below, the Court concludes that, under the *AGC* test**,** the IP Plaintiffs lack antitrust standing.

### Nature Of Alleged Injury And Status Of Plaintiff As Consumer Or Competitor In Relevant Market

The first *AGC* factor looks at the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market. The Sixth Circuit has stated that this factor is "significant." *Southaven Land Co., Inc*., 715 F.2d at 1086. This factor requires the Court to "examine plaintiffs' status in the relevant market." *Bodie-Rickett and Assocs.* 957 F.2d at 291.

Here, the TCAC alleges that Defendants engaged in a conspiracy to fix the prices of

hermetic compressors.  (TCAC at ¶¶ 1 & 19).  The relevant market is identified in the TCAC as the "Hermetic Compressors Market."  (*See, e.g.*, TCAC at 20, alleging the structure and characteristics of the "Hermetic Compressors Market", TCAC at 18, alleging that there are "substantial barriers to entry into the relevant Hermetic Compressors market").  Thus, the relevant market is the hermetic compressors market.  But the TCAC does not allege that any of the named IP Plaintiffs are either consumers or competitors in the hermetic compressor market.

Rather, the TCAC alleges that each of the named IP Plaintiffs purchased products that contain hermetic compressors.  (TCAC at ¶ 22; *see also* TCAC at ¶ 15, stating that the IP Plaintiffs "bring this action on behalf of themselves and all those similarly situated who purchased Hermetic Compressor Products as end payors").  They allege that the conspiracy increased prices for hermetic compressors and that the overcharges were then passed on to end payors in the form of inflated prices for products containing hermetic compressors.

The TCAC does contain two allegations that attempt to tie the IP Plaintiffs to the hermetic compressor market.  First, the TCAC alleges that the IP Plaintiffs "*effectively* participate in the market for Hermetic Compressors" through their end-payor purchases of products that contain hermetic compressors.  (TCAC at ¶ 145) (emphasis added).  By using the word "effectively," the IP Plaintiffs implicitly acknowledge that they are not actual consumers in the hermetic compressor market.  Thus, the IP Plaintiffs are not direct participants in the relevant market.

In *Province,* however, the Sixth Circuit "noted that a finding that a plaintiff is not a direct participant in the relevant market does not automatically preclude standing."  *Bodie-Rickett and Assocs.*, 957 F.2d at 291 (citing *Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047 (6th Cir.

21

1986)).  A plaintiff can also satisfy this aspect of the antitrust standing inquiry "by showing that plaintiff's injury is 'inextricably intertwined' with the injury sought to be inflicted on the relevant market." *Province,* 787 F.2d at 1052.  "To be inextricably intertwined with the injury to competition, the plaintiffs must have been 'manipulated, or utilized by [d]efendant as a fulcrum, conduit or market force to injure competitors or participants in the relevant product and geographic market.'" *Id.* (quoting *Southaven, supra*).  "An inextricably intertwined injury is one that results from the manipulation of the injured party as a means to carry out the restraint of trade in the product market." *Province*, 787 F.2d at 1052.

The IP Plaintiffs' second attempt to tie themselves to the hermetic compressor market is to allege that the "Market for Hermetic Compressors used in the commercial and household refrigeration market is inextricably linked with the market for commercial and household refrigeration products themselves. The relevant Hermetic Compressors exist to be incorporated into end products such as refrigerators and water coolers, without which the end products themselves would not function.  Put simply, without the Hermetic Compressors that are installed, unaltered, these end products would be little more than storage boxes."  (TCAC at ¶ 144).

Such allegations are insufficient under *Province.*  The IP Plaintiffs do not allege that they were manipulated in any way to injure participants in the relevant market.  Like the plaintiffs in *Province*, their injury is "at best, a result of – rather than a means to or cause of" – the injury sustained by the participants in the hermetic compressor market.  *Province,* 787 F.2d at 1052.

The Court concludes that this significant factor weighs against the IP Plaintiffs having antitrust standing.  Such a conclusion is consistent with other federal courts that have rejected a "component theory" of antitrust standing.  *DRAM*, 516 F.Supp.2d at 1091, *In re Potash Antitrust*

22

*Litig.*, 667 F.Supp.2d at 939-40; *see also Determining Antitrust Standing Under State Law,* 3 J. Bus. Entrepreneurship & L. 255 (2010) (Noting that this factor does not support standing in cases "where the price-fixing manufacturer sells a product to another manufacturer who uses that product to create a new product, and ultimately sells that new product to a consumer.").

**Causal Connection And Directness Of Injury**

The Court must also consider the causal connection between the antitrust violation and harm to the plaintiff. "An additional factor is the directness or indirectness of the asserted injury." *Assoc. Gen. Contractors*, 459 U.S. at 540.

In this case, the chain of causation between the alleged restraint in the market for hermetic compressors and the IP Plaintiffs' alleged injuries "contains several somewhat vaguely defined links." *Id*.

The IP Plaintiffs allege that Defendants engaged in a conspiracy to "fix, raise, maintain, and/or stabilize" the prices of hermetic compressors. (TCAC at ¶ 1). They allege that Defendants sold hermetic compressors "through a number of channels, including in the refrigerator and freezer market" which "is dominated by a few large Original Equipment Manufacturers ('OEMs'), including Electrolux and General Electric." (TCAC at ¶ 4). They allege that, as a result of Defendants' alleged conspiracy, prices for hermetic compressors were artificially inflated during the years 2004 through 2008. (TCAC at ¶ 8). But none of the IP Plaintiffs allege that they purchased a hermetic compressor, so they were not directly injured by the alleged conspiracy.

Rather, the IP Plaintiffs allege that they each purchased a finished product that contains a hermetic compressor. They allege that Defendants' conspiracy "also inflated the prices" for

products that contain hermetic compressors, such as refrigerators and freezers.  (TCAC at ¶  8).

In other words, they allege that the conspiracy had the ultimate effect of inflating the prices at

which they purchased products containing hermetic compressors. (TCAC at ¶ 145).

