UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE: REFRIGERANT COMPRESSORS ANTITRUST LITIGATION<br><br><br>This Document Relates to:<br>    Indirect Purchaser Plaintiffs | MDL No. 2:09-02042<br><br>Honorable Sean F. Cox |

**INDIRECT PURCHASER PLAINTIFFS' MOTION FOR (1) ENTRY OF FINAL JUDGMENTS UNDER RULE 54(b) AS TO CERTAIN INDIRECT PURCHASER PLAINTIFFS AND (2) CERTIFICATION OF CERTAIN CLAIMS FOR <u>INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)</u>**

Indirect Purchaser Plaintiffs ("IP Plaintiffs") (1) request that the Court enter final Judgments as to the IP Plaintiffs located in Arizona, the District of Columbia, Florida, Kansas, Maine, Michigan, Nebraska, New Hampshire, New York, Tennessee, West Virginia and Wisconsin pursuant to Fed. R. Civ. P. 54(b); (2) request that the Court certify for interlocutory appeal under 28 U.S.C. § 1292(b) the issue of whether the IP Plaintiffs in California and New Mexico lack antitrust standing under the laws of their respective states; and (3) in the event the Court elects to not enter judgment under Rule 54(b) for certain plaintiffs and claims, request that the Court certify the following issues for appeal under 28 U.S.C. § 1292(b): (a) whether the dismissed plaintiffs lack antitrust standing under the laws of their respective states, (b) whether IP Plaintiffs have Article III standing to assert claims, as representative plaintiffs, on behalf of a class of individuals that includes residents in another state, (c) whether Fed. R. Civ. P. 9(b) applies to non-fraud antitrust claims under Florida's Deceptive and Unfair Trade Practices Act, and (d) whether substantial effects on the price of an article widely distributed in interstate commerce and in the state of Tennessee satisfies the requirement of a "substantial effect" on

Tennessee commerce required for application of Tennessee's antitrust law.  In support of their motion, IP Plaintiffs state as follows:

1.      On July 10, 2012, the Court enter an Order Dismissing Certain Indirect Purchaser Plaintiffs' Claims for Lack of Constitutional Standing (the "July 2012 Order") [DE 318].  The July 2012 Order dismissed IP Plaintiffs' claims under 11 states' laws based on lack of Article III standing.  The Court issued a Memorandum Opinion regarding the July 2012 Order on July 17, 2012 [DE 319].

2.      On April 9, 2013, the Court entered an Opinion & Order [DE 343], which dismissed all the claims asserted by fourteen (14) out of the twenty-one (21) IP Plaintiffs named in the Third Consolidated Amended Complaint.  The only claims that the Court has allowed to proceed are (a) IP Plaintiffs' antitrust claims under North Carolina and Minnesota law and (b) IP Plaintiffs' claims under the consumer protection acts of California, Massachusetts, New Mexico and Rhode Island.

3.      Of the fourteen IP Plaintiffs whose claims have all been dismissed, six (6) originally filed individual Complaints which the Court has now dismissed in their entirety.[1] Under Sixth Circuit law holding that consolidated cases remain separate actions, it appears that the Court's April 9, 2013 Order is final and appealable as to these six individuals.[2]  Each of the six IP Plaintiffs in this first group filed a Notice of Appeal on May 8, 2013.

_____

[1] *F.G. Farah & Partners, LLC v. Tecumseh Products Company, et al.*, 09cv11109 (E.D. Mich.); *Air Cooling Energy Corp. v. Tecumseh Products Company, et al.*, 09cv11125 (E.D. Mich.); *Marc A. Barash v. Tecumseh Products Company, et al.*, 9cv11765 (E.D. Mich.); *Saad Wholesale v. Tecumseh Products Company, et al.*, 09cv12326 (E.D. Mich.); *Nathan Levi Esquerra v. Appliances Components Companies, SPA, et al.*, 09cv12712 (E.D. Mich.); and *Strong Electric v. Tecumseh Products Company, et al.*, 10cv00448  (D. ME).

[2] *See Infocision Management Corp. v. Foundation for Moral Law, Inc.*, 2011 U.S. App. LEXIS 5922 (6th Cir. Jan. 19, 2011) (where the lower court order dismisses a case/complaint, in toto, the order is appealable as a final order, notwithstanding that the case was consolidated with

2

4.      The remaining eight (8) of the fourteen IP Plaintiffs whose claims have all been dismissed were named on complaints with IP Plaintiffs that have surviving claims.[3]  As to this second group of eight IP Plaintiffs, IP Plaintiffs seek entry of a final Judgment pursuant to Rule 54(b) so that these eight IP Plaintiffs they may also take an appeal at this time.[4]

5.      As to a third group of three (3) IP Plaintiffs, the Court dismissed their California and New Mexico antitrust causes of action, but allowed their California and New Mexico consumer protection causes of action to proceed.[5]  These three IP Plaintiffs request that the Court certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) as to their dismissed causes of action under the antitrust law of California and New Mexico.  Specifically, IP Plaintiffs request that the Court certify the following issue to the Court of Appeals: whether the *AGC* test for antitrust standing bars IP Plaintiffs' antitrust claims under California and New Mexico law

6.      The IP Plaintiffs also request that the Court certify the following issue addressed in the Court's July 2012 Order dismissing IP Plaintiffs' claims under the laws of eleven states based on lack of Article III standing: whether the ability of proposed class representatives to

---

another); *Nicholson v. City of Westlake*, 20 Fed. Appx. 400, 401 (6th Cir. 2001); *Beil v. Lakewood Engineering and Manufacturing Co.*, 15 F.3d 546, 551 (6th Cir. 1994) ("[C]onsolidated cases remain separate actions.  Thus, a case which is disposed of on summary judgment is appealable pursuant to 28 U.S.C. § 1291 despite the fact that the case with which it is consolidated has not been disposed.").

   [3] The eight IP Plaintiffs in the second group are Ingegerd Hesel, Julie Clark, Peter Jacobus, Kevin M. Dean, Thomas D. Hobbs, Jr., Pat Tiede, Vicotria Winslow, and Scott Burgess.

   [4] Out of an abundance of caution, the first group of six IP Plaintiffs with individual complaints also seeks this Court's entry of final judgment as to their claims under Fed. R. Civ. P. 54(b).

   [5] *Beatrice Scannapieco v. Tecumseh Products Company, et al.*, 09cv1578 (D.N.J.) (asserting claims under New Mexico law); *Maria Gounaris v. Tecumseh Products Company, et al.*, 09cv1717 (N.D. Ca.); *Bongo Burger, Inc. v. Tecumseh Products Company, et al.*, 09cv1836 (N.D. Ca.).

represent absent class members who suffered similar injuries at the hands of the same defendants should be analyzed as a question of Article III standing or Rule 23 adequacy.

7.  If the Court denies IP Plaintiffs' request for entry of final Judgments pursuant to Rule 54(b) as to the second group of 8 IP Plaintiffs' addressed above, then IP Plaintiffs request that the Court certify the following issue for interlocutory appeal under §1292(b): whether the *AGC* test for antitrust standing bars IP Plaintiffs' antitrust claims under Arizona, California, District of Columbia, Kansas, Maine, Michigan, Nebraska, New Hampshire, New Mexico, New York, West Virginia and Wisconsin law.

8.  Finally, IP Plaintiffs also request that the Court certify the following issues to the Court of Appeals: (i) whether the strictures of Federal Rule of Civil Procedure 9(b) apply to non-fraud claims asserted under Florida's Deceptive and Unfair Trade Practices Act; and (ii) whether allegations that defendants' conduct artificially inflated the prices paid for end products incorporating hermetic compressors in "each" state meet the requirement for alleging a "substantial effect" on Tennessee commerce required for application of Tennessee's antitrust law.

9.  Particularly in light of the fact that the claims of six of the twenty-one IP Plaintiffs' claims are appealable as of right, allowing all of the dismissed causes of action to be heard on appeal at one time will promote judicial efficiency and avoid piece meal litigation. *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, C2-04-575, 2007 WL 1026347 (S.D. Ohio Mar. 29, 2007) ("the interests of judicial efficiency strongly militate in favor of granting [Defendant] E&Y's Motion [for Entry of Final Judgment]."); *Marcilis v. Redford Twp.*, 09-11624, 2011 WL 284466 (E.D. Mich. Jan. 25, 2011) ("Additionally, judicial economy is best served by immediate appeal ….").

4

10.     Pursuant to LR 7.1(a), counsel for IP Plaintiffs has sought concurrence in the relief sought in this motion through e-mails and telephone discussions on May 8 and 9, 2013. Defendants have either stated that they do not concur in the relief sought or have not concurred in the relief sought.

