IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE: REFRIGERANT COMPRESSORS ANTITRUST LITIGATION | No. 2:09-md-2042 |
| | MDL No. 2042 |
| THIS DOCUMENT RELATES TO: | Honorable Sean F. Cox |
| General Electric Company v. Whirlpool Corporation et al. | Case No. 2:13-cv-12638 |

**MOTION BY DEFENDANTS DANFOSS A/S,
DANFOSS FLENSBURG GMBH AND DANFOSS LLC
TO STAY THIS ACTION PENDING ARBITRATION**

Defendants Danfoss A/S, Danfoss Flensburg GmbH and Danfoss LLC ("Danfoss"), through their attorneys hereby move to stay the Complaint filed herein by plaintiff General Electric Company and to refer all claims therein against the Danfoss defendants to arbitration.

This motion is based on an accompanying declaration of Anders Stahlschmidt, the applicable provisions of Federal Arbitration Act, and a supporting Memorandum of Law.

As required by E.D. Mich. LR 7.1(a), John W. Allen, Counsel for the Danfoss defendants, sought concurrence in the requested relief from Kimberly L.

Clark, Counsel for plaintiff General Electric Company, via telephone on August

13, 2013.  Plaintiff's counsel did not consent to the relief requested.

Dated:  August 16, 2013           By:___s/ Lawrence Kill_____
                                       ANDERSON KILL & OLICK, P.C.
                                       LAWRENCE KILL
                                       JEFFREY E. GLEN
                                       1251 Avenue of the Americas
                                       New York, NY 10020
                                       Telephone:  212-278-1000
                                       Fax:  212-278-1733
                                       Email:  lkill@andersonkill.com


                                  By:___s/ John W. Allen_____
                                       VARNUM LLP
                                       JOHN W. ALLEN (P10120)
                                       251 North Rose Street, 4th Floor
                                       Kalamazoo, MI 49007
                                       Telephone:  269-553-3501
                                       Fax:  269-382-2382
                                       Email:  jwallen@varnumlaw.com


                                       *Attorneys for Defendants Danfoss A/S,*
                                       *Danfoss Flensburg GmbH and Danfoss LLC,*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE: REFRIGERANT COMPRESSORS ANTITRUST LITIGATION | No. 2:09-md-2042 <br><br> MDL No. 2042 <br><br> Honorable Sean F. Cox <br><br> Case No. 2:13-cv-12638 |
| THIS DOCUMENT RELATES TO: <br><br> General Electric Company v. Whirlpool Corporation et al. | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY DEFENDANTS DANFOSS A/S,
DANFOSS FLENSBURG GMBH AND DANFOSS LLC
TO STAY THIS ACTION PENDING ARBITRATION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF ISSUES PRESENTED.................................................v

STATEMENT OF CONTROLLING OR  MOST APPROPRIATE
          AUTHORITIES ........................................................................ vi

PRELIMINARY STATEMENT ............................................................1

ARGUMENT .........................................................................................4

I.     DANFOSS IS ENTITLED TO HAVE THE CLAIMS AGAINST IT
       RESOLVED IN AN ARBITRATION CONSOLIDATED WITH THE
       ARBITRATION BETWEEN GE AND EMBRACO DEFENDANTS..........4

       A. The Parties and their sales to GE ......................................................4

       B. The arbitration provisions of the GE purchase orders ....................6

       C. GE consented to a consolidated arbitration including parties who
          are not signatories to the contract between GE and a particular
          supplier. ...........................................................................................8

II.    EVEN IF DANFOSS SALES TO GE WERE NOT ON GE PURCHASE
       ORDERS, GE IS EQUITABLY ESTOPPED FROM AVOIDING ITS
       OBLIGATION TO ARBITRATE  ITS DISPUTE WITH DANFOSS ........11

       A. If a signatory to an agreement containing an arbitration clause
          accuses another signatory and a non-signatory of conspiracy, the
          non-signatory may compel arbitration of the claim against it. ......11

       B. Sixth Circuit and Michigan case law support the application of
          equitable estoppel to a motion to compel arbitration by a non-
          signatory accused of conspiracy. ...................................................14

       C. To the extent that a minority of courts requires allegations of
          "intertwining" between alleged conspirators, such a requirement is
          more than met in the instant case. .................................................16

CONCLUSION ....................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Express Co. v. Italian Colors Restaurant,*
    133 S.Ct. 2304 (2013).......................................................................................7, 9

