# EXHIBIT B

LEXSEE



Positive
As of: Nov 05, 2013

ENGINEERING & MANUFACTURING SERVICES, LLC, Plaintiff -Appellant, v.
CHESTER J. ASHTON; JOHN MCKENNA; DOUGLAS G. VESELSKY,
Defendants-Appellees.

No. 09-3090

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

10a0442n.06; 387 Fed. Appx. 575; 2010 U.S. App. LEXIS 14978; 2010 FED App.
0442N (6th Cir.)

July 21, 2010, Filed

**NOTICE:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** [**1]
ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.
Eng'g & Mfg. Servs., LLC v. Ashton, 2008 U.S. Dist. LEXIS 90018 (N.D. Ohio, Aug. 12, 2008)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff manufacturer filed a 42 U.S.C.S. § 1983 action, alleging that the affidavit in support of the search warrant pursuant to which defendant fire department officers conducted a wall-to-wall administrative search of the manufacturer's plant failed to present facts sufficient to constitute probable cause. The United States District Court for the Northern District of Ohio granted the officers summary judgment. The manufacturer appealed.

**OVERVIEW:** The manufacturer alleged that the officers' actions were deliberate and intentional violations of its clearly established rights under the Fourth and Fourteenth Amendments. The court found that the district court abused its discretion by sua sponte striking the manufacturer's brief in opposition to the officers' summary judgment motion because the manufacturer established excusable neglect, under Fed. R. Civ. P. 6(b), because the late filings did not prejudice the officers, the length of the delay had no apparent impact on the proceedings, and the manufacturer acted in good faith throughout the proceedings. It was an abuse of discretion to deny the manufacturer's motion for leave to file a sur-reply brief. The officers' search warrant was not supported by administrative probable cause because an annual interior inspection plan was not derived from neutral sources because the fire department actually inspected only a fraction of the commercial establishments annually, and the plan had human input and components. The officers were not entitled to summary judgment on qualified immunity grounds because there were disputed factual issues underlying probable cause.

387 Fed. Appx. 575, *; 2010 U.S. App. LEXIS 14978, **1;
2010 FED App. 0442N (6th Cir.)

**OUTCOME:** The grant of summary judgment to the officers was reversed. The matter was remanded for further proceedings.

**CORE TERMS:** summary judgment, inspection, probable cause, reply brief, inspect, annual, instanter, leave to file, qualified immunity, ordinance, sur-reply, battalion, inspected, search warrant, abused, hazardous, reconsideration, industrial, dangerous conditions, firefighters, partial, struck, notice, water-based, annually, excusable neglect, legal standard, good faith, establishment, prejudiced

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > Extensions*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Civil Procedure > Discovery > General Overview*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN1]Matters of docket control and discovery are within the sound discretion of a district court. When a party fails to meet a deadline, the district court should determine if such failure was the result of excusable neglect, Fed. R. Civ. P. 6(b), and review of that determination is for abuse of discretion. Such abuse exists if the district court relied on erroneous findings of fact, applied the wrong legal standard, misapplied the correct legal standard when reaching a conclusion, or made a clear error of judgment. The governing legal standard for excusable-neglect determinations is a balancing of five principal factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN2]An abuse of discretion exists if a district court applied the wrong legal standard.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
[HN3]When new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated, a problem arises with respect to Fed. R. Civ. P. 56(c). Rule 56(c) requires that an adverse party receive ten days notice before a district court may enter summary judgment. Fed. R. Civ. P. 56(c). The purpose of Rule 56(c) is to afford the nonmoving party notice and a reasonable opportunity to respond to the moving party's summary judgment motion and supporting evidence. Summary judgment is to be entered only if the nonmovant is on notice that it must come forward with all of its evidence. It is only logical that the purposes of notice and opportunity to respond extend Rule 56(c) to the situation where the moving party submits in a reply brief new reasons and evidence in support of its motion for summary judgment, and require a district court to allow the nonmoving party an opportunity to respond. This is particularly true when the district court relies on the new evidentiary submissions.

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN4]An appellate court reviews a district court's grant of summary judgment de novo.