The district court in *DRAM* considered a similar fact pattern and concluded that the

alleged injuries were too remote to support antitrust standing.  There, the plaintiffs alleged that

defendants conspired to inflate the price of a particular product – dynamic random access

memory ("DRAM").  The plaintiffs did not purchase DRAM directly, but rather, purchased

finished goods whose components included DRAM.  Like the IP Plaintiffs in this case, the

plaintiffs in that case alleged that they paid artificially-inflated prices for finished goods that

contained the price-fixed component.  But the district court found such injuries too remote,

explaining:

> It requires no leap of logic to conclude that each product in which DRAM is a
> component, contains numerous other components, all of which collectively
> determine the final price actually paid by plaintiffs for the final product.  In other
> words, the price for the actual product paid by plaintiffs is reflective of much
> more than just the component price for DRAM.  Yet plaintiffs' complaint sets
> forth no allegations that demonstrate that, within the final purchase price of a
> given product purchased by plaintiffs for "end use," the ultimate cost of the
> DRAM component is somehow directly traceable and/or distinguishable.

*DRAM,* 516 F.Supp.2d at 1092.

Similarly, here, "it requires no leap of logic" to conclude that finished products that

contain hermetic compressors – such as refrigerators and freezers – contain numerous other

components, all of which collectively determine the final price paid by retail consumers or "end-

payors."  If the alleged conspiracy caused manufacturers to pay increased prices for hermetic

compressors, then the manufacturers would have to actually pass on those overcharges in order

24

for end-payors of finished products to have suffered any injury.  And, as the TCAC acknowledges, the allegedly price-fixed hermetic compressors in refrigerators and freezers pass through multiple distribution and retail channels before reaching the end-payor. (*See, e.g.*, TCAC at ¶¶ 4, 5, 73, 75, 144, and 146). Thus, those distributors and retailers would also have to pass on to end-payors any overcharges from manufacturers in order for the end-payors to have suffered any injury.  But the IP Plaintiffs' complaint does not, and as a practical matter could not, contain any factual allegations regarding whether or not the parties from whom they purchased their finished products actually passed on any overcharges that they may have paid for hermetic compressors.  *In re Potash Antitrust Litig.*, 667 F.Supp.2d at 940-41.

Accordingly, the Court finds that the causal nexus between the alleged conspiracy in the hermetic compressor market and the IP Plaintiffs' alleged injury (paying inflated prices for finished goods that contain hermetic compressors) is too remote and attenuated to support antitrust standing.

### Potential For Complex Apportionment Of Damages

The fact that the IP Plaintiffs have suffered, at best, an indirect injury as a result of the alleged conspiracy, also weighs against antitrust standing.  This is because "[w]here the court finds that plaintiffs have only suffered an indirect injury as a result of the alleged antitrust violations, the danger of duplicative recovery is highly relevant."  *Province*, 787 F.2d at 1053; *see also Southaven*, 715 F.2d at 1087.  The Court concludes that the IP Plaintiffs' alleged indirect injuries would render damages highly speculative and would involve an incredibly complex – if not impossible –  apportionment of damages.  Thus, this factor also weighs against antitrust standing.

**Existence Of More Direct Victims**

"The court must finally consider whether there are more direct victims of the alleged antitrust violation who, motivated by the prospect of treble damages, might seek 'to vindicate the public interest in antitrust enforcement.'" *Province*, 787 F.2d at 1053 (quoting *Associated General Contractors of California, Inc.,* 459 U.S. at 542). "The purpose of this inquiry is basically to ensure that a significant antitrust violation will not go undetected or unremedied." *Province*, 787 F.2d at 1053.

Here, there can be no dispute that there are more direct victims of the alleged antitrust conspiracy – individuals and entities who directly purchased hermetic compressors. Moreover, those direct purchasers are in fact, *in this litigation*, seeking to enforce the antitrust laws against the alleged conspirators. Thus, there are more direct victims of the alleged conspiracy who can, and are, seeking to enforce the antitrust laws against the alleged conspirators. Consideration of this final factor, therefore, also weighs heavily against the IP Plaintiffs having antitrust standing.

Accordingly, this Court therefore concludes the IP Plaintiffs lack antitrust standing to assert claims under the following state antitrust statutes: Arizona, California, District of Columbia, Kansas, Maine, Michigan, Nebraska, New Hampshire, New Mexico, New York, West Virginia, and Wisconsin.[7] In addition, under *Kanne*, the IP Plaintiffs also lack antitrust standing to pursue their claims under Nebraska's consumer protection statute. *Kanne v. Visa U.S.A., Inc.*,723 N.W.2d at 301.

That leaves only the following claims remaining after this challenge:  1)  claims under

_____

[7]The Court need not address Defendants' additional or alternative challenges to claims brought under these statutes.

the antitrust statutes of North Carolina, Tennessee, and Minnesota;  2) claims under the consumer

protection acts of California, District of Columbia, Florida, Massachusetts, New Hampshire,

New Mexico, North Carolina, Rhode Island, and Wisconsin; and 3) the IP Plaintiffs' unspecified

unjust enrichment claims.  Thus, the Court must consider the remaining challenges as to those

claims.

### III.   Have Plaintiffs Failed To Allege A Substantial Effect On Intrastate Commerce To Assert An Antitrust Claim Under Tennessee Law?

Next, Defendants assert that the IP Plaintiffs have not alleged a substantial effect on

intrastate commerce within the relevant states and therefore cannot state a claim under the

antitrust laws of several states.  Given the Court's rulings on constitutional and antitrust standing,

however, the Court need only consider this challenge as it relates to Tennessee's antitrust statute.

The Court finds that IP Plaintiffs' have not sufficiently alleged a substantial effect on

intrastate commerce in Tennessee.

A plaintiff asserting a claim under Tennessee's antitrust statute must establish that the

defendants engaged in an antitrust price-fixing conspiracy that "affects Tennessee trade or

commerce to substantial degree."  *Medison America, Inc. v. Preferred Medical Sys., LLC*, 357

Fed.App'x 656, 662 (6th Cir. 2009) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172

S.W.3d 512, 523 (Tenn. 2005)).  Here, the IP Plaintiffs allege generally that the price-fixing

conspiracy had a substantial effect "on *inter*state commerce in the United States and in each of

the Class Jurisdictions," without alleging any facts as to the effect on *intra*state commerce in

Tennessee.  As Defendants note, the IP Plaintiffs "assert no state-specific activities or effects."