WHEREFORE, for all the foregoing reasons and those set forth in the accompanying Brief in Support, IP Plaintiffs respectfully request the Court grant this Motion for (1) entry of final Judgments under Rule 54(b) as to certain Indirect Purchaser Plaintiffs and (2) certification of certain claims for interlocutory appeal under 28 U.S.C. § 1292(b).  A proposed Order is attached as Exhibit C to the Brief in Support.


Respectfully submitted,

/s/ David E. Plunkett_____
David E. Plunkett (P66696)
Richard E. Rassel (P57540)
WILLIAMS, WILLIAMS, RATTNER
  & PLUNKETT, P.C.
380 N. Old Woodward Avenue, Suite 300
Birmingham, Michigan  48009
Telephone:  (248) 642-0333

*Interim Lead Counsel*
Dated:  May 9, 2013                    *for the Indirect Purchaser Class*

00799265.DOCX

J. Douglas Richards
COHEN MILSTEIN SELLERS
    & TOLL PLLC
88 Pine Street, Fourteenth Floor
New York, New York 10005
Tel. (212) 838-7797
Fax. (212) 838-7745
drichards@cohenmilstein.com

Emmy L. Levens
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave. NW, Ste. 500 West
Washington, DC 20005
Tel. (202) 408-3669
Fax. (202) 408-4699
elevens@cohenmilstein.com

Michael M. Buchman
Adam G. Kurtz
POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP
600 Third Avenue
New York, NY 10016
Tel. (212) 661-1100
Fax. (212) 661-8665
mbuchman@pomlaw.com

Timothy D. Battin
Mark J. Schirmer
STRAUS & BOIES, LLP
4041 University Drive, 5th Flr.
Fairfax, Virginia 22030
Tel. (703) 764-8700
Fax. (703) 764-8704
tbattin@straus-boies.com

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2013, I caused the filing of the foregoing Motion and Brief in Support to be filed with the Court using the ECF system, which will send notification to all counsel of record.

_____/s/ David E. Plunkett_____
David E. Plunkett

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

IN RE: REFRIGERANT COMPRESSORS
ANTITRUST LITIGATION

MDL No. 2:09-02042

Honorable Sean F. Cox

This Document Relates to:
    Indirect Purchaser Plaintiffs

**INDIRECT PURCHASER PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR
ENTRY OF FINAL JUDGMENTS UNDER FED. R. CIV. P. 54(b) AND
CERTIFICATION OF INTERLOCUTORY APPEALS
PURSUANT TO 28 U.S.C. §1292(b)**

**STATEMENT OF ISSUES PRESENTED**

1.     Is entry of final judgment under Fed. R. Civ. P. 54(b) appropriate for those Indirect Purchaser Plaintiffs whose claims have been dismissed?

    •    Indirect Purchaser Plaintiffs say **Yes**

2.     Should the Court certify for Interlocutory Appeal under 28 U.S.C. §1292(b) the issues of (a) certain Indirect Purchaser Plaintiffs' antitrust standing under California and New Mexico antitrust law, and (b) whether Indirect Purchaser Plaintiffs have Article III standing to assert claims, as representative plaintiffs, on behalf of a class of individuals that includes residents in another state?

    •    Indirect Purchaser Plaintiffs say **Yes**

3.     In the event the Court elects to not enter judgments under Rule 54(b) for certain plaintiffs and claims, should the court certify the following issues for appeal under §1292(b): (a) whether the dismissed plaintiffs lack antitrust standing under the laws of their respective states, (b) whether Indirect Purchaser Plaintiffs have Article III standing to assert claims, as representative plaintiffs, on behalf of a class of individuals that includes residents in another state, (c) whether Fed. R. Civ. P. 9(b) applies to non-fraud antitrust claims under Florida's Deceptive and Unfair Trade Practices Act, and (d) whether substantial effects on the price of an article widely distributed in interstate commerce and in the state of Tennessee satisfies the requirement of a "substantial effect" on Tennessee commerce required for application of Tennessee's antitrust law?

    •    Indirect Purchaser Plaintiffs say **Yes**

## STATEMENT OF MOST APPROPRIATE AUTHORITY

*U.S. Citizens Association v. Sebelius*, 705 F.3d 588 (6th Cir. 2013);

*Infocision Mgmt. Corp. v. Foundation for Moral Law, Inc.*, 2011 U.S. App. LEXIS 5922 (6th Cir. 2011);

*Caruana v. GMC*, 204 Fed. Appx. 511 (6th Cir. 2006);

*In re City of Memphis*, 293 F.3d 345 (6th Cir. 2002);

*First National Bank of Pulaski v. Curry*, 301 F.3d 456 (6th Cir. 2002);

*Nicholson v. City of Westlake*, 20 Fed. Appx. 400 (6th Cir. 2001);

*General Acquisition, Inc. v. Gencorp, Inc.*, 23 F.3d 1022 (6th Cir. 1994);

*Beil v. Lakewood Engineering and Manufacturing Co.*, 15 F.3d 546 (6th Cir. 1994); and

*Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445 (6th Cir. 1988).

00801018.DOCX

# TABLE OF CONTENTS

PAGE

STATEMENT OF ISSUES PRESENTED..................................................................... i

STATEMENT OF MOST APPROPRIATE AUTHORITY ....................................... ii

INDEX OF AUTHORITIES.................................................................................... iv

PRELIMINARY STATEMENT .............................................................................. 1

PROCEDURAL HISTORY...................................................................................... 2

LEGAL ARGUMENT ............................................................................................. 5

I.      The April Order is Final As to the Dismissed Plaintiffs, and There Is No Just Reason for Delay of Their Appeal ............................................................... 5

        A.  The Order is Final ...................................................................................... 7

        B.  There is No Just Reason for Delay ............................................................ 8

II.     The Court Should Grant Permission to Appeal Under 28 U.S.C. § 1292(b) .................. 11

        A.  The Standard for Interlocutory Appeal Under 28 U.S.C. § 1292(b) .......................... 12

        B.  The Proposed Appeal Meets the Criteria for Interlocutory Appeal Under 28 U.S.C. § 1292(b) ............................................................... 12

             1.  The Court's Orders Present Controlling Issues of law ......................................... 12

             2.  There are Reasonable Grounds for Disagreeing with the Court's Rulings........... 14

             3.  Resolving These Issues Now Would Promote a Timely and Efficient Resolution of the Litigation ......................................................... 19

CONCLUSION....................................................................................................... 20

# INDEX OF AUTHORITIES

**CASES**                                                                                                      **PAGE**

*Abbey v. United States,*
101 Fed. Cl. 239 (Fed. Cl. 2011) ..................................................................................8

*Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.,*
2010 U.S. Dist. LEXIS 84544 (M.D. Fla. 2010) ........................................................18

*Association of Cleveland Fire Fighters v. City of Cleveland,*
502 F.3d 545 (6th Cir. 2007) ......................................................................................12

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters ("AGC"),*
459 U.S. 519 (1983)........................................................................................................1

*Beil v. Lakewood Engineering and Manufacturing Co.,*
15 F.3d 546 (6th Cir. 1994) ......................................................................................1, 6

*Bodie-Rickett & Associates v. Mars, Inc.,*
957 F.2d 287 (6th Cir. 1992) ......................................................................................12

*California v. ARC America Corp.,*
490 U.S. 93 (1989)........................................................................................................16

*Caruana v. General Motors Corporation,*
204 Fed. Appx. 511 (6th Cir. 2006)............................................................................13

*Clayworth v. Pfizer, Inc.,*
49 Cal. 4th 758 (Cal. 2010).........................................................................................15

*Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.,*
807 F.2d 1279 (6th Cir. 1986) ......................................................................................8

*D.R. Ward Construction Co. v. Rohm and Haas Co.,*
470 F. Supp.2d 485 (E.D. Pa. 2006) ..........................................................................15

*Execu-Tech Business Systems, Inc. v. New Oji Paper Co., Ltd.,*
752 So. 2d 582 (Fla. 2000)..........................................................................................18

*Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Company, Ltd.,*
2012 U.S. Dist. LEXIS 125677 (E.D. Wis. 2012) ................................................15, 18

*Gen. Acquisition, Inc. v. GenCorp., Inc.,*
23 F.3d 1022 (6th Cir. 1994) ....................................................................................6, 7

*Gooch v. Life Investors Insurance Company of America,*
672 F.3d 402 (6th Cir. 2012) .................................................................................................... 17