*American Reliable Ins. Co. v. Arrington*,
    269 F.Supp.2d 758 (S.D. Miss. 2003) ................................................................13

*Anwar v.Fairfield Greenwich Ltd.,*
    728 F.Supp.2d 462 (S.D.N.Y. 2010) ....................................................................9

*Arthur Anderson LLP v. Carlisle,*
    556 U.S. 624 (2009)............................................................................................18

*AT&T Mobility LLC v. Concepcion*,
    131 S.Ct. 1740 (2011).........................................................................................18

*Becker v. Davis,*
    491 F.3d 1292 (11th Cir. 2007) ..........................................................................12

*Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*,
    671 F.3d 635 (7th Cir. 2011) ................................................................................9

*Brantley v. Republic Mortgage Insurance. Co.*,
    424 F.3d 392 (4th Cir. 2005) ..............................................................................12

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006)..............................................................................................8

*Cincinnati Gas & Elec. Co. v Benjamin F. Shaw Co.*
    706 F.2d 155 (6th Circuit 1983) ...........................................................................6

*City of Detroit Police and Fire Retirement System v. GSC CDO Fund Ltd.*
    No. 289185, 2010 WL 1875758 (Mich. App. May 10, 2010)...............15, 16, 17

*Fantastic Sams Franchise Corp.v. FSRO Ass'n Ltd.*,
    683 F.3d 18 (1st Cir. 2012)...................................................................................9

ii

*Grigson v. Creative Artists Agency L.L.C.,*
210 F.3d 524 (5th Cir. 2000) ...............................................................14

*Hergenreder v. Bickford Senior Living Grp., LLC,*
656 F.3d 411 (6th Cir. 2011) ...............................................................15

*Highlands Wellmont Health Network, Inc. v John Deere Health Plan, Inc.*
350 F.3d 568 (6th Cir. 2003) ...............................................................7

*Hoffman v. Deloitte & Touche, LLP,*
143 F.Supp.2d 995 (N.D.Ill. 2001) .....................................................13

*In re Wholesale Grocery Prods Antitrust Litig,*
707 F.3d 917 (8th Cir. 2013) ...............................................................17

*In Re: Refrigerant Compressors Antitrust Litigation,*
MDL Case No. 2:09-md-2042 .............................................................1

*Javitch v. First Union Sec., Inc.,*
315 F.3d 619 (6th Cir. 2003) .........................................................14, 15

*Klopfer v. Queens Gap Mountain, LLC,*
816 F.Supp.2d 281 (W.D.N.C. 2011) ..................................................12

*Kruse v. AFLAC Int'l, Inc.,*
458 F.Supp.2d 375 (E.D.Ky 2006) ......................................................11

*Leff v. Deutsche Bank AG,*
No. 08-CV-733, 2009 WL 4043375(N.D.Ill. 2009) ............................13

*Lowry v. JP Morgan Chase Bank, N.A.*
Supra, Slip Op..........................................................................................15

*Lowry v. JPMorgan Chase Bank, N.A.*
___ Fed.Appx ___, 2013 WL 2500610 (6th Cir. June 11, 2013) .......10

*Mac Tools v. Diaz,*
No. 2:11-CV-940, 2012 WL 1409395 (S.D.Ohio Apr. 23, 2012).......14

*Masco Corp. v. Zurich Am Ins. Co.*
382 F.3d 624,627 (6th Cir. 2004) ........................................................7

iii

*Medicine Shoppe Int'l, Inc. v. Bill's Pills, Inc.*,
   No. 4:12 CV 00158 AGF,2012 WL 1660958 (E.D.Mo. May 11, 2012) ..........10

*Motor Co. v. Ables*,
   207 F. App'x. 443, 2006 WL 3431602 (5th Cir. Nov. 29, 2006).......................13

*MS Dealer Serv. Corp. v. Franklin*,
   177 F.3d 942 (11th Cir. 1999) ...........................................................................12

*Oxford Health Plans LLC v. Sutter*,
   133 S.Ct. 2064 (2013).........................................................................................9

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*,
   259 F.Supp.2d 531 (N.D.Tex. 2003) ..................................................................12

*PRM Energy Sys. Inc. v. Primenergy, L.L.C.*,
   592 F.3d 830 (8th Cir. 2010) ......................................................................16, 17