*Administrative Law > Agency Investigations > Scope > Inspections*
*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Probable Cause*
*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Warrants*
*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Administrative Searches*
[HN5]Statutes such as Cleveland, Ohio, Municipal Code § 381.04 have been held unconstitutional unless construed to require a search warrant supported by administrative probable cause. Administrative inspections are significant intrusions on Fourth Amendment rights for which warrants generally are required, and probable cause exists in this context if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. The decision to enter and inspect will not be the

Page 2

2:09-md-02042-SFC   Doc # 440-3   Filed 11/05/13   Pg 4 of 12   Pg ID 10760

387 Fed. Appx. 575, *; 2010 U.S. App. LEXIS 14978, **1;
2010 FED App. 0442N (6th Cir.)

product of the unreviewed discretion of the enforcement officer in the field.

*Administrative Law > Agency Investigations > Scope > Inspections*
*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Probable Cause*
*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Warrants*
*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Administrative Searches*
*Labor & Employment Law > Occupational Safety & Health > Administrative Proceedings > Citations & Inspections*

[HN6]Administrative probable cause requires a neutral administrative or legislative plan. Warrants are required for administrative inspections under the Occupational Safety and Health Act (OSHA). Probable cause justifying the issuance of a warrant for administrative purposes may be based either on specific evidence of an existing violation or on a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to a particular establishment. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources would protect an employer's Fourth Amendment rights. Because administrative and legislative guidelines ensure that employers selected for inspection pursuant to neutral administrative plans have not been chosen simply for the purpose of harassment, courts have held that administrative plan searches may properly extend to the entire workplace. A permissible administrative plan relies on either random selection or selection by relevant statistics that have no individual human component for the reason that searches flowing from these types of plans could not be the product of an agency's arbitrary decision.

*Civil Rights Law > Immunity From Liability > Local Officials > Individual Capacity*
*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Warrants*

[HN7]In 42 U.S.C.S. § 1983 actions, an officer ordinarily receives qualified immunity if he relies on a judicially secured warrant. When no facts are in dispute, whether an official is entitled to qualified immunity is a question of law. However, if disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts. Similarly with qualified immunity, a court can submit to the jury the factual dispute with an appropriate instruction to find probable cause and qualified immunity if the factual inquiry is answered one way and to find probable cause and qualified immunity lacking if the inquiry is answered in another way. However, the jury does not decide whether the facts it has found are legally sufficient to amount to probable cause or entitlement to qualified immunity.

**COUNSEL:** For ENGINEERING & MANUFACTURING SERVICES, LLC, Plaintiff - Appellant: Orville Edward Stifel, II, Attorney General, Law Office, Cleveland, OH; Stephen William Gard, Cleveland, OH.

For CHESTER J. ASHTON, JOHN MCKENNA, DOUGLAS G. VESELSKY, Defendant - Appellees: Kevin J. Gibbons, City of Cleveland, Department of Law, Cleveland, OH.

**JUDGES:** BEFORE: BATCHELDER, Chief Judge, and WHITE, Circuit Judge, and GREER [*], District Judge.

> [*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

**OPINION BY:** HELENE N. WHITE

**OPINION**

[*577] **HELENE N. WHITE, Circuit Judge.** Plaintiff Engineering & Manufacturing Services, L.L.C. (EMS), appeals the denial of its motion for partial summary judgment and the grant of summary judgment to defendants in this 42 U.S.C. § 1983 action arising from a wall-to-wall administrative search of EMS's plant. The issue is whether defendants' search warrant was supported by administrative probable cause. We conclude that it was not, and therefore REVERSE the grant of summary judgment to defendants, and REMAND for further proceedings consistent with this opinion.

**I. FACTS** [**2] **and PROCEDURAL HISTORY**

EMS manufactures sheet metal parts for the automotive after-market in a 42,000 square foot building located at 1120 East 152nd Street in Cleveland. Defendants are high-ranking Cleveland Fire Department

2:09-md-02042-SFC Doc # 440-3 Filed 11/05/13 Pg 5 of 12 Pg ID 10761

387 Fed. Appx. 575, *577; 2010 U.S. App. LEXIS 14978, **2;
2010 FED App. 0442N (6th Cir.)

officers: Chester J. Ashton is a Captain and a Battalion Chief, John McKenna a Captain and Deputy Fire Marshall, and Douglas G. Veselsky a Lieutenant and Chief Fire Inspector. Defendants are sued in their individual and official capacities.

EMS's complaint alleged that the affidavit in support of the search warrant pursuant to which defendants conducted the February 22, 2007 search of EMS's plant failed to present facts sufficient to constitute probable cause, and contained material, intentional and reckless falsehoods. EMS alleged that defendants' actions were deliberate and intentional violations of EMS's clearly established rights under the Fourth and Fourteenth Amendments.