(D.E. No. 166 at 14).

27

Accordingly, the only remaining claims under an antitrust statute are those claims asserted under the antitrust statutes of North Carolina and Minnesota.

## IV.     Challenges To Consumer Protection Act Claims

Although the IP Plaintiffs' TCAC asserts consumer protection act claims under the laws of additional states, given the Court's ruling on the constitutional and antitrust standing issues, only the consumer protection act claims asserted under the following states remain: California, District of Columbia, Florida, Massachusetts, New Hampshire, New Mexico, North Carolina, Rhode Island, and Wisconsin.

Defendants contend that, for various reasons, the IP Plaintiffs cannot pursue claims under the consumer protection acts of those states.

### A.     Should Claims Under The Rhode Island & New Mexico Acts Be Dismissed Because They Do Not Enumerate Price-Fixing Among Prohibited Acts?

The TCAC alleges that "Defendants have engaged in unfair competition and unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-12.1-1, *et seq*." (TCAC at ¶ 215) and that "Defendants have engaged in unfair competition and unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, et seq." (TCAC at ¶ 213).

Defendants seek dismissal of claims brought under those acts.  First, they contend that the Rhode Island and New Mexico consumer protection act**s** both enumerate specific actions that are prohibited, and note that price-fixing is not among them.  Second, as to the Rhode Island act, Defendants direct the Court to a single decision, from outside of the state at issue, wherein the court dismissed a claim under the act that was brought based on allegations of price-fixing, *In re Graphics Processing Units Antitrust Litig*, 527 F.Supp.2d 1011, 1030-31 (N.D. Ca. 2007).

28

In response, the IP Plaintiffs direct the Court to the following three decisions wherein district courts allowed a claim under Rhode Island's consumer protection act to proceed where the basis for the alleged violation was price-fixing: 1) *In re Chocolate Confect. Antitrust Litig.*, 602 F.Supp.2d 538, 586-87 (M.D. Pa. 2009); 2) *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 587 F.Supp.2d 1109, 1129 (N.D. Cal. 2008); and 3) *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 536 F.Supp.2d 1129, 1145 (N.D. Cal. 2008).

The IP Plaintiffs similarly direct the Court to the following cases, wherein district courts have allowed a claim under the New Mexico act to proceed that was based on price-fixing allegations:  1) *In re Chocolate Confect. Antitrust Litig.*, 602 F.Supp.2d 538, 586-87 (M.D. Pa. 2009); 2) *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041 (N.D. Ill. 2009); 3) *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F.Supp.2d 1109, 1125-27 (N.D. Cal. 2008); and 4) *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F.Supp.2d 160, 196 (D. Me. 2004).

Given that no Rhode Island or New Mexico decisions (either federal or state) support Defendants' position, and the majority of decisions have allowed such claims to proceed, the Court shall deny Defendants' requests to dismiss the consumer protection act claims brought under the Rhode Island and New Mexico acts.

**B.     Should Claims Under The California, Massachusetts, New Hampshire, And North Carolina Acts Be Dismissed For Lack Of Intrastate Commerce Allegations?**

Defendants contend that the IP Plaintiffs' consumer protection act claims asserted under the laws of California, Massachusetts, New Hampshire, and North Carolina must be dismissed because the complaint fails to allege a specific nexus between the Defendants' conduct and intrastate commerce, which is required in each of these states.  (D.E. No. 162 at 27, and Appx.6

29

to same; D.E. No. 326 and Appx.1 to same).

In response, the IP Plaintiffs' assert that they have satisfied intrastate pleading requirements, stating:

> Defendants contend Plaintiffs "fail to allege a specific nexus between the Defendants' conduct and intrastate commerce . . ." Joint Br. at 27. However, Plaintiffs have alleged that Defendants' conspiracy resulted in sales of supracompetitively priced products in every state. The sale of these products at artificially inflated prices in California, Massachusetts, New Hampshire and North Carolina satisfies the intrastate pleading requirements.

(D.E. No. 189 at 41-42 and Appx. 7 to same; D.E. No. 328 at 4-5).

### 1.     New Hampshire

As to New Hampshire, Defendants direct the Court to *Mueller Co. v. U.S. Pipe & Foundry Co.*, 2003 WL 22272135 (D. N.H. 2003), while the IP Plaintiffs direct the Court to *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F.Supp.2d 160, 194 (D. Me. 2004).

In *Mueller Co.*, the district court noted that New Hampshire's consumer protection statute, by its express terms, reaches only "trade or commerce within this state." *Mueller Co., supra*, at *6. "Thus, commercial conduct which affects the people of New Hampshire" is actionable under the statute "only if it occurs within New Hampshire." *Id.* The court dismissed the plaintiffs' complaint because it lacked any allegations as to unfair methods of competition or unfair or deceptive practices which took place in New Hampshire.

The Court shall dismiss the claim asserted under New Hampshire's consumer protection act because the IP Plaintiffs' proposed TCAC does not allege that any unfair method of competition or unfair or deceptive act or practice took place in New Hampshire.

New Hampshire's Act, by its terms, provides that "[i]t shall be unlawful for any person to

30

use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce *within this state*." N.H. Rev. Stat. § 358-A:2 (emphasis added). As even the authority relied on by the IP Plaintiffs notes, the statute has been interpreted "to require that the offending conduct occur within New Hampshire." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F.Supp.2d at 194. In that case, the court concluded that the complaint at issue had sufficiently alleged that such conduct occurred in New Hampshire. In so concluding, the court noted that the complaint alleged that the defendant automobile manufacturers and dealer associations conspired with New Hampshire dealers to ban Canadian motor vehicles from the market, resulting in higher motor vehicle prices in New Hampshire. But the increased prices paid in New Hampshire does not appear to be the basis for its conclusion. Rather, the court stated that "[t]he involvement of New Hampshire dealers in the conspiracy constitutes 'offending conduct' in New Hampshire." *Id.* Thus, that case can be distinguished from this case, where there are no alleged conspirators taking action in New Hampshire.