*Fallick v. Nationwide Mutual Insurance Co.,*
162 F.3d 410 (6th Cir. 1998) .................................................................................................... 17

*Hensley Manufacturing, Inc. v. ProPride, Inc.,*
579 F.3d 603 (6th Cir. 2009) .................................................................................................... 12

*Hill v. Henderson,*
195 F.3d 671 (D.C. Cir. 1999) .................................................................................................. 19

*Hill v. Hoover Company,*
2012 U.S. Dist. LEXIS 142212 (N.D. Fla. 2012) .................................................................... 18

*Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.,*
2011 U.S. App. LEXIS 5922 (6th Cir. 1/19/2011) .................................................................... 6

*In re Aftermarket Filters Antitrust Litigation,*
2009 U.S. Dist. LEXIS 104114 (N.D. Ill. 2009) .................................................................... 15

*In re Cardinal Health Inc. Sec. Litig.,*
C2-04-575, 2007 WL 1026347 (S.D. Ohio Mar. 29, 2007) ................................................2, 10

*In re Cardizem CD Antitrust Litigation,*
332 F.3d 896 (6th Cir. 2003) .................................................................................................... 13

*In re Chocolate Confectionary Antitrust Litigation,*
602 F. Supp. 2d 538 .................................................................................................................. 19

*In re City of Memphis,*
293 F.3d 345 (6th Cir. 2002) ...............................................................................................12, 13

*In re Digital Music Antitrust Litigation,*
812 F. Supp. 2d 390 (S.D.N.Y. 2011) ...................................................................................... 19

*In re Dynamic Random Access Memory Antitrust Litigation,*
516 F. Supp. 2d 1072 (N.D. Cal. 2007). .................................................................................. 14

*In re Flash Memory Antitrust Litigation,*
643 F. Supp. 2d 1133 (N.D. Cal. 2009 ..................................................................................... 15

*In re Graphics Processing Units Antitrust Litigation,*
540 F. Supp. 2d 1085 (N.D. Cal. 2007) ................................................................................... 14

00801018.DOCX

*In re Hypodermic Products Antitrust Litigation,*
484 Fed. Appx. 669 (3d Cir. 2012) ...................................................................13

*In re Packaged Ice Antitrust Litigation,*
779 F. Supp. 2d 642 (E.D. Mich. 2011) ......................................................17, 18

*In re Polyurethane Foam Litigation,*
799 F. Supp.2d 777 (N.D. Ohio 2011) ..............................................................17

*In re Processed Egg Products Antitrust Litigation,*
851 F. Supp. 2d 867 (E.D. Pa. 2012) .................................................................18

*In re Refrigerant Compressors Antitrust Litigation,*
2013 U.S. Dist. LEXIS 50737 (E.D. Mich. April 9, 2013) ...........................14, 18

*In re Trailer Source,*
555 F.3d 231(6th Cir. 2009) ..............................................................................13

*In re TFT-LCD Antitrust Litigation,*
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ......................................................14, 15

*Jovine v. Abbott Laboratories, Inc.,*
795 F. Supp. 2d 1331 (S.D. Fla. 2011) .............................................................18

*Justice v. Pendleton Place Apartments,*
40 F.3d 139 (6th Cir. 1994) ................................................................................4

*Kanne v. Visa U.S.A. Inc.,*
723 N.W.2d 293 Nebraska) ...............................................................................16

*Kansas v. Utilicorp. United Inc.,*
497 U.S. 205 (1990) ..........................................................................................13

*Lawler v. Fireman's Fund Ins. Co.,*
322 F.3d 900 (6th Cir. 1997) .............................................................................12

*Little Caesar Enterprises, Inc. v. Smith,*
916 F. Supp. 662 (E.D. Mich. 1996) ...................................................................8

*Lorix v. Crompton Corp.,*
736 N.W.2d 619 (Minn. 2007) ...........................................................................14

*Mack v. Bristol-Myers Squibb Co.,*
673 So. 2d 100 (Fla. App. 1996) ..................................................................16, 18

*Marcilis v. Redford Twp.*,
09-11624, 2011 WL 284466 (E.D. Mich. Jan. 25, 2011) ...................................................2, 10

*Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*,
410 F.3d 41 (1st Cir. 2005) ...................................................................................................10

*Microsoft Corp. v. Computer Support Services of Carolina, Inc.*,
123 F. Supp. 2d 945 (W.D. N.C. 2000) ...............................................................................12

*Motmanco, Inc. v. McDonald's Corp.*,
2005 U.S. Dist. LEXIS 33965 (M.D. Fla. 2005) .................................................................18

*Nass-Romero v. VISA U.S.A. Inc*,
279 P.3d 772 (N.M. App. 2012) ...........................................................................................16

*Paul v. Intel Corp.*,
496 F. Supp. 2d 404 (D. Del. 2007)......................................................................................15

*Peterson v. Visa U.S.A. Inc.*,
2005 D.C. Super. LEXIS 17 (D.C. Super. 2005)..................................................................16

*Pinney Dock & Transp. Co. v. Penn Cent. Corp.*,
838 F.2d 1445 (6th Cir. 1988) ..............................................................................................13

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) .................................................................................................13

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) ................................................................................................12

*Salve Regina College v. Russell*,
499 U.S. 225 (1991) ..............................................................................................................13

*Smith v. Bayer Corp.*,
131 S. Ct. 2368 (2011)............................................................................................................9

*Southard v. Visa U.S.A. Inc.*,
734 N.W.2d 192 (Iowa 2007) ...............................................................................................16

*Taylor v. Sturgell*,
553 U.S. 880 (2008)................................................................................................................9

*Teague v. Bayer AG*,
671 S.E.2d 550 (N.C. App. 2009)..........................................................................................14

00801018.DOCX

*Urling v. Helms Exterminators, Inc.,*
468 So. 2d 451 (Fla. App. 1985) ................................................................... 18

*U.S. Citizens Ass'n v. Sebelius,*
705 F.3d 588 (6th Cir. 2013) ............................................................... 6, 8, 11

*Williams v. Duke Energy International, Inc.,*
681 F.3d 788 (6th Cir. 2012) ...................................................................... 12

*WrestleReunion, LLC v. Live Nation Television Holdings, Inc.,*
2008 U.S. Dist. LEXIS 61428 (M.D. Fla 2008). ......................................... 18

## STATUTES AND RULES

28 U.S.C. § 1291 ........................................................................... 1, 4, 5, 6

28 U.S.C. § 1292 ......................................... i, iii, 1, 5,11,12,13,17, 20

Fed. R. Civ. P. 54(b) .............................. i, 1, 4, 5, 6, 7, 8, 11, 20

00801018.DOCX

## PRELIMINARY STATEMENT

This motion seeks the Court's certification for purposes of allowing appeal under Fed. R. Civ. P. 54(b) or 28 U.S.C. § 1292(b) of the Court's April 9, 2013 and July 10, 2012 orders ("Orders") dismissing on the pleadings the bulk of indirect purchaser claims and the majority of indirect purchaser plaintiffs from this MDL litigation. No good reason exists to wait until the end of this case to appeal the Orders, and doing so would run the risk of substantial duplicative litigation and potentially inconsistent rulings.

This consolidated action combined twelve different complaints brought by twenty-one different Indirect Purchaser Plaintiffs ("IP Plaintiffs"). On July 10, 2012, the Court dismissed IP Plaintiffs' claims under 11 states' laws based on lack of Article III standing. On April 9, 2013, the Court dismissed all of the remaining claims asserted by fourteen IP Plaintiffs (the "Dismissed Plaintiffs"). Because six of the Dismissed Plaintiffs had individual complaints on file, it appears that the Court's April 9, 2013 order is final as to them,[1] and so they have filed Notices of Appeal. The other eight of the Dismissed Plaintiffs were named on complaints with IP Plaintiffs that have surviving claims, and they therefore seek entry of a final judgment pursuant to Rule 54(b).[2]

The Orders also dismiss a number of other claims that in the interest of judicial economy should be certified under 28 U.S.C. § 1292(b). These issues, described further below, include inter alia, the Court's dismissal of California and New Mexico antitrust claims based on *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983). Allowing these threshold issues to be considered by the 6th Circuit now in a single

---

[1] *Beil v. Lakewood Engineering and Manufacturing Co.*, 15 F.3d 546, 551 (6th Cir. 1994) ("[C]onsolidated cases remain separate actions. Thus, a case which is disposed of on summary judgment is appealable pursuant to 28 U.S.C. § 1291 despite the fact that the case with which it is consolidated has not been disposed."").

[2] In an abundance of caution, the six Plaintiffs with individual complaints also seek this Court's entry of final judgment as to their claims under FRCP 54(b).