*Safra Nat'l Bank of New York v. Penfold Inv. Trading, Ltd.*,
   No. 10 Civ. 8255 RWS, 2011 WL 1672467 (S.D.N.Y. April 20, 2011) ..........10

*Simon v. Pfizer Inc.*,
   398 F.3d 765,775 (6th Cir. 2005) .......................................................................7

*Stolt-Nielsen S.A. v. Animalfeeds International Corp.*,
   130 S.Ct. 1758 (2010)..........................................................................................8

## STATUTES

Federal Arbitration Act, 9 U.S.C. § 3 ............................................................passim

Sherman Act, 15 U.S.C. § 1 ....................................................................................1

iv

## STATEMENT OF ISSUES PRESENTED

Should this Court grant the motion of defendants Danfoss A/S,

Danfoss Flensburg GmbH and Danfoss LLC staying the claims by plaintiff

General Electric Company and referring resolution of such claims to arbitration?

Defendants Answer: Yes

v

# STATEMENT OF CONTROLLING OR
## MOST APPROPRIATE AUTHORITIES

## Cases

*Kruse v. Aflac International, Inc.*, 458 F.Supp.2d 375, 383 (E.D.Ky 2006).

*Becker v. Davis*, 491 F.3d 1292, 1303 (11th Cir. 2007).

*Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003).

*City of Detroit Police and Fire Retirement System v. GSC CDO Fund, Ltd.*, 2010 WL 1875758 (Mich. App. 2010).

*Lowry v. JPMorgan Chase Bank,* ___ Fed.Appx ___, 2013 WL 2500610 (6th Cir. June 11, 2013).

*Cincinnati Gas & Electric Co. v Benjamin F. Shaw Co., 706 F.2d 155 (6th Cir .1983)*

*Highland Wellmont Health Network, Inc. v. John Deere Health Plan, 350 F.3d 568 (6th Cir. 2003)*

## Statutes

Federal Arbitration Act, 9 U.S.C. § 3

## PRELIMINARY STATEMENT

Defendants Danfoss A/S, Danfoss Flensburg GmbH, and Danfoss LLC (collectively, "Danfoss") respectfully submit this memorandum in support of their motion, pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, for an order directing that that all claims by plaintiff General Electric Company ("GE") against Danfoss in this action be stayed and adjudicated by arbitration. Under § 3, a Federal court is required to stay litigation where any issue is referable to arbitration pursuant to agreement by the parties.

GE commenced an action against three sets of companies, alleging that these companies engaged in a conspiracy to violate the Sherman Act, 15 U.S.C. § 1, and to make fraudulent misrepresentations in connection with refrigerant compressor sales to GE. This action, commenced in the United States District Court for the Western District of Kentucky, Case No. 3-13-cv-213-H, was transferred to the United States District Court for the Eastern District of Michigan for inclusion in the Multi District Litigation captioned *In Re: Refrigerant Compressors Antitrust Litigation*, MDL Case No. 2:09-md-2042.

GE alleges that the three sets of companies sued herein engaged in the alleged conspiracy from "at least as early as January 1, 1996" to "at least into 2013," Complaint ¶1, (the "conspiracy period") and that "Each delivery of compressors by each supplier was made under a purchase order issued by GE."

1

Complaint ¶141.[1]  A typical GE purchase order issued  by GE to Danfoss during the conspiracy period, or to the alleged co-conspirator defendants, contained a broad "Dispute Resolution" provision that  requires "All disputes, controversies and questions directly or indirectly arising out of or in connection with this [purchase order] or its subject matter ('Disputes') shall be resolved finally and conclusively in accordance with this section, which shall be the sole and exclusive procedure for the resolution of any Dispute."  The "Dispute Resolution" provision goes on to state that "Each party hereby consents to a single, consolidated arbitration proceeding of multiple claims, or claims involving more than the parties."  The entire "Dispute Resolution" provision is reproduced as an Attachment to the Declaration of Anders Stahlschmidt, ("Stahlschmidt Dec."), submitted herewith as Exhibit 2.

This Memorandum is divided into two sections, each demonstrating that GE is required to arbitrate its claims against Danfoss.  In the first section, Danfoss demonstrates that based on GE's allegations that the sales to Danfoss were pursuant to typical GE purchase orders, Danfoss is entitled to have the GE claims determined in an arbitration together with the other suppliers.  In the second

---

[1] GE's Complaint is submitted herewith as Exhibit 1 to this memorandum of law. For purposes of this motion only, Danfoss relies upon the factual allegations by GE in its Complaint, but does not admit any of the GE allegations as to which GE has the burden of proof.