**A.**

Ashton's notarized affidavit in support of the search warrant stated:

> 1. [] I am chief of the battalion that is closest to the property at 1124 East 152nd 1 Street and my firefighters would be responsible for responding to a fire at this address if one were to occur.
>
> 2. Cleveland Codified Ordinance [**3] § 381.04 gives the right of entry to the Fire Chief or his authorized representatives during reasonable hours . . . "to examine and inspect for hazardous or dangerous conditions, equipment, materials, liquids, gases or accumulations; obstructions to or on fire escapes and other means of egress; and for the maintenance of fire protection equipment."
>
> 3. As part of my duties, I (with my local firefighters) conduct annual inspections of industrial sites to "get to know the property" the [*sic*] make certain there are no hazardous or dangerous conditions inside that would pose a threat to firefighters in the event of a fire.
>
> 4. On November 29, 2006 and December 22, 2006, I along with local firefighters, went to the premises located at 1124 East 152nd Street to conduct our annual interior inspection of the premises to determine if there are any hazardous or dangerous conditions in case there is a need to fight a fire at this large industrial building in the future. We were denied [*578] access to the premises on both occasions by the owner, Alexander Erdey.
>
> . . . .
>
> 6. Based on my experience as a Battalion Chief and the foregoing facts, I believe it is likely that the conditions of the interior of the [**4] premises known as 1124 East 152nd Street, are in violation of the City's Fire Code, and are or may become hazardous to the public health, safety or welfare.

1   EMS's actual address is 1120 East 152nd Street.

**B. EMS's Motion for Partial Summary Judgment on Liability**

Before discovery began, EMS filed a motion for summary judgment on the issue of liability, asserting that the warrant application did not allege specific evidence of an existing fire-code violation; Chief Ashton's conclusory belief that unspecified code violations existed in EMS's building, without supporting facts, did not demonstrate administrative probable cause; and the warrant application did not permit the magistrate to find that the inspection was based on reasonable legislative or administrative standards, i.e., neutral criteria.

Defendants opposed EMS's motion, submitting with their opposition brief several documents not submitted to the issuing magistrate with the warrant application, including two affidavits and Cleveland Ordinance § 381.04. EMS moved to strike the exhibits defendants had not supplied to the magistrate. The district court overruled EMS's motion to strike, but did not consider the challenged exhibits, [**5] noting that it determined probable cause with reference to Ashton's affidavit alone.

**C.**

The district court concluded that Ashton's affidavit provided probable cause for the administrative warrant and denied EMS's motion for partial summary judgment:

Page 4

2:09-md-02042-SFC Doc # 440-3 Filed 11/05/13 Pg 6 of 12 Pg ID 10762

387 Fed. Appx. 575, *578; 2010 U.S. App. LEXIS 14978, **5;
2010 FED App. 0442N (6th Cir.)

[] The affidavit Judge Pianka reviewed provides the identity and qualifications of the affiant. Chester Ashton is the chief of the battalion closest to the industrial premises; and the firefighters he supervises would "be responsible for responding to a fire at this address if one were to occur." Reference is made to Cleveland Codified Ordinance § 381.04, [2] authorizing the Fire Chief or his representatives to enter during reasonable hours "to examine and inspect for hazardous or dangerous conditions. . ." In addition, paragraphs #3 and #4 mention the Fire Department's annual inspections of industrial sites, to "get to know the property" and "make certain there are no hazardous or dangerous conditions inside that would pose a threat to firefighters in the event of a fire." Considering the totality of the circumstances, therefore, probable cause for the administrative warrant existed: 1) Battalion Chief Ashton was competent to make the sworn [**6] declarations in the search warrant application; 2) a valid city ordinance authorized an administrative search, such as the one conducted here; and 3) annual inspections of industrial premises for fire safety concerns [*579] are reasonable and neutral. [R. 15, 4-6.]

2 Ordinance 381.04 provides in pertinent part:

> (a) The Fire Chief or his authorized representatives upon presentation of proper credentials, may enter any building or premises at all reasonable hours or at such times as may be necessary in an existing emergency to examine and inspect for hazardous or dangerous conditions . . . and for the maintenance of fire protection equipment. No person shall prevent, obstruct or delay any inspection or the performance of any lawful duty of a fireman acting within his official capacity. [R. 7-12.]