Here, the IP Plaintiffs' proposed TCAC has one named Plaintiff with a connection to New Hampshire – Kevin Dean. Dean alleges that he resides in New Hampshire and, sometime during the class period, purchased a Hermetic Compressor Product manufactured by one of more Defendants. (TCAC at ¶ 28). He further alleges that he made his purchase in New Hampshire. (*Id.*). As to the alleged violation of the New Hampshire consumer protection statute, the TCAC alleges that "Defendants have engaged in unfair competition and unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*" (TCAC at ¶ 207). The TCAC does not allege that any unfair or deceptive act or practice took place in New Hampshire. This Court shall therefore dismiss Dean's claim under *Mueller Co.* and a more recent case, *Wilcox Indus.*

31

*Corp. v. Hansen*, 870 F.Supp.2d 296 (D. N.H. 2012) (dismissing consumer protection claim where there was "simply no allegation that any offending conduct occurred in New Hampshire.")

### 2.      North Carolina

As to North Carolina, Defendants direct the Court to two cases in support of their position: 1) *Merck & Co., Inc. v. Lyon*, 941 F.Supp. 1443, 1463 (M.D. N.C. 1996); and 2) *The "In" Porters, S.A. v. Hanes Printables, Inc.* 663 F.Supp. 494, 502 (M.D. N.C. 1987).

The court in *The "In" Porters, S.A.*, considered the extraterritorial reach of North Carolina's Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1.  It noted that the Fourth Circuit "construes the Act as addressing 'primarily local concerns.'" *The 'In' Porters, S.A.,* 663 F.Supp. at 502.  (citation omitted).  "Application of the Act in cases having only an incidental local effect not only would be contrary to the Fourth Circuit's interpretation of the Act, but also would render the Act constitutionally suspect.  The commerce clause mandates that the Act's extraterritorial application be justified by local concerns and not be excessively burdensome on interstate commerce." *Id.*  Because the plaintiff's claim lacked substantial North Carolina effects, its claim "falls outside the reach of 75-1.1" and was dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *Id.* at 50-03.

In *Merck Co.*, *Inc.*, related manufacturers of pharmaceutical products sued a competitor and one of their own former employees (Lyon), who had been employed in the plaintiffs' Canadian operations, asserting misappropriation of trade secrets relating to a pharmaceutical product.  The plaintiffs claimed that the "meeting with Lyon prior to his employment with" the defendant competitor, and disclosure and use of information obtained by Lyon during his employment with plaintiff regarding the launch and marketing of the pharmaceutical product at

32

issue, constitutes an unfair or deceptive trade practice under North Carolina Trade Practices Act. *Merck Co., Inc.*, 941 F.Supp. at 1463. The defendant sought to dismiss that claim, asserting that the claim cannot be pursued "without alleging in-state injury." *Id.* The court agreed and ruled that "plaintiffs have failed to allege a substantial effect on any in-state business operations," and that "[a]ny injury plaintiffs may suffer in North Carolina will be incidental," and therefore "their claim falls outside the reach of the North Carolina Trade Practices Act." *Id.*

Here, the IP Plaintiffs do not allege that Defendants engaged in any wrongful conduct in North Carolina.  As to any effect the alleged conspiracy had in North Carolina, they claim that the alleged conspiracy caused manufacturers to pay inflated prices for compressors and, any retail customers who ultimately purchased finished products containing compressors paid an inflated price for those products. The issue before the Court is whether such an effect is a "substantial" in-state injury or merely an "incidental" in-state injury.  The Court concludes that it is an incidental in-state injury and therefore the Court shall dismiss the claim asserted under the North Carolina statute.

### 3.   California

The IP Plaintiffs allege that Defendants "have engaged in unfair competition and unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq*."  (TCAC at ¶ 207).

In seeking dismissal of this claim, Defendants rely on *Churchill Vill. L.L.C. v. General Elec. Co.*, 169 F.Supp.2d 1119, 1127 (N.D. Cal. 2000) and *Meridian Project Sys., Inc. v. Hardin Constr. Co., L.L.C.*, 404 F.Supp.2d 1214, 1225 (E.D. Cal. 2005).

The IP Plaintiffs rely on *Sheet Metal Workers Local 441 Health & Welfare Plan v.*

33

*GlaxoSmithKline*, PLC, 2010 U.S. Dist. LEXIS 93520 at *58-59 (E.D. Pa. 2010); *In re Vitamin Cases*, 2 Cal.Rptr.3d 358, 361 (Cal. Ct. App. 2003); and *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F.Supp.2d 1365, 1378 (S.D. Fla. 2001).

Defendants rely on two cases, *Churchill Vill., LCC* and *Meridian Project Sys., Inc.* Those cases note that California law embodies a presumption against the extraterritorial application of its statute and that, with respect to the statute at issue, courts have found that it does not support "claims by non-California residents where none of the alleged misconduct or injuries occurred in California." *Churchill Vill. L.L.C.,* 169 F.Supp.2d at 1126; *Meridian Project Sys., Inc.,* 404 F.Supp.2d at 1225. So these cases would support a request to dismiss claims under the statute by non-California residents who do not allege misconduct or injuries that occurred in California. For example, a named plaintiff who lives in New Jersey and does not claim to have been injured in California could not bring a claim under this California statute. But neither of these cases answer the question as to whether a California resident – such as named IP Plaintiff Maria Gournias – could bring a claim under the act if she alleges that she was injured in California, (which she does). (TCAC at ¶ 31).

As result, given these two cases and the limited analysis of this challenge by Defendants, the Court concludes that, to the extent that any named IP Plaintiffs who are not California residents/citizens seek to assert claims under the California statute, the California statute does not allow such claims. The Court shall deny any other challenge under this statute without prejudice.

### 4.    Massachusetts

With respect to this ground for relief as to Massachusetts**,** Defendants rely on *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir. 1998).

34

Plaintiffs rely on *Ciardi v. F. Hoffman-LaRoche, Ltd.*, 762 N.E.2d 303, 306-07 (Mass. 2002).

The Massachusetts Unfair Trade Practices Act ("MUTPA") provides, in pertinent part, that:

> No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth. For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.

M.G.L.A. 93A §11.