1

appeal will preserve the resources of the parties and the Court and avoid piecemeal litigation. *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, C2-04-575, 2007 WL 1026347 (S.D. Ohio Mar. 29, 2007) ("the interests of judicial efficiency strongly militate in favor of granting [Defendant] E&Y's Motion [for Entry of Final Judgment]."); *Marcilis v. Redford Twp.*, 09-11624, 2011 WL 284466 (E.D. Mich. Jan. 25, 2011) ("judicial economy is best served by immediate appeal ….").

## PROCEDURAL HISTORY

1.   The Original Individual Complaints, MDL Transfer, Third Consolidated Amended Complaint and Court's July 2012 Order

In June 2009, the Judicial Panel on Multi District Litigation centralized and consolidated 12 separate IP Plaintiff complaints in the Eastern District of Michigan. *See* Transfer Order, D.E. 1 (June 9, 2009); *see also* Conditional Transfer Order, D.E. 8 (July 6, 2009); *see also* Exhibit B, list of cases.  On July 6, 2012, the IP Plaintiffs filed the Third Consolidated Amended Complaint, D.E. 314, ("TCAC"), which asserts antitrust, consumer protection and unjust enrichment claims under the laws of twenty-eight states,[3] on behalf of twenty-one named plaintiffs.[4]

In the individually filed complaints and in the TCAC, named plaintiffs assert, on behalf of themselves and others similarly situated, claims under the laws of the states where they reside or have been injured and claims under the laws of states where no named IP Plaintiffs reside or have been injured.  In a July 10, 2012 Order and a July 17, 2012 Memorandum Opinion (together

---

[3] Arizona, Arkansas, California, DC, Florida, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, , North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.  Although Hawaii was included in earlier complaints, it was omitted from the TCAC.

[4] Nathan Levi Esquerra, Bongo Burger, Inc., Maria Gounaris, F.G. Farah & Partners, LLC, Ingegerd Hesel, Julie Clark, Royal W. Leith, III, Strong Electric, Saad Wholesale, Inc., Steve Larson, Karla P. Levi, Peter Jacobus, Kevin M. Dean, Beatrice Scannapieco, Air Cooling Energy Corp., Marc A. Barash, Nat Gaffet, Thomas D. Hobbs, Jr., Pat Tiede, Victoria Winslow and Scott Burgess.

00801018.DOCX

the "July Order"), the Court held that IP Plaintiffs lack constitutional standing to assert claims under the laws of the eleven states[5] where no named IP Plaintiffs resided.  [DE 318 & 319.]  As a result of the July Order, the twenty-one named IP Plaintiffs' were limited to asserting claims under the laws of the eighteen states[6] where they either resided or were injured at the time they made their purchases of goods affected by Defendants' admitted price fixing conspiracy.  *Id.*

> 2.   The Court's "April Order" and the Three Groups of IP Plaintiffs Who Seek a Unified Appeal

On April 9, 2013, the Court dismissed all claims under twelve states' laws for lack of antitrust standing,[7] the Tennessee antitrust claim for lack of substantial interstate effect, five state law consumer protection claims,[8] and all unjust enrichment claims.  *See* Opinion and Order, D.E. 343, pp. 1-2, 47-49 (April 9, 2013) (the "April Order").  Thus, the claims of the fourteen Dismissed Plaintiffs were completely dismissed.  As the Court noted in the April Order, only seven IP Plaintiffs' claims remain before the Court, which include (a) consumer protection claims on behalf of residents of California, Massachusetts, New Mexico, and Rhode Island, and (b) antitrust claims on behalf of residents of Minnesota and North Carolina.

---

[5] 1) Arkansas; 2) Hawaii; 3) Iowa; 4) Louisiana; 5) Mississippi; 6) Nevada; 7) North Dakota; 8) Puerto Rico; 9) South Dakota; 10) Utah; and 11) Vermont.

[6] 1) Arizona; 2) California; 3) District of Columbia; 4) Kansas; 5) New Hampshire; 6) New Mexico; 7) New York; 8) North Carolina; 9) Michigan; 10) West Virginia; 11) Wisconsin; 12) Rhode Island; 13) Maine; 14) Nebraska; 15) Minnesota; 16) Florida; 17) Tennessee; and 18) Massachusetts.

[7] 1) Arizona, 2) California, 3) District of Columbia, 3) Kansas, 4) Maine, 5) Michigan, 6) Nebraska, 7) New Hampshire, 9) New Mexico, 10) New York, 11) West Virginia, and 12) Wisconsin).  *See* April Order, pp. 12-27.

[8] The April Order dismissed the North Carolina and New Hampshire consumer protection claims for lack of an intrastate nexus; the Florida claim for failure to plead the cause of action with particularity; the Wisconsin claim because the Wisconsin consumer protection law does not provide for a private right of action under these circumstances; and the District of Columbia consumer claims because the plaintiff was not an individual. *See* April Order, pp. 27-33, 36-39.

For purposes of this Motion, the IP Plaintiffs are categorized in three groups:

- Group One Plaintiffs: Six plaintiffs whose claims were fully dismissed and who originally filed individual complaints.[9]

- Group Two Plaintiffs: Eight plaintiffs whose claims were fully dismissed and whose original complaints included other plaintiffs whose claims have not been dismissed, or were first named in the TCAC.[10]

- Remaining Plaintiffs: Seven plaintiffs who have a surviving antitrust or consumer protection claim.[11]

To promote judicial economy and avoid piecemeal litigation, IP Plaintiffs seek to proceed with a unified appeal of the Court's Orders. *See, e.g., Justice v. Pendleton Place Apartments*, 40 F.3d 139, 142 (6th Cir. 1994) ("Judicial economy generally is served best when appeals are presented in a unified package."). The six plaintiffs in Group One brought stand-alone actions that have now been finally resolved, and therefore they are entitled to appeal as of right.[12] By contrast, the eight plaintiffs in Group Two had all their claims dismissed but cannot appeal as of right because they are only named in the TCAC or their original underlying complaint, neither of

---

[9] The Group One Plaintiffs are Marc A. Barash; Nathan Levi Esquerra; Air Cooling Energy Corp.; F.G. Farah & Partners, LLC; Saad Wholesale, Inc.; and Strong Electric. *See* Exhibit A, Chart of IP Plaintiffs and Their Dismissed Claims.

[10] The Group Two Plaintiffs are Scott Burgess, Julie Clark, Kevin M. Dean, Ingegerd Hesel, Thomas D. Hobbs, Jr., Peter Jacobus, Pat Tiede, and Victoria Winslow.

[11] The Remaining Plaintiffs are Bongo Burger, Inc.; Maria Gounaris; Royal W. Leith, III; Karla P. Levi; Beatrice Scannapieco; Steve Larson; and Nat Gaffet. *See* Attachment A.

[12] While 6th Circuit law states that the order is presumptively final for purposes of appeal as to the Group One Plaintiffs, the fact that the April Order addressed a consolidated complaint creates some uncertainty as to whether and to what extent 28 U.S.C. § 1291 provides a right to appeal. Therefore, to protect the rights of all these plaintiffs, this motion seeks entry of final judgment under Rule 54(b) to allow an appeal. To promote judicial economy and avoid piece meal litigation, all fourteen IP Plaintiff whose claims were dismissed in their entirety, seek entry of final judgment, including those that are filing notices of appeal. *See* Exhibit A, chart.

4

which has been entirely dismissed.  Absent a final judgment, the Group Two Plaintiffs will have

to wait until the Court fully adjudicates the Remaining Plaintiffs' antitrust and consumer

protection claims before seeking appellate relief.  This could take years. Judicial economy and

efficiency compel the Court to enter a final order as to all of the IP Plaintiffs requesting finality.

Also, since six IP Plaintiffs' claims are appealable as a matter of right, it makes sense that similar

issues be reviewed on appeal simultaneously.  *See* Exhibit A, Chart of IP Plaintiffs and Their

Dismissed Claims.  Accordingly, the Dismissed Plaintiffs, which include both Group One and

Two Plaintiffs, seek entry of a final order pursuant to Rule 54(b).

        In addition, the Remaining Plaintiffs seek certification of certain claims for appeal under

§ 1292(b).  Three of the IP Plaintiffs seek certification of their California and New Mexico

antitrust claims which were dismissed on *AGC* grounds.  Additionally, IP Plaintiffs seek

certification of this Court's Article III standing determination which finally adjudicated all

claims under the laws of 11 states.  Certification under §1292(b) will promote judicial efficiency

and avoid piecemeal litigation and facilitate a unified appeal.  Thus, IP Plaintiffs respectfully

request that the Court grant IP Plaintiffs' Motion and enter final judgments under Fed. R. Civ. P.