2

section, Danfoss demonstrates that even if the sales by Danfoss to GE were not made pursuant to GE purchase orders, under the doctrine of equitable estoppel Danfoss is entitled to arbitration since the purchase orders to alleged co-conspirator defendants contained arbitration provisions

Because GE's obligation to arbitrate its claims of conspiracy and fraud as against Danfoss arises from the text of its own purchase orders, the few facts relevant to GE's obligation to arbitrate are set out below in Section I of the Argument.

3

## ARGUMENT

**I. DANFOSS IS ENTITLED TO HAVE THE CLAIMS AGAINST IT RESOLVED IN AN ARBITRATION CONSOLIDATED WITH THE ARBITRATION BETWEEN GE AND EMBRACO DEFENDANTS**

### A.    The Parties and their sales to GE

GE instituted this action against three sets of defendants.  It sued three companies in the Danfoss group ("Danfoss") alleging anti-trust violations. According to the GE Complaint, defendant Danfoss A/S is a global company that develops strategies and objectives for the entire Danfoss Group, including defendant Danfoss Flensburg GmbH, which allegedly manufactured and sold refrigerant compressors in the United States and elsewhere, and defendant Danfoss LLC, which allegedly marketed and sold refrigerant compressors in the United States during the alleged conspiracy period.  Both Danfoss Flensburg and Danfoss LLC are alleged to be wholly owned subsidiaries of Danfoss A/S.  Complaint, ¶s 24-34.

GE also sued three companies in the Whirlpool group ("Embraco"); Whirlpool Corporation, Whirlpool S.A., and Embraco North America, Inc., alleging that those companies conspired in violation of the anti-trust laws, and two companies in a group known as ACC: Household Compressors Holdings SpA and ACC USA, LLC, making analogous allegations.

4

Apparently the ACC companies defaulted, and GE is seeking a default judgment from this Court.  The Embraco companies are moving, as are the Danfoss companies, to compel arbitration of all claims against them asserted by GE.

According to the GE complaint, "Danfoss sold refrigerant compressors to GE" in the United States during "each year from 1996 to 1998," ¶33, and Embraco sold refrigerant compressors to GE in the United States "each year from 2002 through 08," ¶22.  GE alleges that "Each delivery of compressors by each supplier was made under a purchase order issued by GE."  Complaint ¶141.  Danfoss understands that all sales by Embraco to GE during the conspiracy period were on GE purchase orders that contain a broad arbitration provision, see Attachment to the Stahlschmidt Dec.  Danfoss does not have the sales records, including any purchase orders, from the 1996-1998 period, see the Stahlschmidt Dec. at ¶¶5-7.  In any event, since GE alleges that it purchased compressors during the conspiracy period pursuant to "a set of standard terms and conditions in its purchase orders," Complaint ¶141, Danfoss believes that its sales to GE would have been on GE purchase orders identical or substantially similar to those under which the Embraco sales were made.

5

**B.     The arbitration provisions of the GE purchase orders**

The arbitration provisions of the GE purchase orders, found at section 32 of the orders and captioned "DISPUTE RESOLUTION", are extensive, elaborate, and broad in scope.  The purchase orders require that:

> All disputes, controversies and questions directly or indirectly arising out of or in connection with this Contract or its subject matter ("Disputes"), shall be resolved finally and conclusively in accordance with this section, which shall be the sole and exclusive procedure for the resolution of any Dispute. [2]

The language of the arbitration clause, drafted by GE, has no exceptions or limitations and similar type language has been characterized by the Sixth Circuit as "extremely broad" and applicable to any and all "disputes" directly or indirectly connected to those agreements or their "subject matter".  See *Cincinnati Gas & Elec. Co. v Benjamin F. Shaw Co.* 706 F.2d 155, 159-160 (6th Circuit 1983).

The "subject matter" here is the sale of refrigerant compressors which GE alleges in the Complaint were subject to conspiracy among the named defendants here, including the Danfoss defendants. "Any doubts regarding

---

[2]     "The validity of this arbitration provision, the conduct of the arbitration" and "any … question of arbitration law or procedure" are to be "governed exclusively by the Federal Arbitration Act."