### D. Defendants' Motion for Summary Judgment

Defendants filed a motion for summary judgment on April 28, 2008, asserting that because EMS's complaint raised no issue other than the validity of the warrant, and the district court had ruled the warrant was supported by probable cause, they were entitled to summary judgment.

EMS filed a motion for leave to file its opposition brief *instanter* on May 29, 2008, [**7] one day after the May 28 deadline set by the district court's briefing schedule. [3] Defendants did not object and the district court granted EMS's motion by a non-document order entered on May 30, 2008.

> 3 EMS's motion explained that the opposition brief was completed the day prior, but that in converting the document to pdf format for electronic filing with the district court, the document was lost, and counsel's outside computer consultant was unable to address the problem until the following morning. [R. 21.]

EMS's brief in opposition to defendants' motion argued that the warrant was not based on administrative probable cause (EMS had argued this in its own summary judgment motion); that the evidence established that the selection of buildings to be inspected and decisions on how often to inspect were left to the discretion of Fire Department officials; and that the search-warrant application failed to include a copy of a "neutral" inspection plan and failed to make any showing regarding how the EMS search fit the plan's neutral selection criteria.

Defendants filed a Reply brief to EMS's opposition brief on June 9, 2008. Citing Cleveland Ordinance § 381.04, *see* n.2, and Order 7-5, [4] defendants [**8] asserted that Cleveland's inspection plan was constitutional and that EMS was selected for an annual inspection pursuant to a neutral administrative plan. Defendants argued that Captain Otto sent monthly inspection sheets to the Battalions for buildings with water-based systems, and that EMS appeared on the Battalion Six list in 2006, 2007 and again in 2008. They further argued that Otto maintains lists of buildings to be

Page 5

2:09-md-02042-SFC   Doc # 440-3   Filed 11/05/13   Pg 7 of 12   Pg ID 10763

387 Fed. Appx. 575, *579; 2010 U.S. App. LEXIS 14978, **8;
2010 FED App. 0442N (6th Cir.)

inspected and that

> [t]he goal is that by the end of the year each building utilizing a water-based fire suppression system will have been inspected. Each year -- every building on the water-based list [such as Plaintiff's] is selected for inspection. Even if this Court should determine that the City's current plan give [*sic*] fire inspectors too much discretion[,] the solution . . . is to require a warrant. [R. 22, p. 13-14.]

Defendants' reply brief and several exhibits attached thereto included data not provided to plaintiff in discovery. Defendants also submitted for the first time an affidavit [*580] of Fire Marshall Scott, which stated that in 2007, the Fire Division conducted inspections at 8,449 of the 15,515 addresses on file, and that the Division "does not claim to [**9] inspect every address, every year--but this is the goal we strive to achieve."

> 4   Fire Division General Order 7-5, dated May 31, 2000, states in pertinent part:
>
>> Due to [] an increasing number of building inspections required by Federal, State and local legislation, the Cleveland Fire Prevention Bureau cannot inspect all existing buildings. All fire companies, therefore, shall assume the responsibility of building inspections and refer unabated violations to the Fire Prevention Bureau for follow-up.
>>
>> 1. Each shift of each company shall conduct inspections from a list that will be distributed monthly by the Fire Prevention Bureau . . . .
>>
>> 2. Shift Battalion Chiefs shall coordinate and attend one Major Inspection monthly . . . . Battalion Chiefs will also be forwarded monthly inspection lists, from the Fire Prevention Bureau, which will include facilities with water-based protection systems . . .
>>
>> <u>Note</u>: It is the goal of the Division of Fire that *all* facilities with water-based fire protection systems be inspected annually. [R. 7-3.]

On June 11, 2008, EMS filed a motion seeking leave, until June 23, 2008, to respond to new data, a new affidavit and new arguments and theories defendants presented [**10] for the first time in their Summary Judgment Reply Brief. Defendants opposed the motion.

On June 16, 2008, court staff telephoned and advised EMS's counsel to re-file EMS's brief in opposition to defendants' summary judgment motion (i.e., advised that the brief had to be filed *after* the district court granted EMS leave to file the brief *instanter*). EMS's counsel re-filed the brief that day.

EMS filed its sur-reply brief on June 23, 2008 -- at which time the district court had not ruled on its June 11 motion for leave to file a sur-reply brief. Defendants did not object and, on July 8, 2008, defendants moved for leave to respond to EMS's sur-reply, attaching their response.