In *Camp Creek Hospitality Inns, Inc*. – the authority that Defendants rely on – the Eleventh Circuit noted that "to determine whether the conduct in a particular case took place 'primarily and substantially' within Massachusetts, the courts have examined: (1) where the defendant committed the deceptive or unfair acts; (2) where the plaintiff was deceived and acted upon the defendant's unfair acts; and (3) where the plaintiff suffered losses caused by the defendant's unfair acts." *Id.* (citing *Play Time, Inc. v. LDDS Metromedia Communications Inc*., 123 F.3d 23, 33 (1st Cir. 1997). Although Defendants, as the parties claiming that statute does not apply, bear the burden of proof on this issue, their briefs do not discuss the above factors or explain why they believe an application of those factors supports dismissal of claims under the MUTPA.

The Court shall deny this ground for relief without prejudice, given that: 1) the MUTPA expressly provides that Defendants bear the burden of proof on this defense; 2) the authority that Defendants themselves rely on sets forth the above factors to be analyzed with respect to this issue; and 3) Defendants have not offered any analysis as to the above factors.

**C.** **Should Claims Under The Florida Act Be Dismissed For Failure To Plead Them With Particularity?**

Defendants argue that to state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*., the allegations must be pleaded with the particularity required under Fed. R. Civ. P. 9(b). They direct the Court to *Wrestlerreunion, LLC v. Live Nation Television Holdings, Inc*., 2008 WL 3048859 (M.D. Fla. 2008), wherein the district court noted that the heightened pleading standard applies to claims under the FDUTPA and that the plaintiffs had not pled a claim under the FDUTPA with the requisite particularity where their complaint stated the legal conclusion that "Defendant or its predecessor engaged in unfair methods of competition, unconscionable acts or practices" in violation of the FDUTPA. *Id.* at *3. Defendants assert that here, the IP Plaintiffs' complaint also fails to meet the heightened pleading standard where it alleges that "Defendants engaged in unfair competition and unfair or deceptive acts or practices." (D.E. No. 162 at 28).

In response to this ground for relief, the IP Plaintiffs assert that the FDUTPA does not preclude price-fixing claims. (D.E. No. 189). They do not address, however, whether they have pleaded a FDUTPA claim based on a price-fixing theory *with the requisite particularity***.**

The Court shall dismiss this claim for failure to plead a claim under the FDUTPA with the requisite particularity.

Claims under the FDUTPA must be pleaded with the specificity requirements of Fed. R. Civ. P. 9(b). *Wrestlereunion, LLC, supra*; *Stires v. Carnival Corp*., 243 F.Supp.2d 1313, 1322 (M.D. Fla. 2002).

Like the complaint dismissed in *Wrestlereunion, LLC*, the count in the IP Plaintiffs'

proposed TCAC asserts a claim under the FDUTPA but alleges a bare legal conclusion that

"Defendants have engaged in unfair competition and unfair or deceptive acts or practices in

violation of Fla. Stat. § 501.201 *et seq*.   Defendants do not dispute that a FDUTPA claim could

potentially be based on allegations of price-fixing.  (*See* D.E. No. 204 at 16).  But nothing

relieves them from the burden of pleading such a claim with particularity.  *In re Packaged Ice

Antitrust Litig.*, 779 F.Supp.2d 642, 665 (E.D. Mich. 2011).  Here, Count II of the IP Plaintiffs'

proposed TCAC contains no factual allegations supporting a claim under the FDUTPA, much

less allegations pleaded with particularity.

> **D.     Should Claims Under The Wisconsin Act Be Dismissed Because, Except As
>          To Limited Circumstances That Are Not Alleged Here, There Is No Private
>          Right Of Action Under The Section At Issue?**

The IP Plaintiffs' SCAC asserted a claim under "Wisc. Stat. § 100.20, *et seq*."  (SCAC at

¶ 184).

In their motions, Defendants asserted that claim must be dismissed because there is no

private right of action under Wisc. Stat. § 100.20, except to remedy a violation of an order issued

by the Wisconsin Department of Agriculture, Trade, and Consumer Protection.  Defendants

direct the Court to *Emergency One, Inc. v. Waterous Co., Inc.*, 23 F.Supp.2d 959, 972 (E.D. Wis.

1998), which held that "no private cause of action exists under § 100.20, except for violation of

an order issued by the Department under this section."  Defendants contend that because the

complaint contains no allegations of any violation of such an order, it must be dismissed.

The IP Plaintiffs argued, in their response to Defendants' Joint Motion, that "a private

right of action *does* exist under WDTPA § 100.18, as a result of Defendants alleged deceptive

and untrue representations."  (D.E. No. 189 at 43).  In a footnote, the IP Plaintiffs state that they

"inadvertently failed to include the citation to the correction section of WDTPA, i.e., § 100.18. If necessary, Plaintiffs respectfully request leave to amend to correct that minor technical oversight."  (*Id*. at 43 n.48).

In their Reply, Defendants noted that the IP Plaintiffs' complaint does not assert a claim under Wis. Stat. § 100.18.  They also assert that the newly cited section does not relate to price-fixing, but rather, addresses deceptive advertising within the State of Wisconsin.  They assert that the IP Plaintiffs should not be granted leave to amend to change the statute cited in their operative complaint from Wis. Stat. § 100.20 to Wis. Stat. § 100.18.  They contend that such an amendment "would not merely be 'technical', as Plaintiffs contend - that are no allegations in the IP-CAC of deceptive marketing within the state of Wisconsin that would support Plaintiffs' proposed switch."  (D.E. No. 204 at 16 n.34).

Notably, after that briefing, the IP Plaintiffs filed their TCAC.  Like the SCAC, the TCAC only alleges a violation of Wisc. Stat. § 100.20 *et seq*."  (TCAC at ¶ 216).  The Court shall dismiss the consumer protection act claims brought under § 100.20.

E.     **Should Claims Under The District Of Columbia Act Be Dismissed Because The Sole Named D.C. Plaintiff Does Not, And Could Not, Assert That It Purchased Primarily For Personal, Household, Or Family Uses?**

The Court concludes that the sole named IP Plaintiff who asserts a claim under the District of Columbia's statute does not have standing to do so.