54(b) and certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## LEGAL ARGUMENT

I.      **THE APRIL ORDER IS FINAL AS TO THE DISMISSED PLAINTIFFS, AND THERE IS NO
        JUST REASON FOR DELAY OF THEIR APPEAL.**

        28 U.S.C. § 1291 vests the appellate courts with "jurisdiction of appeals from all final

decisions of the district courts."  Parties whose actions have been ultimately disposed are entitled

to appeal under § 1291, but parties whose actions include some claims or parties that have *not*

been ultimately disposed may only appeal after entry of final judgment under Rule 54(b).

Rule 54(b) provides that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Certification under Rule 54(b) is a two-step process: first, "the district court must expressly direct the entry of final judgment" as to the designated claims or parties, and second, "the court must expressly find that there is no just reason to delay an appeal." *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 594 (6th Cir. 2013) (quoting *Gen. Acquisition, Inc. v. GenCorp., Inc.*, 23 F.3d 1022, 1027 (6th Cir. 1994)).

As explained above, the Group One and Group Two Plaintiffs are in different postures for purposes of 28 U.S.C. § 1291 and Rule 54(b), because the Group One Plaintiffs' original actions do not include any other plaintiffs. The April Order dismissed all remaining claims in the Group One Plaintiffs' actions. Under Sixth Circuit precedent, the disposal of these cases is immediately appealable even though they were consolidated with other actions that have not yet been terminated. *See Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994) ("[C]onsolidated cases remain separate actions. Thus, a case which is disposed of on summary judgment is appealable pursuant to 28 U.S.C. § 1291 despite the fact that the case with which it is consolidated has not been disposed.").[13] However, because the Group One Plaintiffs were named as parties not only in their own individual actions, but in a consolidated complaint as ordered by the Court in CMO No. 1, in an abundance of caution and to avoid confusion, Plaintiffs request the Court enter a final judgment under Rule 54(b) dismissing their claims.

---

[13] *See also, e.g.*, *Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.*, 2011 U.S. App. LEXIS 5922 (6th Cir. 1/19/2011) (where the lower court order dismisses a case/complaint in toto, the order is appealable as a final order, notwithstanding that the case was consolidated with another).

Unlike the Group One Plaintiffs, the Group Two Plaintiffs' claims were originally filed in actions that include other plaintiffs whose claims were not dismissed. Therefore, certification under Rule 54(b) is necessary before the Group Two Plaintiffs may appeal. For purposes of judicial economy and to streamline appellate review of related issues, Group Two Plaintiffs also seek this court's dismissal under Rule 54(b).

The Dismissed Plaintiffs amply meet the Sixth Circuit's standards for certification of orders as final judgments under Rule 54(b), and respectfully request the Court find that there is no just reason for delay and direct as to them entry of final judgment.

A.    The Order Is Final

The requirement of finality for Rule 54(b) certification "is satisfied where some decision made by the district court ultimately disposes of one or more but fewer than all of the claims or parties in a multi-claim/multi-party action." *Gen. Acquisition, Inc. v. GenCorp., Inc.,*, 23 F.3d 1022, 1026-27 (6th Cir. 1994). Here, the April Order "ultimately dispose[d]" of all remaining claims brought by each of the Dismissed Plaintiffs. In that order, the Court dismissed all remaining claims in the case except for antitrust claims "under the antitrust statutes of North Carolina and Minnesota" and consumer protection act claims "under the consumer protection acts of California, Massachusetts, New Mexico, and Rhode Island." D.E. 343 at 48-49. The Dismissed Plaintiffs reside in New York, Arizona, Washington, D.C., Michigan, Florida, Kansas, Nebraska, New Hampshire, Tennessee, Wisconsin, West Virginia and Maine, and their remaining claims arise solely under those states' or district's respective laws. Accordingly, all of their claims have been dismissed, and they have no claims remaining in this action. They will no longer be active parties in the proceedings before this Court and can receive no relief from those proceedings.

The Court's April Order therefore "ultimately disposes" of the Dismissed Plaintiffs' claims in their entirety, satisfying the first requirement of Rule 54(b) and rendering entry of final judgment as to the Dismissed Plaintiffs appropriate.[14]

### B.    There Is No Just Reason for Delay

After finding that the judgment is final, the Court must next "consider a non-exhaustive list of factors," including

> (1) the relationship between the adjudicated and non-adjudicated claims; (2) the possibility that the need for appellate review might become moot due to future developments in the district court; (3) the possibility that the appellate court might be required to hear the same issue twice; (4) the presence or absence of a claim or counterclaim that might result in a set-off against the final judgment; and (5) other miscellaneous factors, including "delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like."[15]

As will be shown *infra*, a weighing of these five factors clearly demonstrates there is no just reason to delay appellate review of Dismissed Plaintiffs' claims.

*First*, the adjudicated and non-adjudicated claims are distinct and arise under entirely different legal regimes. The grounds on which the Dismissed Plaintiffs' claims were dismissed – the incorporation of the *AGC* test into specific states' antitrust laws, and miscellaneous requirements of specific state antitrust and consumer protection laws – will in no way arise on appeal in the prosecution of the unadjudicated claims by the Remaining Plaintiffs, who are suing

---

[14] *Gen. Acquisition*, 23 F.3d at 1026-27; *see also, e.g., Abbey v. United States*, 101 Fed. Cl. 239, 242 (Fed. Cl. 2011) (finality requirement satisfied where multiple plaintiffs each assert individual claims and the "ruling on those individual claims for relief is final such that the court has nothing more to do as to those claims or parties but to enter judgment"); *cf. Little Caesar Enterprises, Inc. v. Smith*, 916 F. Supp. 662, 665 (E.D. Mich. 1996) ("[A] judgment is not final for purposes of Rule 54(b) unless it entirely disposes of an individual claim or party.").

[15] *U.S. Citizens Ass'n*, 705 F.3d at 596 (quoting *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986)). If the case is "the infrequent harsh case" where certification can be "an instrument for the improved administration of justice," certification is appropriate. *Corrosioneering*, 807 F.2d at 1282 (citation omitted).

under the laws of different states.  Moreover, as discussed above, the Dismissed Plaintiffs'

claims have been entirely dismissed, and therefore their rights cannot be decided by the

remaining claims.

*Second*, there is no way for the remaining litigation before this Court to moot the

Dismissed Plaintiffs' appeal.  Under the Court's ruling in the July Order that an indirect

purchaser may represent only absent class members suing under the same state law, the

Remaining Plaintiffs cannot represent the Dismissed Plaintiffs and can neither vindicate nor

preclude Dismissed Plaintiffs' claims.  *See Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011)

(holding that a putative class action cannot preclude other litigants unless certified to represent

them as absent class members); *Taylor v. Sturgell*, 553 U.S. 880 (2008) (rejecting "virtual

representation" theory of claim preclusion).  Thus, however the remaining proceedings conclude,

the Sixth Circuit still will need to decide whether to reinstate the Dismissed Plaintiffs' claims.

*Third*, the Sixth Circuit will not need to review these issues multiple times.  Whether the

state laws under which the Dismissed Plaintiffs sue bar indirect purchaser claims based on *AGC*

requires an independent analysis for each state which would not be repeated in an appeal of any

Remaining Plaintiffs' suit.  The same is true of Tennessee's and New Hampshire's intrastate

commerce requirements, the Florida Deceptive and Unfair Trade Practice Act's particularity

requirement, and the other miscellaneous state-law requirements on which the Dismissed

Plaintiffs' claims were ultimately resolved.  There is thus no risk of duplicative review by the

court of appeals.[16]

---

[16] To be sure, there are some issues that overlap with the grounds on which the Remaining
Plaintiffs' claims were partially dismissed, as discussed below.  However, this overlap is better
viewed as a reason to certify an interlocutory appeal under 28 U.S.C. § 1292(b) to the limited
extent that discrete portions of the legal issues underlying Dismissed Plaintiffs' appeal affect the

*Fourth*, there is no counterclaim that might result in a set-off or otherwise bring the appealable issues into play in the remaining proceedings.