6

arbitrability must be resolved in favor of arbitration." *Highlands Wellmont Health Network, Inc. v John Deere Health Plan, Inc.* 350 F.3d 568, 573 (6th Cir. 2003).[3]

However, the GE purchase order arbitration provisions relating to "all disputes", although extremely broad, are relatively straight-forward. They go on, however, to also provide that:

> Each party hereby consents to a single, consolidated arbitration proceeding of multiple claims, or claims involving more than the parties.

This provision, which explicitly calls for consolidated arbitrations not only of parties to a purchase order but of "claims involving more than the parties," is highly unusual, and clearly invites group arbitration of multiple claims or claims involving more than the parties to the purchase order. Compare the arbitration provision in the American Express card form merchants' contract, which provides explicitly that "[t]here shall be no right or authority for any Claims to be arbitrated on a class action basis." *American Express Co. v. Italian Colors Restaurant,* 133 S.Ct. 2304, 2308 (2013).

---

[3]   See also *Masco Corp. v. Zurich Am Ins. Co.* 382 F.3d 624,627 (6th Cir. 2004) ("only an express provision excluding a specific dispute . . . will remove the dispute from consideration by the arbitrators").Accord, *Simon v. Pfizer Inc.*, 398 F.3d 765,775 (6th Cir. 2005).

7

### C.   GE consented to a consolidated arbitration including parties who are not signatories to the contract between GE and a particular supplier.

It is incontestable that an arbitration provision as broad as that in the GE purchase orders includes disputes arising under the antitrust laws, without any requirement that a specific reference to such laws be included. *Stolt-Nielsen S.A. v. Animalfeeds International Corp.*, 130 S.Ct. 1758, 1765 (2010). Likewise, any claims of common law fraud or conspiracy[4] are subject to arbitration. *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440 (2006). Since GE affirmatively alleges that each sale of compressors was made under a purchase order issued by GE (complaint ¶ 141) which, as shown by the Embraco defendants in their motion to stay proceedings pending arbitration, contain dispute resolution clauses, there ought to be no question that Danfoss is equally entitled to have its dispute with GE arbitrated. But even if it turns out that there were Danfoss sales to GE not on GE purchase orders, because of the wording of the purchase orders on which the Embraco sales were made, Danfoss is entitled to arbitrate its disputes with GE.

In GE's purchase orders with Embraco, for example, GE consented to a consolidated arbitration with Embraco's alleged co-conspirators of multiple claims, or claims involving more than the parties to the particular purchase order. Thus, all the claims that GE has made against the three groups of companies who

---

[4]      GE's alleged Second and Third causes of action.

8

are defendants herein are subject to resolution through arbitration.[5]  The only

remaining question is whether the GE claims against Embraco, and the GE claims

against Danfoss, ought to be arbitrated together.  But as a unanimous Supreme

Court has made clear in *Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2068

(2013), that procedural determination is to be made by the arbitrator, and not by a

Court, and is subject to the same extremely limited judicial review accorded all

other non-gateway aspects of an arbitration under the Federal Arbitration Act.

Thus while GE consented in its purchase orders to a single

consolidated arbitration under *Oxford HealthPlans, supra*, it is for the arbitrator to

determine whether a single consolidated arbitration, or some other form or

proceeding, will best serve the interests of the parties.[6]  In this regard, it should be

noted that whatever the controversy over contractual bars to class arbitrations,

which divided the Supreme Court in the *Italian Colors* case, *supra*, there is virtual

unanimity that matters of joinder or consolidation are for the arbitrator, even in the

---

[5]      The consent required is that of the party opposing a consolidated or class
arbitration, not of all parties.  "[a] party may not be compelled under the FAA to
submit to class arbitration unless is a contractual basis for concluding that **the
party** agreed to do so." *Stolt-Neilsen*, *supra* at 1775, emphasis added.