**E. District Court Strikes EMS's Brief in Opposition to Summary Judgment and Denies EMS's Motion for Leave to file Sur-Reply Brief**

On July 15, 2008, the district court entered an order striking EMS's brief in opposition to defendants' summary judgment motion as untimely, denying EMS's motion for leave to respond to defendants' reply brief, and denying as moot defendants' motion for leave to reply to plaintiff's sur-reply brief.

On July 16, 2008, EMS moved for reconsideration and requested a hearing, stating in pertinent [**11] part:

> Counsel's understanding of an order granting a motion for leave to file an "accompanying brief," is that the brief accompanying the motion is deemed to have been filed "instanter" (*i.e.*, "immediately, forthwith, without delay") at the moment the order is entered. Counsel was unaware that a brief already submitted electronically, and already part of the court's electronic files, had to be submitted again, after the motion for leave was granted [on May 30, 2008].

Page 6

2:09-md-02042-SFC   Doc # 440-3   Filed 11/05/13   Pg 8 of 12   Pg ID 10764

387 Fed. Appx. 575, *580; 2010 U.S. App. LEXIS 14978, **11;
2010 FED App. 0442N (6th Cir.)

On June 16, 2008, undersigned counsel received a telephone call from the Magistrate's chambers instructing counsel to re-file the Brief in Opposition. This was the first counsel was made aware of the need to file the document a second time. Counsel promptly complied with that directive, and re-submitted the document within the hour.

Counsel sincerely apologizes for any misunderstanding regarding "instanter" procedure in this Court. . . However, this technical *faux pas* did not cause any prejudice. It did not prejudice Defendants since the Opposition Brief was timely served on their counsel on May 29, 2008 (via the Court's electronic filing system), and defendants had no difficulty filing their Reply Brief by its original deadline. [**12] Nor did it delay this case in any material way.

\* \* \*

In a footnote, counsel stated:
> "Instanter procedure" in the courts of the State of Ohio consists of submitting the signed, original copy of the out-of-rule brief, along with a motion for leave to file instanter. If the motion for leave is granted, the signed original is deemed filed as of that moment.

Defendants opposed EMS's motion for reconsideration.

[*581] The district court denied EMS's motion for reconsideration, noting that its order granting plaintiff leave to file the brief *instanter* "did not deem the brief filed."

**F. District Court Grants Defendants Summary Judgment, ruling on Motion as Unopposed**

The district court proceeded to rule on defendants' summary judgment motion as unopposed, and granted defendants summary judgment. Its opinion states:
> Plaintiff moved for an order granting EMS summary judgment on liability. However, the Court denied Plaintiff's motion, and held EMS' constitutional rights under the Fourth and Fourteenth Amendments were not violated because probable cause for the warrant to inspect the EMS premises existed. Since Plaintiff's Complaint pleads no claim other than the validity of the administrative search warrant, [**13] and since the Court held there was no constitutional violation in the issuance and execution of the search warrant, Defendants . . . are entitled to summary judgment in their favor. [R. 34.]

EMS timely appealed.

**II.**

EMS argues on appeal that 1) the district court abused its discretion by striking its brief in opposition to defendants' summary judgment motion; 2) the court erred in granting defendants summary judgment where the search warrant was fatally deficient, the Fire Department's administrative inspection plan involved discretionary selection, and the search violated clearly established law; 3) the brief and evidentiary submissions the district court struck established genuine factual issues that precluded summary judgment; 4) the court abused its discretion in denying EMS leave to file a sur-reply brief where defendants' reply brief presented new arguments and new data not provided to EMS in discovery; and 5) the court erred in denying EMS partial summary judgment.

**1**

We first address EMS's argument that the district court abused its discretion by *sua sponte* striking EMS's brief in opposition to defendants' summary judgment motion and dismissing its complaint on the ground that defendants' [**14] motion for summary judgment was "unopposed."

EMS contends that this court reviews a *dismissal of a complaint* for a non-moving party's failure to respond to a motion within the applicable time limit as a dismissal for failure to prosecute under Fed. R. Civ. P. 41(b), a harsh sanction that should be ordered only in extreme situations

2:09-md-02042-SFC   Doc # 440-3   Filed 11/05/13   Pg 9 of 12   Pg ID 10765

387 Fed. Appx. 575, *581; 2010 U.S. App. LEXIS 14978, **14;
2010 FED App. 0442N (6th Cir.)

showing a clear record of delay or contumacious conduct by the non-movant. EMS maintains that the district court failed to consider the four factors necessary to support a Rule 41(b) involuntary dismissal as set forth in *Stough v. Maryville Cmty. Sch.*, 138 F.3d 612, 614-15 (6th Cir. 1998).