The protections of the District of Columbia's Consumer Protection Procedures Act ("CPPA") apply to a wide range of practices and transactions.  *Ford v. Chartone, Inc*., 908 A.2d 72, 81 (D.C. 2006).  The District of Columbia Court of Appeals, however, has had that the CPPA protects only consumers.  *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010)

38

(citing *Ford, supra*).  Moreover the CPPA defines a "consumer" as a person who receives or demands goods or services that are primarily for personal, household, or family use.  *Shaw,* 605 F.3d at 1043.  The CPPA "does not reach transactions intended primarily to promote business or professional interests."  *Id.*  Thus, the CPPA "does not apply to commercial dealings outside the consumer sphere.  *See, e.g., Mazanderan v. Independent Taxi Owners' Ass'n*, 700 F.Supp. 588, 591 (D.D.C. 1988) ( holding that a taxicab operator's purchase of gasoline and supplies was not a consumer transaction within the coverage of the CPPA because it was made 'in connection with his role as an independent businessman.')."  *Ford, supra*, at 81.  In other words, "a valid claim for relief under the CPPA must originate out of a consumer transaction."  *Id.*

Here, the IP Plaintiffs' TCAC includes only one named IP Plaintiff with any connection to the District of Columbia – F.G. Farah & Partners, LLC, a limited liability company headquartered in Washington D.C.  (TCAC at ¶ 30).  It alleges that it purchased an unspecified Hermetic Compressor Product.  (*Id.*).  Thus, the complaint does not allege what kind of product the entity purchased or how it used the product.  Moreover, it does not allege that the entity purchased the product primarily for personal, household, or family use.  In addition, given that F.G. Farah & Partners, LLC is a corporate entity, it would be implausible for it to allege that it did so.  The claims under the CPPA shall be dismissed.

Given the above rulings, the only consumer protection act claims that remain in this action are those asserted under the consumer protection acts of the following states:   1) California; 2) Massachusetts; 3) New Mexico; and 4) Rhode Island.

## V.   Challenges To Plaintiffs' Unjust Enrichment Claims

The pending motions to dismiss assert numerous challenges to the IP Plaintiffs' count

asserting an unjust enrichment claim.  That count, Count III of the IP Plaintiffs' TCAC, alleges, in its entirety:

Count III – Unjust Enrichment

213. Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs of this Complaint.

214. By reason of their unlawful conduct, Defendants should make restitution to Plaintiffs and the Class.

215. Defendants have benefitted from their unlawful acts through the overpayments for Hermetic Compressors and products containing Hermetic Compressors by Plaintiffs and the other members of the Class and the increased profits resulting from such overpayments.  It would be inequitable for Defendants to be permitted to retain the benefit of these overpayments that were conferred by Plaintiffs and the Class and retained by Defendants.

216. Plaintiffs and members of the Class are entitled to the establishment of a constructive trust consisting of the benefit to Defendants of such overpayments, from which Plaintiffs and the other Class members may make claims on a pro rata basis for restitution.

(TCAC at 52-53).


**A.      Should The Court Dismiss The IP Plaintiffs' Unspecified Unjust Enrichment Count?**

The Tecumseh Defendants' Motion to Dismiss challenged the Unjust Enrichment Count in the SCAC on the ground that IP Plaintiffs cannot maintain an unspecified claim for unjust enrichment.  That is, they sought dismissal of this count because the IP Plaintiffs fail to state a single state law to justify this claim.  (D.E. No. 166 at 23).  They directed the Court to three different decisions wherein trial courts have dismissed such unspecified unjust enrichment claims: 1) *In re TFT-LC Antitrust Litig.*, 586 F.Supp.2d 1109, 1124 (N.D. Cal. 2008); 2) *In re Static Random Access Memory Antitrust Litig.*, 580 F.Supp.2d 896, 910 (N.D. Cal. 2008); and 3)

40

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F.Supp.2d 1365, 1379 (S.D. Fla. 2001).

The Defendants' Joint Motion to Dismiss asserted this same ground for relief. (D.E. No. 162 at 29) (Plaintiffs seek restitution under common law principles of unjust enrichment, apparently on behalf of a nationwide class, and do not identify which specific state laws, if any, give rise to these claims" and that "pleading defect, by itself, requires that their unjust enrichment claims be dismissed.").

In response to this ground for relief, the IP Plaintiffs asserted that "Plaintiffs' unjust enrichment claims rest on state common law. Accordingly, Plaintiffs' unjust enrichment allegations are sufficient to identify the laws applicable to those claims." (D.E. No. 187 at 12). But the IP Plaintiffs do not identify the state law or laws upon which their unjust enrichment claims are based. They take the position that they have sufficiently pleaded unjust enrichment claims and that they do not need to specify the unjust enrichment laws that they seek to proceed under because the standards for evaluating common law unjust enrichment claims are virtually identical in every state. (*See* D.E. No 189 at 43-44).

This Court shall dismiss the IP Plaintiffs' unspecified unjust enrichment count, as district courts have done in other similar cases. *See, e.g.*, *In Re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642, 667 (E.D. Mich. 2011); *In re Ditropan XL Antitrust Litig.*, 529 F.Supp.2d 1098, 1101 (N.D. Cal. 2007) ( Noting that the ability to plead a claim for unjust enrichment varies from state to state and the court cannot evaluate whether the claim or claims have been adequately pleaded unless plaintiffs identify the state law they are seeking to recover under). In *In Re Packaged Ice Antitrust Litig.*, the district court stated:

The ACAC fails to identify any specific state unjust enrichment law under which

41

the IP Plaintiffs purport to proceed.  State law requirements under unjust enrichment law vary widely.  *See, e.g., In re Potash*, 667 F.Supp.2d at 948 (holding that indirect purchaser plaintiffs could not maintain an unjust enrichment claim under the laws of Michigan, Kansas or Florida because unjust enrichment in those states requires that plaintiff establish that it conferred a direct benefit on the defendant) (citing *Spires v. Hospital Corp. of America*, 289 Fed.Appx. 269, 273 (10th Cir. 2008) (noting that Kansas law does not support an "indirect unjust enrichment claim")); *Extraordinary Title Servs. v. Fla. Power & Light Co.*, 1 So.3d 400, 404 (Fla. Dist. Ct. App. 2009) (affirming dismissal of unjust enrichment claim where plaintiff could not "allege or establish that it conferred a direct benefit" upon defendant); *A&M Supply v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2-3 (Mich. Ct. App. Feb. 28, 2008) (concluding that the unjust enrichment doctrine requires "direct receipt" of a benefit, and was therefore inapplicable to "indirect purchasers"); *New Dimension Dev. v. Orchard*, No. 262565, 2005 WL 2806234, at *6 (Mich. Ct. App. Ct. Oct. 27, 2005) (quoting *Kammer Asphalt Paving Co, Inc. v. East China Twp. Schs.*, 443 Mich. 176, 504 N.W.2d 635 (1993) ("Any indirect benefit defendant derived from plaintiffs was too attenuated to warrant imposing the equitable doctrine of unjust enrichment, which must be 'employed . . . with caution,' because it 'vitiates normal contract principles.'").

*Id.*  The court explained that it "cannot analyze the IP Plaintiffs' undifferentiated unjust enrichment claims based on the ACAC as pled" and dismissed the unjust enrichment claims.  *Id.*

As the *In Re Packaged Ice* decision illustrates, state law requirements under unjust enrichment law vary widely.  Unless the IP Plaintiffs identify which state or states' laws they are asserting an unjust enrichment claim under, the Court cannot determine if they have sufficiently pleaded an unjust enrichment claim under any state's law.  This Court shall therefore dismiss the unjust enrichment count.

The question then becomes whether the Court should dismiss that count with prejudice.  Given the facts and circumstances here, the Court shall dismiss the unjust enrichment claim with prejudice.

42

Here, the IP Plaintiffs filed their own complaints in various jurisdictions (their first attempt at pleading their claims). After this MDL was established, the IP Plaintiffs filed their Consolidated Amended Complaint on June 30, 2010 (their second attempt at pleading their claims). Although Defendants filed motions to dismiss on August 30, 2010 that raises numerous grounds for relief – including that the IP Plaintiffs' unspecified unjust enrichment claim should be dismissed for failure to state a claim – the IP Plaintiffs filed a Second Amended Consolidated Complaint on September 21, 2010 (their third attempt at pleading their claims) that still contained an unspecified unjust enrichment claim. After this Court had dismissed claims against certain Defendants for failure to state a claim under *Twombly*, on June 21, 2012, the IP Plaintiffs filed a motion seeking leave to file another amended complaint.

This Court's order allowing the IP Plaintiffs to file their revised TCAC expressly provided that "[b]arring a very exceptional circumstance, no further amendments shall be permitted." (D.E. No. 313). Nevertheless, the IP Plaintiffs' TCAC (which is the IP Plaintiffs' fourth attempt at pleading their claims) continues to assert an unspecified unjust enrichment claim. The IP Plaintiffs filed their TCAC with full knowledge of this challenge and the authority in support of it.

## B. Moreover, The Court Concludes That Amendment As To The Unjust Enrichment Count Would Be Futile.

Moreover, although the IP Plaintiffs have not sought leave to amend in order to specify that the named IP Plaintiffs assert unjust enrichment claims under the common law of the states where they reside, the Court concludes that such a request would be futile.

Not knowing which state laws the IP Plaintiffs base their unjust enrichment claims upon,

the Defendants' motions to dismiss speculate as to which states the IP Plaintiffs may be asserting this claim under and make numerous challenges. Those challenges include the following.

### 1. California Does Not Recognize Unjust Enrichment As A Cause Of Action.

The Court concludes that any amendment to assert an unjust enrichment claim under California law would be futile because California does not recognize unjust enrichment as a cause of action. *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2002) ("there is no cause of action in California for unjust enrichment").

### 2. An Unjust Enrichment Claim In Most States Requires That The Plaintiff Confer A Direct Benefit On The Defendant, Which Is Not Alleged Here.

Defendants contend that the IP Plaintiffs cannot plead an unjust enrichment claim under the common law of the following relevant states, because they cannot allege that they conferred a direct benefit on any Defendant: Arizona, District of Columbia, Florida, Kansas, Maine, Massachusetts, Michigan, New York, Rhode Island, West Virginia, and Wisconsin. They allege that the common law of the above states requires that a plaintiff establish that it conferred a direct benefit on the defendant in order to state an unjust enrichment claim. They contend that here, where the IP Plaintiffs "purchased the allegedly price-fixed product indirectly and do not (and cannot) allege they conferred a benefit directly on Defendants, or otherwise had some direct, substantive relationship with Defendants," they do not state an unjust enrichment claim under the common law of the above states. Defendants further assert that:

> Courts in several states have held that Plaintiffs who allege that they purchased an allegedly price-fixed product indirectly, i.e., not from Defendants, cannot meet this test. *See, e.g., Potash*, 667 F.Supp.2d at 948 (dismissing Florida, Kansas, and

44

Michigan state unjust enrichment claims because allegations of "indirect purchases, and Defendants' subsequent alleged indirect enrichment" do not meet the direct benefit test); *Spires v. Hosp. Corp. of Am.*, 289 Fed. Appx. 269, 273 (10th Cir. 2008) (holding that Kansas law does not support an "indirect unjust enrichment claim"); *A&M Supply Co. v. Microsoft Corp.,* No. 274164, 2008 WL 540883, at *2 (Mich. App. Ct. Feb 28, 2008) (holding that "indirect purchasers" cannot state a claim for unjust enrichment in Michigan); *Sperry v. Crompton Corp.*, 810 N.Y.S.2d 498, 499-500 (N.Y. App. Div. 2006) (affirming dismissal of New York unjust enrichment claim brought by indirect purchasers because the alleged connection between plaintiffs and defendants was simply too attenuated); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F.Supp.2d 1179, 1190-91 (N.D. Cal. 2009) (*"TFT-LCD"*) (holding that indirect purchasers cannot state a claim for unjust enrichment under North Dakota law).

(D.E. No. 162 at 29-30).