*Fifth*, as courts in the Sixth Circuit have recognized, "interests of judicial efficiency strongly militate in favor of" entry of final judgment to avoid the "colossal waste of judicial resources" that would result if subsequent reversal required a "duplicative" "separate trial." *Cardinal Health*, 2007 WL 1026347, at *5.[17]  If the Dismissed Plaintiffs' claims are later reinstated, the parties will need to reopen discovery to obtain incremental documents relevant to the Dismissed Plaintiffs' claims, requiring potentially duplicative and expensive negotiations, electronic and physical document searches, and productions.  Experts will have to analyze multiple sets of data, draft multiple expert reports, and defend multiple depositions.  Summary judgment and class certification will need to be briefed multiple times.  And perhaps worst of all, multiple trials may ultimately be required, as a verdict against the remaining Plaintiffs would not preclude the Dismissed Plaintiffs' claims and a verdict for the remaining Plaintiffs would not resolve damages issues.  This would create tremendous needless expense for the parties and the Court, and would open up the possibility of inconsistent verdicts.  Nor is the possibility of reversal far-fetched or frivolous; as the Court observed, the applicability of *AGC* is "a complex

---

remaining Plaintiffs, given that the Group One Plaintiffs are entitled to immediate appeal in any event.

[17] *See also, e.g., Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 46 (1st Cir. 2005) ("If the court's ruling dismissing [some, but not all, plaintiffs'] claims proved to be incorrect, the most efficient course of action would be for all three employees' claims to proceed together. . . .  By certifying the judgments against [the dismissed plaintiffs] as final and allowing this court to review the discrete legal issue underlying them without delay, the district court was maximizing the potential for the most expeditious resolution of the entire case."); *Marcilis v. Redford Twp.*, No. 09-11624, 2011 WL 284466, at *4 (E.D. Mich. Jan. 25, 2011) (holding that "judicial economy is best served by immediate appeal, rather than going to trial on Plaintiffs' one remaining claim" with the possibility of a second trial).

issue" that "has 'resulted in a number of splintered opinions.'"[18]   Accordingly, Rule 54(b)

certification is appropriate, and IP Plaintiffs request that the Court enter the Proposed Order.

## II.   THE COURT SHOULD GRANT PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b).

The Remaining Plaintiffs request that this Court grant permission pursuant to 28 U.S.C. §

1292(b) to appeal the April Order dismissing the antitrust claims made by and on behalf of

consumers in California and New Mexico and the July Order dismissing claims under 11 states'

laws for lack of Article III standing.   More specifically, the Remaining Plaintiffs request that the

Court certify the following issues to the Court of Appeals: (1) whether the *AGC* test for antitrust

standing bars IP Plaintiffs' antitrust claims under California and New Mexico law; and (2)

whether the ability of proposed class representatives to represent absent class members who

suffered similar injuries at the hands of the same defendants should be analyzed as a question of

Article III standing or Rule 23 adequacy.

Should the Court decide not to direct entry of final judgments as to the Dismissed

Plaintiffs, IP Plaintiffs request that the Court modify issue "(1)" above as follows and certify it

for appeal under §1292(b): whether the *AGC* test for antitrust standing bars IP Plaintiffs' antitrust

claims under Arizona, California, District of Columbia, Kansas, Maine, Michigan, Nebraska,

New Hampshire, New Mexico, New York, West Virginia and Wisconsin law.   In addition to the

first question as modified and the second question, IP Plaintiffs would request that the Court

certify two additional issues for appeal under §1292(b): (3) whether the strictures of Federal Rule

of Civil Procedure 9(b) apply to non-fraud claims asserted under Florida's Deceptive and Unfair

Trade Practices Act; and (4) whether allegations that defendants' conduct artificially inflated the

---

[18] Slip. Op. at 15 (quoting *Determining Antitrust Standing Under State Law*, 3 J. Bus. Entrepreneurship & L. 255 (2010).  *See U.S. Citizens Ass'n*, 705 F.3d at 596 (court should consider the "frivolity of competing claims" in determining whether immediate appeal is warranted).

11

prices paid for end products incorporating hermetic compressors in "each" state meet the requirement for alleging a "substantial effect" on Tennessee commerce required for application of Tennessee's antitrust law.

A.   The Standard for Interlocutory Appeal Under 28 U.S.C. § 1292(b)

Permission to appeal under 28 U.S.C. §1292(b) is appropriate where: (1) the issue to be certified is an issue of law; (2) the question is controlling; (3) there is a substantial ground for difference of opinion as to the outcome reached by the district court, and (4) an immediate appeal would materially advance the efficient final termination of the action.[19]

B.   The Proposed Appeal Meets the Criteria for Interlocutory Appeal Under 28 U.S.C. § 1292(b).

An order certifying these issues for appeal would meet all the criteria for interlocutory appeal and promote a quick, efficient and final resolution of this case.

1.   *The Court's Orders Present Controlling Issues of Law*

The Court's April Order under Rule 12(b)(6) dismissing various antitrust claims for lack of antitrust and constitutional standing – as well as its dismissal of the Tennessee antitrust claims for failure to plead sufficient intra-state effect and the Florida consumer protection claims for failure to meet Rule 9(b)'s pleading requirements – clearly presents issues of law.[20]

_____

[19] *See In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (citing 28 U.S.C. §1292(b)).

[20] *Williams v. Duke Energy International, Inc.*, 681 F.3d 788, 799 (6th Cir. 2012) ("Whether the district court properly dismissed [a plaintiff's] claims pursuant to Rule 12(b)(6) is a question of law which we review de novo."); *Hensley Manufacturing, Inc. v. ProPride, Inc.*, 579 F.3d 603, 608-09 (6th Cir. 2009) (same); *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (same).  In addition, questions regarding antitrust standing are pure questions; *see also Bodie-Rickett & Associates v. Mars, Inc.*, 957 F.2d 287, 290 (6th Cir. 1992) (antitrust standing is a question of law); *Microsoft Corp. v. Computer Support Services of Carolina, Inc.*, 123 F. Supp. 2d 945, 950 n.1 (W.D. N.C. 2000) ("Whether a party has antitrust standing is a pure question of law").  Whether  Rule 9(b) applies to a state law claim is a matter of substantive state law, *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012), which is reviewable de novo as a matter of law.  *Lawler v. Fireman's Fund Ins.*

12

Further, these legal issues are "controlling." For purposes of meeting the requirements for interlocutory appeal under section 1292(b), a legal issue is "controlling" if it can materially affect the outcome of the case.[21] The April Order also profoundly affects the rights of named plaintiffs and putative classes of consumers from California and New Mexico by eliminating their antitrust claims, thus limiting the remedies they may seek. Further, the April Order eviscerated the cases of the named plaintiffs and putative classes of consumers from Arizona, D.C., Florida, Kansas, Maine, Michigan, Nebraska, New Hampshire, New York, Tennessee, West Virginia and Wisconsin, effectively ending their opportunity to seek relief for Defendants' admitted criminal wrongdoing. Courts in this circuit and elsewhere frequently certify and hear appeals on such issues pursuant to 28 U.S.C. § 1292(b).[22] Similarly, the Court's July Order on Article III standing prevented IP Plaintiffs from asserting claims on behalf of consumers in 11 states, affecting their right to recover certain damages.

---

*Co.*, 322 F.3d 900, 902 (6th Cir. 1997) ("The facts in this case are undisputed and the district court's determination of state law presents a purely legal question, which we review *de novo*."); *see generally Salve Regina College v. Russell*, 499 U.S. 225, 1221 (1991) (issues of the interpretation of state law must be reviewed de novo).

[21] *In re City of Memphis*, 293 F.3d at 351.

[22] *See, e.g., Kansas v. Utilicorp. United Inc.*, 497 U.S. 205-06 (1990) (standing under the Clayton Act addressed in appeal under 1292(b)); *In re: Cardizem CD Antitrust Litigation*, 332 F.3d 896 (6th Cir. 2003) (appeal challenging ruling on antitrust injury heard under 28 U.S.C. 1292(b)); *Caruana v. General Motors Corporation*, 204 Fed. Appx. 511 (6th Cir. 2006) (appeal challenging ruling on antitrust standing heard under 28 U.S.C. 1292(b)); *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445 (6th Cir. 1988) (same); *In re Hypodermic Products Antitrust Litigation*, 484 Fed. Appx. 669, 674-75 (3d Cir. 2012) (same); *see also In re: Trailer Source*, 555 F.3d 231(6th Cir. 2009) (standing question certified for appeal under §1292(b)); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690-93 (9th Cir. 2011) (scienter pleading requirement under Fed. R. Civ. P. 9(b) certified for appeal under 1292(b)).

13

2.     *There Are Reasonable Grounds For Disagreeing with The Court's Rulings*

a.   Application of the *AGC* test to Indirect Purchasers' State Law Claims

In dismissing the California and New Mexico antitrust claims, as well as the antitrust claims of the Dismissed Plaintiffs, the Court noted that the courts are split as to whether application of the antitrust standing principles first set out in *AGC* should be applied to state law indirect purchaser claims, and whether it requires the dismissal of state law antitrust claims by plaintiffs who purchased price-fixed items as components of finished products.[23]  These are issues on which courts can and do disagree.