[6]      For an instructive analysis of why a consolidated arbitration is far less
destructive of the arbitration process than a class arbitration, addressing a concern
of the *Stolt-Neilsen* majority, see *Anwar v.Fairfield Greenwich Ltd.,* 728 F.Supp.2d
462, 477 (S.D.N.Y. 2010).  See also *Fantastic Sams Franchise Corp.v. FSRO
Ass'n Ltd.*, 683 F.3d 18, 25 (1st Cir. 2012), quoting from *Blue Cross Blue Shield of
Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 649 (7th Cir. 2011)("consolidation of
the [parties] claims would not change the fundamental nature of arbitration."

absence of the explicit consent to consolidated arbitration present here.  *Safra Nat'l Bank of New York v. Penfold Inv. Trading, Ltd.*, No. 10 Civ. 8255 RWS, 2011 WL 1672467 (S.D.N.Y. April 20, 2011), and the cases cited therein at *3.  See also *Medicine Shoppe Int'l, Inc. v. Bill's Pills, Inc.*, No. 4:12 CV 00158 AGF,2012 WL 1660958 (E.D.Mo. May 11, 2012), emphasizing that the arbitrator is to decide whether similar claims presented by individuals claiming similar but not identical grievances should have the claims heard together, despite a clause in the agreements that "the arbitration shall be conducted on an individual, not a class-wide basis."

In fact, the Sixth Circuit has gone as far as any American court to affirm the arbitrator's power to decide whether to consolidate individual disputes in a single arbitration, as well as whether to permit class arbitrations. In *Lowry v. JPMorgan Chase Bank, N.A.* ___ Fed.Appx ___, 2013 WL 2500610 at *2 (6th Cir. June 11, 2013), a purchaser entered into a loan agreement with Chase to buy a car. The agreement contained an arbitration clause that contained a bar both on class arbitration and on "any consolidation of individual arbitrations".  Despite the "unambiguous class-action waiver" the Court pointed to the provision of the contract that vested in the arbitrator the authority to decide "the arbitrability of the claim or dispute", and thus held that the dispute regarding the arbitrability of the buyer's class claims was for the arbitrator.  Where, as in the present case, there is

10

explicit consent to consolidated arbitration, the methodology of any particular

arbitration involving more than one claim, or more than the parties to the particular

purchase order, is to be determined by the arbitrator.

**II.    EVEN IF DANFOSS SALES TO GE WERE NOT ON GE PURCHASE ORDERS, GE IS EQUITABLY ESTOPPED FROM AVOIDING ITS OBLIGATION TO ARBITRATE ITS DISPUTE WITH DANFOSS**

> **A.    If a signatory to an agreement containing an arbitration clause accuses another signatory and a non-signatory of conspiracy, the non-signatory may compel arbitration of the claim against it.**

A plethora of Federal courts have held that where a signatory to an

arbitration agreement sues for damages allegedly arising out of a conspiracy or

other concerted misconduct between another signatory to the agreement and a non-

signatory, the non-signatory can compel the suing party to adjudicate its claims in

arbitration.  In the view of these courts, the signatory's accusation of conspiracy is

enough to enable a non-signatory to compel its alleged liability to be arbitrated.

The controlling rule was concisely set out by a District Court within

the Sixth Circuit:  "Where a party alleges that a non signatory engaged in a

conspiracy with a signatory, the non signatory may compel arbitration." *Kruse v.

AFLAC Int'l, Inc.*, 458 F.Supp.2d 375, 383 (E.D.Ky 2006).

The doctrine was enunciated somewhat more expansively in the

seminal case in the area, a 1999 decision of the Eleventh Circuit:"'[A]pplication of

equitable estoppel is warranted … when the signatory to the contract containing

11

the arbitration clause raises allegations of …substantially interdependent and concerted misconduct by both the non signatory and one or more of the signatories to the contract.'  Otherwise, 'the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'"  *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)(internal citations omitted).  The same court recently reiterated the point in a somewhat more pithy manner; "The defendants argue that since the complaint alleges a conspiracy between signatory defendants and nonsignatory defendants, equitable estoppel allows a nonsignatory defendant to compel arbitration.  We agree."  *Becker v. Davis*, 491 F.3d 1292, 1303 (11th Cir. 2007).

   The language of the first quoted sentence from *MS Dealer Serv. Corp.* was also adopted by the Fourth Circuit in *Brantley v. Republic Mortgage Insurance. Co.*, 424 F.3d 392, 396 (4th Cir. 2005), and applied upon allegations simply of concerted misconduct, without  allegations that the conduct was "substantially interdependent," in *Klopfer v. Queens Gap Mountain, LLC*, 816 F.Supp.2d 281, 294 (W.D.N.C. 2011).  See also *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 259 F.Supp.2d 531, 540 (N.D.Tex. 2003), granting the non-signatories' motion to compel arbitration where the signatory sought damages for civil conspiracy based on the "interdependent and concerted misconduct" of the

12

non-signatories with a signatory.  See also  *Hoffman v. Deloitte & Touche, LLP*,

143 F.Supp.2d 995, 1005 (N.D.Ill. 2001), quoting the "concerted misconduct"

sentence from  *MS Dealer Service Corp. v. Franklin*, *supra*, and *Leff v. Deutsche

Bank AG*, No. 08-CV-733, 2009 WL 4043375, *3(N.D.Ill. 2009), explicitly

following *Hoffman*.