Defendants maintain that *Stough* does not apply, asserting that the district court did not *dismiss EMS's complaint* under Fed. R. Civ. P. 41(b), but rather, first struck EMS's opposition brief as untimely, and granted defendants summary judgment "based in large part on its prior holding that the administrative warrant in question was based upon probable cause." Defendants assert that, having granted their motion, the district court dismissed EMS's case under Fed. R. Civ. P. 58. This court's review of the order striking EMS's reply brief, they argue, is of the district court's [**15] determination regarding excusable neglect.

a

We agree with defendants that excusable neglect is the appropriate standard [*582] given the procedural posture of this case. [HN1]Matters of docket control and discovery are within the sound discretion of the district court. *Jones v. Northcoast Behavioral Healthcare Sys.*, 84 F. App'x 597, 599 (6th Cir. 2003); *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996). When a party fails to meet a deadline, the district court should determine if such failure was the result of excusable neglect, Fed. R. Civ. P. 6(b), and review of that determination is for abuse of discretion. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006).

Such abuse exists if the district court "relie[d] on erroneous findings of fact, applie[d] the wrong legal standard, misapplie[d] the correct legal standard when reaching a conclusion, or ma[de] a clear error of judgment." *Reeb v. Ohio Dep't of Rehab. and Corr.*, 435 F.3d 639, 644 (6th Cir. 2006). Here, the governing legal standard for excusable-neglect determinations is a balancing of five principal factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact [**16] on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith. See *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 [] (1993).

*Nafziger*, 467 F.3d at 522.

If the district court engaged in the excusable-neglect balancing process discussed in *Nafziger*, it is not apparent from the record. The district court's orders striking EMS's opposition brief and denying reconsideration suggest that it determined that EMS's counsel's ignorance of *instanter* procedure in federal court, and EMS's resultant failure to re-file the opposition brief until two weeks after the court had granted EMS leave to file the brief *instanter*, warranted striking its brief.

Although EMS's motion for reconsideration argued that defendants were not prejudiced by the two-week delay, that the delay had no impact on the proceedings, and that EMS acted in good faith, the district court's order denying reconsideration gives no indication that it weighed these factors, which coincide with three of the excusable neglect/*Nafziger* factors. We conclude that these three factors weigh [**17] in EMS's favor.

First, the late filings did not prejudice defendants. Defendants at no point claimed that either the May 29 or June 16th filing of EMS's reply brief prejudiced them and, further, defendants had received EMS's reply brief on May 29, 2008, and already filed their response before the district court *sua sponte* struck EMS's reply brief on July 15, 2008. Second, that defendants had already filed their response before EMS re-filed its reply brief illustrates that the length of the delay (two weeks) had no apparent impact on the proceedings. Third, EMS acted in good faith throughout the proceedings. There is no local court rule or internal operating procedure addressing *instanter* procedure in the Northern District of Ohio. EMS's counsel explained that state-court practice was that when courts grant a motion for leave to file a document *instanter*, the document is deemed filed. Further, in the instant case, the district court granted EMS's motion for leave to file its opposition brief *instanter* the day after EMS filed it, i.e., the day after the docket sheet entry stating that EMS's opposition brief was "filed prematurely without leave of court." A reader of the docket sheet could [**18] reasonably conclude

Page 8

2:09-md-02042-SFC   Doc # 440-3   Filed 11/05/13   Pg 10 of 12   Pg ID 10766

387 Fed. Appx. 575, *582; 2010 U.S. App. LEXIS 14978, **18;
2010 FED App. 0442N (6th Cir.)

that when the district court granted the motion to file the brief *instanter* the day after this docket notation, [*583] it accepted EMS's appended opposition brief. Further, when court staff called EMS's counsel several weeks later to advise that he had to file the opposition Brief, he did so immediately.

Defendants do not argue that EMS's late filing of its opposition brief prejudiced them, and offer no argument regarding the *Nafziger* factors. Given that the late filing had no apparent impact on the proceedings, that defendants were not prejudiced, and that there is no indication EMS's counsel acted other than in good faith, we conclude that EMS established excusable neglect and that the district court thus abused its discretion in striking EMS's opposition brief. *See Nafziger*, 467 F.3d at 524 ([HN2]an abuse of discretion exists if the district court applied the wrong legal standard).