The Court concludes that any proposed amended complaint to specify that the IP Plaintiffs are asserting an unjust enrichment claim under the common of these states would be futile because the IP Plaintiffs cannot allege that they conferred a benefit directly on Defendants. Any benefit that the IP Plaintiffs conferred would be on others in the chain of distribution from whom they purchased, not on Defendants. Only the direct purchasers conferred a direct benefit on Defendants by paying Defendants artificially inflated prices for Hermetic Compressors. *In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259 at * 2-3 (N.D. Ill. 2010) (dismissing unjust enrichment claims under the common law of six states because the indirect plaintiffs did not confer a benefit directly on the defendants).

Accordingly, the Court shall dismiss the Unjust Enrichment Count with prejudice.

## VI.   Have The IP Plaintiffs Adequately Pleaded Fraudulent Concealment?

Defendants contend that, unless they have adequately pleaded fraudulent concealment, portions of the IP Plaintiffs' claims will be time-barred. Defendants ask the Court to rule that the

45

IP Plaintiffs have not alleged facts sufficient to establish fraudulent concealment.

Defendants acknowledge that, to plead fraudulent concealment, the IP Plaintiffs' allegations must satisfy each state's respective standard.  (*See* D.E. No. 325 at 6).  Defendants then assert that the "requirements to plead fraudulent concealment" are "essentially the same" in the various jurisdictions at issue.  Defendants, however, do not provide authority to support that broad assertion.  That is, Defendants have not undertaken the rather monumental task of providing the Court with authority to establish what a plaintiff must allege in order to adequately plead fraudulent concealment in each of the relevant jurisdictions.

The Court concludes that Defendants have not provided the Court with sufficient argument and authority concerning the precise contours of what each of the relevant jurisdictions require in order to plead fraudulent concealment.  The Court therefore declines to rule on this ground for relief, as the issue would be more appropriately addressed in a motion for summary judgment following discovery.

## VII.   Should Claims Be Dismissed Or Limited Under The FTAIA?

Defendants content that to the extent that the IP Plaintiffs seek antitrust or similar recovery for purchases of compressor products in the United States that were manufactured with compressors initially sold outside of the United States, such claims are barred by the Foreign Trade Antitrust Improvements Act ("FTAIA").  (*See* D.E. No. 162, Defs.' original Joint Brief).  As they did in seeking to dismiss the claims of the Direct Purchaser Plaintiffs, Defendants phrase this request for relief this way because it was unclear from the IP Plaintiffs' SCAC whether they were seeking to recover for such purchases:

> Like Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs base their

state law claims, at least in part, on allegations of foreign or 'worldwide' price-fixing, *see, e.g.*, IP-CAC ¶¶ 1, 70, 71, but do not make it clear whether they are seeking to recover for 'compressor products' manufactured using compressor first sold abroad.  *See, e.g.*, IP-CAC ¶ 78 (alleging that "a significant number of the hermetic compressors sold for use in products purchased by end-payors such as Plaintiffs and members of the Class were sourced from production facilities located outside of the United States.").  Thus, to the extent the IP-CAC seeks antitrust or similar recovery for such purchases, such claims are barred by the FTAIA for the same reasons stated in Defendants' Joint Motion to Dismiss the DP-MAC.

(*Id.* at 38-39).

In addressing this challenge as to the DP Plaintiffs, this Court declined to address the challenges related to the FTAIA because it could not meaningfully do so given the current allegations.  (*See* D.E. No. 245).

Although the IP Plaintiffs have amended their complaint after Defendants first made this challenge as to them, the current operative complaint, the TCAC, does not contain allegations that specify whether or not the IP Plaintiffs are seeking recovery for such purchases.  The Court declines to address the FTAIA challenges as this stage of the litigation.  Defendants can renew these arguments, if they choose to do so, after discovery.

## CONCLUSION & ORDER

For the reasons above, **IT IS ORDERED** that Defendants' pending motions to dismiss are **GRANTED IN PART, DENIED IN PART**, and that the Court **DECLINES TO RULE** upon some challenges at this time.

With respect to the IP Plaintiffs' state-law antitrust claims, this Court:

1)     **DENIES** Defendants' request to dismiss all antitrust claims for failure to allege a plausible antitrust claim under *Twombly*;

47

2)     concludes that the *AGC* test should be used to determine whether antitrust standing exists under the laws of most of the states at issue and, under that test, the IP Plaintiffs lack antitrust standing.  The Court therefore **DISMISSES** all claims asserted under the state antitrust statutes of Arizona, California, District of Columbia, Kansas, Maine, Michigan, Nebraska, New Hampshire, New Mexico, New York, West Virginia, and Wisconsin.

3)     **DISMISSES** antitrust claims under Tennessee's antitrust statute because the IP Plaintiffs have failed to allege a substantial effect on intrastate commerce.

Thus, the only antitrust claims that remain in this action are the IP Plaintiffs' claims under the antitrust statutes of North Carolina and Minnesota.

With respect to the IP Plaintiffs' state-law consumer protection act claims, this Court hereby:

1)     **DISMISSES** claims brought under the consumer protection acts of New Hampshire and North Carolina, for lack of intrastate commerce allegations;

2)     **DISMISSES** claims brought under the consumer protection act of Florida, for failure to plead such claims with particularity;

3)     **DISMISSES** claims brought under the consumer protection act of Wisconsin because, except with respect to limited circumstances that are not alleged here, there is no private right of action under the section at issue;

4)     **DISMISSES** claims brought under the consumer protection act of the District of Columbia because the sole named D.C. IP Plaintiff does not, and could not, assert that it purchased primarily for personal, household, or family uses, as required by the act; and

5)     **DENIES** all other challenges to the consumer protection act claims without prejudice.

Thus, the only consumer protection act claims that remain in this action are the claims under the consumer protection acts of California, Massachusetts, New Mexico, and Rhode Island.

With respect to the IP Plaintiffs' unspecified unjust enrichment count, this Court hereby **DISMISSES** that count **WITH PREJUDICE**.

In addition, this Court declines to rule on the statute of limitations challenges at this time, because those issues would be more appropriately addressed in a motion for summary judgment following discovery.

The Court also declines to address the Foreign Trade Antitrust Improvements Act challenges as this stage of the litigation.  Defendants can renew these arguments, if they choose to do so, after discovery.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  April 9, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 9, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

49