First, courts have reached markedly different conclusions as to whether, absent definitive direction from the highest courts of a state, the *AGC* factors[24] apply to cases such as this one. This Court held that *AGC*'s factors should apply to determinations of state law antitrust standing.[25]  However, some state courts have rejected the application of *AGC* principles altogether as inconsistent with state law allowing indirect purchaser suits.[26]  A number of federal courts have held that absent a statement from the state's highest court, application of the *AGC* factors to determine state law antitrust standing would be inappropriate.[27]  Second, courts have

_____

[23] *In re: Refrigerant Compressors Antitrust Litigation*, 2013 U.S. Dist. LEXIS 50737 at *35-40 (E.D. Mich. April 9, 2013) (citing cases on both sides of the issue).

[24] These factors, as summarized by the Court, are: (1) nature of plaintiffs' injury and status in a relevant market; (2) the causal connection and directness of injury; (3) complexity of damage apportionment; (4) whether other, more directly harmed parties may sue; and (5) the possibility of duplicative damages.  *In re: Refrigerant Compressors Antitrust Litigation*, 2013 U.S. Dist. LEXIS 50737 at *43-53; *see AGC*, 459 U.S. at 537-45.

[25] *E.g.*, *In re: Refrigerant Compressors Antitrust Litigation*, 2013 U.S. Dist. LEXIS 50737 at *35-40 (E.D. Mich. April 9, 2013); *In re Dynamic Random Access Memory Antitrust Litigation*, 516 F. Supp. 2d 1072, 1085-97 (N.D. Cal. 2007).

[26] *E.g.*, *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 627-29 (Minn. 2007); *Teague v. Bayer AG*, 671 S.E.2d 550, (N.C. App. 2009).

[27] *E.g.*, *In re TFT-LCD Antitrust Litigation*, 586 F. Supp. 2d 1109, 1120-23 (N.D. Cal. 2008); *In re Graphics Processing Units Antitrust Litigation*, 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007)

14

2:09-md-02042-SFC   Doc # 358   Filed 05/09/13   Pg 31 of 36   Pg ID 8353

not agreed on how to identify and evaluate the *AGC* factors in cases such as this one. For

example, a number of courts have reasoned that purchases in a product's chain of distribution are

in the "same" market for *AGC* purposes or that the "same market" factor should not have

significant weight in a case such as this.[28] Some courts have reasoned that the "directness"

factor and whether more direct victims exist should have minimal or no weight in the antitrust

standing calculus because repealer states have given "indirect purchasers" the right to sue.[29] A

number of courts have found that the possibility of multiple recoveries should not weigh heavily

in an *AGC* analysis because repealer states have made the policy choice to allow multiple

recoveries.[30] These divergent approaches to the legal standards for antitrust injury under state

---

(denying motion to dismiss on AGC grounds); *D.R. Ward Construction Co. v. Rohm and Haas Co.*, 470 F. Supp.2d 485, 494-501 (E.D. Pa. 2006) (same).

[28] *See, e.g., In re TFT-LCD Antitrust Litigation*, 586 F. Supp. 2d at 1123 (where plaintiffs bought TVs and computers with LCD monitors as part of the distribution chain for LCD panels, they were sufficiently linked to the relevant market to have standing); *In re Flash Memory Antitrust Litigation*, 643 F. Supp. 2d 1133, 1154-56 (N.D. Cal. 2009 (where plaintiffs alleged the inflation in the price of component parts caused inflation in the price of finished goods because of the interrelationship of the component and finished goods markets, plaintiffs had standing).

[29] *See, e.g., Paul v. Intel Corp.*, 496 F. Supp. 2d 404, 410 (D. Del. 2007) (the fact that there are more directly harmed plaintiffs should have no little or no impact on the standing analysis in the context of state laws that allow indirect purchasers to sue; denying motion to dismiss where the microprocessors subject to illegal activity sold as part of computers); *D.R. Ward Construction Co. v. Rohm and Haas Co.*, 470 F. Supp.2d at 503-04 (E.D. Pa. 2006) (same reasoning; rejecting motion to dismiss on AGC grounds); *see also In re Aftermarket Filters Antitrust Litigation*, 2009 U.S. Dist. LEXIS 104114 at *29 (N.D. Ill. 2009) (where plaintiffs purchase the price fixed products down the chain of distribution, the indirect plaintiffs are exactly the type of plaintiffs that the states intended to have standing when they rejected *Illinois Brick*, even if the product is purchased as part of a larger "package" of products or services).

[30] *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Company, Ltd.*, 2012 U.S. Dist. LEXIS 125677 at *25-26 (E.D. Wis. 2012) (repealer states have made affirmative policy decision to impose liability in addition to that available under federal law, so the risk of paying "multiple" damages is either neutral or weighs in favor of standing); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d at 56 (same); .*D.R. Ward Construction Co. v. Rohm and Haas Co.*, 470 F. Supp.2d at 504-05 (same); *see also Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 786-87 (Cal. 2010) (rejecting pass-on defense under California state law because by rejecting *Illinois Brick* and allowing indirect purchasers to sue, legislature made an affirmative policy decision to

15

law, even assuming *AGC* factors apply to antitrust claims by persons who purchase price-fixed

products as component parts of the finished products,[31] illustrate that a reasonable basis for

disagreeing with the Court's decision exists.

> b. <u>Whether the ability of proposed class representatives to represent absent class members who suffered similar injuries at the hands of the same defendants should be analyzed as a question of Article III standing or Rule 23 adequacy</u>

There is similarly a substantial split of authority as to the specific issue of law decided in

the Court's July 10 Order: whether the ability of class representatives to represent absent class

members with claims against the same defendants for similar injuries from the same conduct—

but under different states' laws—should be analyzed as a question of Article III standing or Rule

---

impose liability for all the consequences of a defendants' illegal actions – measureable damages to both direct and indirect purchasers in full); *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 107 (Fla. App. 1996) (state can make the policy decision to impose liability above and in addition to federal law for indirect purchasers); *see generally California v. ARC America Corp.*, 490 U.S. 93, 105 (1989) (state antitrust laws can impose liability "above and above that authorized by federal law").

[31] In the *VISA* cases applying the *AGC* factors to state law antitrust claims, courts repeatedly and explicitly noted that the plaintiffs were "not indirect purchasers" in the sense of having purchased the defendants' goods or services down the chain of distribution. Rather, in those cases, plaintiffs purchased other goods which may have had their prices inflated because the higher costs imposed by the defendants' actions may have raised the prices of all good sold by the merchants who did purchase the card services. *See, e.g., Peterson v. Visa U.S.A. Inc.*, 2005 D.C. Super. LEXIS 17 at *5-6 (D.C. Super. 2005) ("[plaintiff] is not an indirect purchaser of defendants' debit card services"); *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 196-97 (Iowa 2007) ("The plaintiffs in the present action are not in a comparable position because they did not purchase, directly or indirectly, the product that is the subject of anticompetitive activity by Visa and Mastercard--debit processing services."); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 301 (Nebraska) ("appellants are not indirect purchasers" because they "did not purchase the debit card services, either directly or indirectly"); *Nass-Romero v. VISA U.S.A. Inc*, 279 P.3d 772, 780 (N.M. App. 2012) ("we reject Plaintiff's claim that she is an indirect purchaser in the distribution scheme at hand"). And in *Southard* and *Kanne*, for example, the courts explicitly distinguished the cases at hand denying standing from cases where they had allowed standing to parties who had indirectly purchased the items subject to the illegal behavior as components of other products. *See Southard*, 734 N.W.2d at 195-97; *Kanne*, 723 N.W.2d at 301. Thus, how the state courts would apply the *AGC* factors and the weight to be given to various factors in a case such as this thus remains very much in question.

23 adequacy.  As the Court observed in its July Order, "the federal courts are split on this issue"

and "district courts within the Eastern District of Michigan have issued conflicting opinions on

the subject." D.E. 319 at 1.  There is thus plainly a substantial ground for a difference of opinion

on this issue.[32]

       c.      The Application of Rule 9(b)'s Pleading Requirements to Non-Fraud Claims Under Florida's Deceptive and Unfair Trade Practices Act

Similarly, whether the strictures of Rule 9(b) apply to non-fraud claims under Florida's

Deceptive and Unfair Trade Practices Act ("FDUTPA") is an issue that has divided courts.