The same rule has been phrased in slightly different ways by other

courts.  For example, in Ford *Motor Co. v. Ables*, 207 F. App'x. 443, 448, 2006

WL 3431602 (5th Cir. Nov. 29, 2006), the court held that allegations that

signatories and non-signatories "intentionally, willfully, maliciously and tortuously

conspired between themselves and with others to unlawfully injure [signatory]

plaintiffs" allows the non-signatory defendants to compel the plaintiffs to arbitrate

their claims.  A District Court in the same circuit wrote: "Arrington's complaint

[by way of counterclaim] raises allegations of civil conspiracy and other concerted

wrongdoing among signatory Tico and the non-signatory plaintiffs herein, and the

Fifth Circuit has upheld the right of non-signatories to enforce arbitration

agreements under such circumstances."  *American Reliable Ins. Co. v. Arrington*,

269 F.Supp.2d 758, 762 (S.D. Miss. 2003).

**B.    Sixth Circuit and Michigan case law support the application of equitable estoppel to a motion to compel arbitration by a non-signatory accused of conspiracy.**

The Sixth Circuit has not written on the precise question of whether an allegation of conspiracy between signatories and non-signatories is itself sufficient to enable a non-signatory to compel arbitration. In the inverse situation, the Sixth Circuit has held that non-signatories may be compelled to arbitrate a claim <u>by</u> a signatory "under ordinary contract and agency principles." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). One of those principles is estoppel, *Id.,* and in the cited case a denial by the District Court of a motion by a signatory to compel a non-signatory to arbitrate on the ground of estoppel was reversed and remanded for consideration of the facts alleged to support estoppel. See also *Mac Tools v. Diaz*, No. 2:11-CV-940, 2012 WL 1409395, *4-5 (S.D.Ohio Apr. 23, 2012), requiring a non-signatory to arbitrate her affirmative claim arising under a contract, containing an arbitration clause and signed by her husband, under which her husband and she claimed damages.

If it is fair and appropriate to compel a non-signatory to participate in an arbitration on an estoppel theory, surely it is fair and appropriate to compel a signatory to litigate its entire claim against signatories and non-signatories alike when it is the signatory who has brought the litigation against the non-signatory. See, e.g., *Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 528 (5th Cir.

14

2000): "[I]t would be especially inequitable [to deny arbitration] where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant."

To the extent that Michigan law exists in this area, it favors compelling GE to arbitrate with Danfoss.[7]  In *City of Detroit Police and Fire Retirement System v. GSC CDO Fund Ltd.* No. 289185, 2010 WL 1875758 (Mich. App. May 10, 2010), the Court applied equitable estoppel to compel a signatory to arbitrate with a non-signatory, which is the instant situation and the inverse of *Javitch.*  Quoting from *MS Dealer Service Corp. supra*, the Court held that claims by a signatory plaintiff against individuals accused of engaging in "concerted misconduct" with a signatory defendant were sufficiently intertwined to require the

_____

[7] "Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation."  *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011).  If the Court elects to apply New York law, it similarly supports application of equitable estoppel in favor of a non-signatory such as Danfoss.  See, e.g., *Gov't Emps. Ins. Co. v. Grand Med. Supply, Inc. 2012 U.S. Dist. Lexis 92 469,* * 9-12 (E.D.N.Y. 2012) and the New York and federal cases cited therein.  This result is particularly appropriate where, as here, the signatory not only drafted the arbitration clause but affirmatively consented to arbitrate "all disputes" in a "single consolidated arbitration of multiple claims or claims involving more than the parties" to the agreement.  Moreover, since GE agreed "that all disputes"; including the "validity of this arbitration provision" are to be governed exclusively by the Federal Arbitration Act, this court may defer to the arbitrator to determine arbitrability under applicable state law as between a signatory and a non-signatory.  See, e.g., *Lowry v. JP Morgan Chase Bank, N.A. Supra*, Slip Op at 4.

plaintiff to arbitrate against all the defendants.  Because all defendants, both signatories and non-signatories, were accused of failing to disclose the risks associated with a set of investments, the Court held it "equitable to require plaintiff to arbitrate all its claims".  2010 WL 1875758, at *7.  Especially since Danfoss in the instant case under applicable law may be jointly and severally liable for GE's damages, whether or not Danfoss was a party to any particular purchase contract, the intertwining between sales from all the alleged conspirators to GE is closely analogous to that found by the Michigan Court of Appeals.