**b**

Turning to the issue whether the district court abused its discretion in denying EMS's motion for leave to file a sur-reply brief, we agree with EMS that defendants' presentation of new arguments and new evidence in their reply brief violated EMS's right under Fed. R. Civ. P. 56(c) to notice and [**19] a reasonable opportunity to respond to defendants' summary judgment motion and supporting evidence and necessitated that EMS be permitted to respond. In *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481-82 (6th Cir. 2003), this court concluded that the district court abused its discretion in failing to allow the non-moving party an opportunity to file a sur-reply brief under circumstances similar to the instant case:

> [HN3]When new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated, a problem arises with respect to Federal Rule of Civil Procedure 56(c). Rule 56(c) requires that an adverse party receive ten days notice before a district court may enter summary judgment. Fed. R. Civ. P. 56(c); *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995). The purpose of Rule 56(c) is to afford the nonmoving party notice and a reasonable opportunity to respond to the moving party's summary judgment motion and supporting evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S. Ct. 2548, 91 L. Ed. 2d 265 [] (1986) (holding that summary judgment is to be entered only if the nonmovant is on notice that it must come [**20] forward with all of its evidence). It is only logical that the purposes of notice and opportunity to respond extend Rule 56(c) to the situation where the moving party submits in a reply brief new reasons and evidence in support of its motion for summary judgment, and require a district court to allow the nonmoving party an opportunity to respond. *Beaird [v. Seagate Tech., Inc.*, 145 F.3d 1159,] 1164-65 [10th Cir. 1998] (citing *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 410 (1st Cir. 1985)). This is particularly true when the district court relies on the new evidentiary submissions.

Accordingly, we conclude that the district court abused its discretion by denying EMS's motion for leave to file a sur-reply brief.

**2**

EMS contends that the district court erred in granting defendants summary judgment where the search warrant affidavit was fatally deficient, defendants' own moving papers admitted that discretionary selection of establishments to be searched was an inherent part of the Fire Department's inspection plan, and the search of EMS's premises violated clearly established law.

[*584] **a**

[HN4]This court reviews the district court's grant of summary judgment *de novo*. *Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). [**21] The district court's opinion granting defendants summary judgment does not discuss the probable cause issue--it merely notes its initial ruling finding probable cause. That ruling rested on the court's conclusions that "a valid city ordinance [Cleveland Ordinance § 381.04] authorized [the] administrative search" and that "annual inspections of industrial premises for fire safety concerns are reasonable and neutral."

2:09-md-02042-SFC   Doc # 440-3   Filed 11/05/13   Pg 11 of 12   Pg ID 10767

387 Fed. Appx. 575, *584; 2010 U.S. App. LEXIS 14978, **21;
2010 FED App. 0442N (6th Cir.)

Since *Camara v. Mun. Court of City and County of San Francisco*, 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967), and *See v. City of Seattle*, 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967), [HN5]statutes such as Cleveland's Municipal Code § 381.04 -- on which the district court partly relied in concluding probable cause was established -- have been held unconstitutional unless construed to require a search warrant supported by administrative probable cause. *Camara* held that administrative inspections are significant intrusions on Fourth Amendment rights for which warrants generally are required, and that probable cause exists in this context "if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling." 387 U.S. at 538. The *See* Court noted that "the decision [**22] to enter and inspect will not be the product of the unreviewed discretion of the enforcement officer in the field." 387 U.S. at 545. *See also Allinder v. Ohio*, 808 F.2d 1180 (6th Cir. 1987) (finding unconstitutional an Ohio regulatory statute that permitted warrantless inspection of apiaries located on private property).

Because defendants in the instant case secured a warrant, i.e., did not inspect EMS's premises without a warrant based on their purported authority to do so under Cleveland Ordinance § 381.04, the issue is whether the "annual interior inspection plan" is derived from neutral sources. We conclude that EMS presented ample evidence to survive defendants' summary judgment motion on this issue.