FDUTPA prohibits "unfair" *or* "deceptive" trade practices.  Fla. Stat. § 501.204.  And Florida

courts have held that violations of the antitrust laws constitute "unfair" trade practices under

---

[32] Indeed, it bears noting that recent Sixth Circuit authority, handed down after briefing was completed on the issue in this case, makes it even more plausible that the Sixth Circuit would join those courts holding that Article III requires only that a plaintiff have *individual* standing to sue a defendant for a given type of injury, leaving the determination of whether that plaintiff is a proper representative for plaintiffs suing for similar injuries under other states' laws to the class certification process under Rule 23.  In *Gooch v. Life Investors Insurance Company of America*, 672 F.3d 402 (6th Cir. 2012), the Court of Appeals reaffirmed *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998), which held that "[o]nce [a plaintiff's individual] standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure."  *Gooch*, 672 F.3d at 422 (quoting *Fallick*, 162 F.3d at 423).  *Gooch* emphasized that the correct question is whether Rule 23's typicality and commonality inquiries are satisfied.  *Id.* (quoting Newberg on Class Actions § 1:2).  *In re Packaged Ice Antitrust Litigation*, 779 F. Supp. 2d 642 (E.D. Mich. 2011), on which this Court primarily relied, was decided before *Gooch* and thus did not have the benefit of the Court of Appeals' most recent comments in this area.  By contrast, *In re Polyurethane Foam Litigation*, 799 F. Supp.2d 777, 804-06 (N.D. Ohio 2011), which applied the same portion of *Fallick* highlighted in *Gooch*, rejected *Packaged Ice* and held that the issue was one of representativeness, rather than standing.  Given *Gooch* and *Fallick*, and the *Polyurethane Foam* court's careful analysis of *Fallick*, there is substantial reason to believe the Sixth Circuit might adopt the reasoning of *Polyurethane Foam* rather than *Packaged Ice* and this Court's July 10 Order.  The third requirement of § 1292(b) is thus indisputably satisfied as to this issue.

17

FDUTPA.[33]  This Court (like a number of other courts) held that Rule 9(b) applies to all

complaints alleging FDUPTA violations.[34]  Other courts, however, have held Rule 9(b)'s

specificity requirement applies only where fraud provides the gravamen of a plaintiff's FDUTPA

claims.[35]  As the FDUTPA claims asserted in this action do not rest upon fraud, but on

allegations that the Defendants engaged in "unfair" trade practices by engaging in price fixing,

reasonable grounds for disagreeing with the Court's opinion dismissing the FDUTPA claims

exist.

### d.   The Requirement of "Substantial Effects" on Tennessee Commerce

In like manner, the courts have split as to whether allegations that defendants' violations

have caused substantial effects, both in interstate commerce and in "each state," meet

---

[33] *Execu-Tech Business Systems, Inc. v. New Oji Paper Co., Ltd.*, 752 So. 2d 582, 585 (Fla. 2000) (Allegations of a conspiracy "to fix the wholesale price of their product throughout the United States, including Florida….[such] conduct constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act."); *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 104 (Fla. App. 1996) (price fixing violates FDUTPA).

[34] *In re: Refrigerant Compressors Antitrust Litigation*, 2013 U.S. Dist. LEXIS 50737 at *67-69 (E.D. Mich. April 9, 2013) (FDUTPA claims must be pled with specificity required by Rule 9(b)); *see, e.g.*, *In re Packaged Ice Antitrust Litigation*, 779 F. Supp. 2d 642, 665 (E.D. Mich. 2011)(same); *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331,  (S.D. Fla. 2011) (products liability and misrepresentation); *Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.*, 2010 U.S. Dist. LEXIS 84544 at *12-13 (M.D. Fla. 2010) (same); *WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, 2008 U.S. Dist. LEXIS 61428 (M.D. Fla 2008).

[35] *E.g.*, *Hill v. Hoover Company*, 2012 U.S. Dist. LEXIS 142212 at *7-9 (N.D. Fla. 2012) (Rule 9(b) did not apply to claims based on unfair conduct rather than deceptive conduct); *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Company, Ltd.*, 2012 U.S. Dist. LEXIS 125677 at *25-26 (E.D. Wis. 2012) (antitrust claim; "Rule 9(b) does not apply to this claim because plaintiffs do not need to prove fraud to prevail under the FDUTPA,"); *In re Processed Egg Products Antitrust Litigation*, 851 F. Supp. 2d 867, 900-01 (E.D. Pa. 2012) (Rule 9(b) does not apply because pleading an antitrust violation states a claim under FDUTPA and does not require pleading fraud) , *Motmanco, Inc. v. McDonald's Corp.*, 2005 U.S. Dist. LEXIS 33965 at *27 (M.D. Fla. 2005) ("Plaintiffs failure to satisfy the heightened pleading requirements for fraud does not doom its claim under the FDUTPA as they have not alleged fraud. Plaintiff has satisfied the general notice pleading requirements in order to survive this Motion." (citations omitted)); *see also See Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 453 (Fla. App. 1985).

Tennessee's antitrust law's "substantial effects" requirement. While this Court, like a number of other courts, required specific allegations of the effects of defendants' actions in Tennessee to sustain Tennessee antitrust claims, other courts have held that the type of allegations made in the TCAC sufficient.[36] The split among the courts establishes the existence of a reasonable basis to disagree with the Court's ruling.

> 3.    *Resolving These Issues Now Would Promote a Timely and Efficient Resolution of the Litigation.*

Addressing these issues now through an interlocutory appeal would conserve judicial resources and avoid the possibility of duplicative proceedings. Without an interlocutory appeal, the parties could be subject to a second round of discovery, a second class certification motion, a second class notice and another trial on the merits. Because discovery has yet to start, an immediate appeal of the Court's April Order could determine the issues in time for all discovery on the indirect purchasers' claims to proceed in a coordinated and efficient manner.

Further, because this is an MDL where parties in cases originally filed outside this district may seek remand to their districts of origin for trial and potential appeals, an interlocutory appeal addressing the issues in the Orders reduces the risk of inconsistent decisions in different courts. *See Hill v. Henderson*, 195 F.3d 671, 677-78 (D.C. Cir. 1999) (interlocutory appeal in MDLs allows the circuit of the transferee court to "give the issues a unified treatment" that "is likely to be accepted as binding law of the case once the cases are transferred back to their courts of origin").

---

[36] *E.g., Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Company, Ltd.*, 2012 U.S. Dist. LEXIS 125677 at *27 (allegations of nationwide conspiracy that forced consumers to overpay for parts meets requirements for Tennessee effect); *In re Digital Music Antitrust Litigation*, 812 F. Supp. 2d 390, 407-08 (S.D.N.Y. 2011) (allegations of price fixing affecting sales in every state sufficient to satisfy Tennessee law); *In re Chocolate Confectionary Antitrust Litigation*, 602 F. Supp. 2d at 581-82 (same).

19

## CONCLUSION

For all the foregoing reasons, IP Plaintiffs respectfully request the Court grant this

Motion for (1) entry of final Judgments under Rule 54(b) as to certain Indirect Purchaser

Plaintiffs and (2) certification of certain claims for interlocutory appeal under 28 U.S.C. §

1292(b).  A proposed Order is attached as Exhibit C.

Respectfully submitted,

/s/ David E. Plunkett
David E. Plunkett (P66696)
Richard E. Rassel (P57540)
WILLIAMS, WILLIAMS, RATTNER
  & PLUNKETT, P.C.
380 N. Old Woodward Avenue, Suite 300
Birmingham, Michigan  48009
Telephone:  (248) 642-0333

*Interim Lead Counsel*
*for the Indirect Purchaser Class*

Dated:  May 9, 2013

J. Douglas Richards
COHEN MILSTEIN SELLERS
  & TOLL PLLC
88 Pine Street, Fourteenth Floor
New York, New York 10005
Tel. (212) 838-7797
Fax. (212) 838-7745
drichards@cohenmilstein.com

Emmy L. Levens
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave. NW, Ste. 500 West
Washington, DC 20005
Tel. (202) 408-3669
Fax. (202) 408-4699
elevens@cohenmilstein.com

Michael M. Buchman
Adam G. Kurtz
POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP
600 Third Avenue
New York, NY 10016
Tel. (212) 661-1100
Fax. (212) 661-8665
mbuchman@pomlaw.com

Timothy D. Battin
Mark J. Schirmer
STRAUS & BOIES, LLP
4041 University Drive, 5th Flr.
Fairfax, Virginia 22030
Tel. (703) 764-8700
Fax. (703) 764-8704
tbattin@straus-boies.com

20