      **C.**    **To the extent that a minority of courts requires allegations of "intertwining" between alleged conspirators, such a requirement is more than met in the instant case.**

      Some courts have held that in order for a non-signatory accused of conspiracy to force a signatory into arbitration, the conspiracy must be "so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of the same agreement."  *PRM Energy Sys. Inc. v. Primenergy, L.L.C.,* 592 F.3d 830, 835 (8th Cir. 2010). That burden, which has never been adopted by a court in the Sixth Circuit, was met in the *PRM* case where the plaintiff and one defendant had entered into a contract, containing an arbitration agreement, regulating sublicensing, and the defendant had allegedly violated that contract by entering into a sublicensing agreement with a

16

second defendant.  The sublicensing agreement did not contain an arbitration provision.  Plaintiff sued both defendants, and the second defendant sought to compel arbitration.  The Eighth Circuit granted the motion to compel.

However, in a subsequent case, the Eight Circuit denied a motion to compel arbitration by defendant accused of antitrust conspiracy where the plaintiff had entered into contracts, which contained arbitration provisions, with other defendants, but had no contractual or business relation with the alleged conspirator who sought to compel arbitration.  *In re Wholesale Grocery Prods Antitrust Litig*, 707 F.3d 917, 924 (8th Cir. 2013).   Whether or not the Eighth Circuit approach is even applicable here or would even be followed by the Sixth Circuit, the facts of the instant case, in which Danfoss sold products to GE with which it had a specific commercial relationship within the alleged conspiracy period, allegedly under contracts the terms of which were arrived at (according to GE) via an antitrust conspiracy, would auger strongly for following the result in *PRM*, and *Detroit Retirement System*, and not the result in *Wholesale Grocery.*

In sum, the hallmark of jurisprudence when arbitration has been contractually selected to resolve disputes is that the Courts must follow the agreement of the parties.  As recently and repeatedly stated by the Supreme Court, the Federal Arbitration Act was designed to promote arbitration and embodies a liberal Federal policy favoring enforcement of the terms agreed by the parties to

17

the arbitration provision.  *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740,

1749 (2011).  Where, as here, the allegations are of interdependent and concerted

misconduct, courts applying such liberal Federal policy have held that arbitration

agreements are enforceable by non-signatories under section 3 of the Federal

Arbitration Act.  See, e.g., *Arthur Anderson LLP v. Carlisle,* 556 U.S. 624 (2009).

Here, since GE agreed to arbitrate its disputes with its suppliers, its

claims in this litigation should be stayed. Because GE further agreed to a

consolidated arbitration, it would be appropriate for this Court to order that the GE

claims against the Danfoss and Embraco companies be referred to arbitration,

leaving to the arbitration panel whether full consolidation and unitary

consideration of all issues ought to occur.

## CONCLUSION

For the reasons stated herein, Danfoss' motion for a stay pending

resolution by arbitration of all claims against Danfoss as set forth in the GE

complaint should be granted.

Dated:  August 16, 2013          By:   s/ Lawrence Kill
                                       ANDERSON KILL & OLICK, P.C.
                                       LAWRENCE KILL
                                       JEFFREY E. GLEN
                                       1251 Avenue of the Americas
                                       New York, NY 10020
                                       Telephone:  212-278-1000
                                       Fax:  212-278-1733
                                       Email:  lkill@andersonkill.com

18

By:___s/ John W. Allen_____
VARNUM LLP
JOHN W. ALLEN (P10120)
251 North Rose Street, 4th Floor
Kalamazoo, MI 49007
Telephone:  269-553-3501
Fax:  269-382-2382
Email:  jwallen@varnumlaw.com

*Attorneys for Defendants Danfoss A/S,
Danfoss Flensburg GmbH and Danfoss LLC,*

19

# CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2013, I caused to be electronically filed the foregoing document(s) with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record registered to receive electronic filings.

Dated:  August 16, 2013      By:    _____ */s/ John W. Allen* _____

                          John W. Allen (P10120)