**b - Annual Inspection Plan**

*Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978), and *Trinity Indus., Inc. v. Occupational Safety and Health Review Comm'n*, 16 F.3d 1455 (6th Cir. 1994), established that [HN6]administrative probable cause requires a neutral administrative or legislative plan. As this court noted in *Trinity Indus.*, 16 F.3d at 1460:

> In *Barlow's*, the Supreme Court held that warrants are required for administrative inspections under the [Occupational Safety and Health] Act. *Id.* at 325 [**23] []. The Court also stated that probable cause justifying the issuance of a warrant for administrative purposes may be based either on "specific evidence of an existing violation" or "on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'" *Id.* at 320 []. Expounding on the second basis, the Court noted that a "warrant showing that a specific business has been *chosen* for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources . . . would protect an employer's Fourth Amendment rights." *Id.* at 321 [] (emphasis added). Because administrative and legislative guidelines ensure that employers selected for inspection pursuant to neutral [*585] administrative plans have not been chosen simply for the purpose of harassment, courts have held that administrative plan searches may properly extend to the entire workplace. *Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1068 (11th Cir. 1982).

A permissible administrative plan relies on "either random selection or selection by relevant statistics that have no individual human component [**24] for the reason that searches flowing from these types of plans could not be the product of an agency's arbitrary decision." *See Trinity Indus.*, 16 F.3d at 1463 (Batchelder, J., concurring) (discussing *Barlow's*, 436 U.S. at 323).

EMS argued in opposition to defendants' summary judgment motion (in the brief the district court struck) that although a plan to search commercial buildings annually may arguably satisfy *Barlow's* neutrality requirement by rendering the "whom to search and how often to search" non-discretionary, the evidence established that the Fire Department inspects a small fraction of buildings annually and, in reality, Captain Otto and several others select the buildings to be inspected without neutral selection criteria.

We agree with EMS. Documentary evidence submitted below supported that annual inspections are a *goal* of the Fire Department, that the Department actually inspects only a fraction of the commercial establishments in Cleveland annually, and that Otto and others have input into the choice of buildings to be inspected, i.e.,

Page 10

2:09-md-02042-SFC   Doc # 440-3   Filed 11/05/13   Pg 12 of 12   Pg ID 10768

387 Fed. Appx. 575, *585; 2010 U.S. App. LEXIS 14978, **24;
2010 FED App. 0442N (6th Cir.)

that the Fire Department's administrative plan for annual inspections has human input and components and is thus not neutral.

In sum, EMS's [**25] opposition brief and evidentiary submissions (which the district court struck) established genuine factual issues that precluded summary judgment in defendants' favor. We therefore reverse the district court's grant of summary judgment to defendants.

### III. Qualified Immunity

Defendants argue that even if EMS is successful regarding all its assignments of error, they are still entitled to qualified immunity. [5] On the record before us, we disagree.

> 5   The district court did not reach the issue of qualified immunity.

[HN7]"In § 1983 actions, an officer ordinarily receives qualified immunity if he . . . relies on a judicially secured warrant." *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005). When no facts are in dispute, whether an official is entitled to qualified immunity is a question of law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). However,

> [i]f disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts. Similarly with qualified immunity, a court can submit to the jury the factual dispute with an appropriate instruction to find probable cause and qualified immunity if the factual inquiry [**26] is answered one way and to find probable cause and qualified immunity lacking if the inquiry is answered in another way. However, the jury does not decide whether the facts it has found are legally sufficient to amount to probable cause or entitlement to qualified immunity.

*Hale*, 396 F.3d at 728.

Here, the facts pertinent to probable cause and qualified immunity are in dispute. Defendants maintain that Ashton's affidavit accurately stated that Ashton sought to inspect EMS as part of the Fire Department's "annual interior inspection [*586] plan," while EMS maintains that there is no such "plan," but rather, that the Department inspects a fraction of the commercial establishments in Cleveland annually, that Otto and various other fire officials have substantial input into what buildings get inspected, and that there are no written criteria governing the selection of buildings inspected. EMS also maintains that "to the extent [Ashton's affidavit] intended to convey that the Fire Department has a *bona fide* annual inspection plan that is selection neutral because all buildings are regularly and systematically inspected on a yearly basis, Ashton's reference to 'annual inspections' was knowingly or [**27] recklessly false." Because disputed factual issues underlying probable cause are present in this case, defendants are not entitled to summary judgment on qualified immunity grounds.

### IV.

The same factual disputes undermine EMS's final issue on appeal -- whether the district court erred in denying its motion for partial summary judgment on liability.

### V.

We **REVERSE** the district court's grant of summary judgment to defendants and **REMAND** for further proceedings consistent with this opinion.