# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE: REFRIGERANT COMPRESSORS ANTITRUST LITIGATION | Master Docket No. 2:09-MD-2042 MDL |
| | Hon. Sean F. Cox |
| THIS DOCUMENT RELATES TO: | Civil Action No. 2:13-cv-12638 |
| *General Electric Company v. Whirlpool Corporation, et al.* | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DANFOSS FLENSBURG GMBH'S AND DANFOSS LLC'S MOTION TO DISMISS THE COMPLAINT OF GENERAL ELECTRIC COMPANY

# **TABLE OF CONTENTS**

Page

I.   Introduction and Summary................................................................1

II.  Argument............................................................................................2

    A.   GE's Claims Are Barred by the FTAIA...............................................2

    B.   The Control Exception to *Illinois Brick* Does Not Apply to
        MABE's Compressor Purchases ........................................................5

    C.   GE's Claims Are Not Tolled Under Section 5(i).................................7

    D.   GE's Post-February 2009 and Pre-April 2004 Conspiracy
        Allegations Fail Under *Twombly* ......................................................9

        1.   The Post-February 2009 Conspiracy Allegations.....................10

        2.   The Pre-April 2004 Conspiracy Allegations ............................10

    E.   GE Fails to Plead Fraudulent Concealment for the Post-
        February 2009 and Pre-April 2004 Periods .......................................11

        1.   The Post-February 2009 Fraudulent Conspiracy
            Allegations ................................................................................11

        2.   The Pre-April 2004 Fraudulent Conspiracy Allegations..........12

    F.   There Is No Personal Jurisdiction Over Flensburg ............................13

    G.   GE's State Law Claims Fail to Meet *Twombly* and Are Barred
        By the Statute of Limitations .............................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal.*
    556 U.S. 662 (2009)...................................................................................9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................9, 10, 14

*Carrier Corp. v. Outokumpu Oyj,*
    673 F.3d 430 (6th Cir. 2012) ..................................................5, 10, 12

*Chiropractic Coop. Ass'n of Michigan v. Am. Med. Ass'n,*
    867 F.2d 270 (6th Cir. 1989) .....................................................................11

*Cleveland v. Cleveland Electric, Illuminating Co.,*
    538 F. Supp. 1320 (N.D. Ohio 1980) .......................................................6

*Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.,*
    692 F.3d 469 (6th Cir. 2012) .................................................................14

*Greyhound Corp. v. Mt. Hood Stages,*
    437 U.S. 322 (1978).................................................................................8

*Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.,*
    424 F.3d 363 (3d Cir. 2005) .....................................................................6

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977)........................................................................1, 5, 6

*In re Brand Name Prescription Drugs Antitrust Litig.,*
    123 F.3d 599 (7th Cir. 1997) .....................................................................6

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    911 F. Supp. 2d 857 (N.D. Cal. 2012)......................................................7

*In re G-fees Antitrust Litig.,*
    584 F. Supp. 2d 26 (D.D.C. 2008)............................................................6

*In re Mercedes-Benz Antitrust Litig.,*
    157 F. Supp. 2d 355 (D.N.J. 2001)...........................................................6

ii

## <u>TABLE OF AUTHORITIES</u>
## <u>(CONT'D)</u>

*In re Refrigerant Compressors Antitrust Litig.*,
   795 F. Supp. 2d 647 (E.D. Mich. 2011) ........................................7, 11

*In re Sugar Indus. Antitrust Litig.*,
   579 F.2d 13 (3d Cir. 1978) ................................................................7

*In re Travel Agent Comm'n Antitrust Litig.*,
   583 F.3d 896 (6th Cir. 2009) ...........................................................15

*In re Urethane Antitrust Litig.*,
   663 F. Supp. 2d 1067 (D. Kan. 2009)................................................9

*Jewish Hosp. Ass'n v. Stewart Mech. Enters., Inc.*,
   628 F.2d 971 (6th Cir. 1980) ........................................................5, 6

*Motorola Mobility, Inc. v. AU Optronics Corp.*,
   No. 09C6610, 2014 WL 258154 (N.D. Ill. Jan. 23, 2014)..............2, 3

*Motorola Mobility LLC v. AU Optronics Corp.*,
   No. 14-8003, 2014 WL 1243797 (7th Cir. Mar. 27, 2014), *petition for*
   *reh'g pending* (filed Apr. 24, 2014) ......................................1, 3, 4, 5

*Timmreck v. United States*,
   577 F.2d 372 (6th Cir. 1978), *rev'd on other grounds*, 441 U.S. 780
   (1979)...............................................................................................7

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
   413 F.3d 553 (6th Cir. 2005) ............................................................7

## STATUTES

15 U.S.C. § 6(a) ......................................................................passim

Ky. Rev. Stat. Ann. § 413.130(3) .................................................15

Ky. Rev. Stat. Ann. § 413.140 .....................................................15

## I.    Introduction and Summary

GE's effort to salvage its grossly overstated complaint fails.  As shown below, whether GE can avoid dismissal based on hyper-technical distinctions of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), or otherwise, its claims based on MABE's purchases are still barred under the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6(a) ("FTAIA"), because they allege at best an *indirect* impact on competition.  *See Motorola Mobility LLC v. AU Optronics Corp.*, No. 14-8003, 2014 WL 1243797 (7th Cir. Mar. 27, 2014), *petition for reh'g pending* (filed Apr. 24, 2014) (Ex. 1 hereto; decided after this motion was filed).  Thus, this Court needs no further justification for dismissing all GE claims based on GE's purchase of refrigerators from MABE containing compressors sold to MABE.  To the extent GE's claims survive FTAIA, they are deficient in significant respects.

- *Illinois Brick* remains a bar since GE has not established "control" over MABE and in any event MABE did not simply resell the alleged price fixed component but incorporated it into refrigerators which it sold to GE.

- GE's tardy complaint, filed well after the one-year available tolling period expired cannot be "saved" based on a single extant criminal indictment, far more limited in scope and time period, against three individual fugitives.

- GE's conclusory allegations seeking to expand the conspiracy period beyond April 2004 to February 2009, devoid of any relevant facts, fail to satisfy minimal pleading standards.

- GE's fraudulent concealment allegations for the post-February 2009 period are frivolous in light of the numerous public disclosures and indeed civil and criminal legal proceedings involving the price fixing

upon which GE itself relies; for the period prior to April 2004, GE's
allegations fail to satisfy the standards required for such contention.

- This Court does not have personal jurisdiction over Flensburg.

- The state law claims fail to state cognizable causes of action.

## II.   Argument

### A.   GE's Claims Are Barred by the FTAIA

The FTAIA places all nonimport foreign commerce outside the Sherman Act

unless such conduct (1) has a "direct, substantial and reasonably foreseeable

effect" on American domestic or import commerce, and (2) such effect gives rise

to a Sherman Act claim.

In *Motorola Mobility, Inc. v. AU Optronics Corp.*, No. 09C6610, 2014 WL

258154 (N.D. Ill. Jan. 23, 2014) (Ex. 2 hereto), Motorola alleged that defendants

conspired to raise the prices of LCD panels above the price that would have

prevailed in a competitive market in violation of the Sherman Act.  The case

concerned, *inter alia*, "purchases of LCD panels by Motorola's foreign affiliates

that were delivered to the foreign affiliates' manufacturing facilities abroad, where

they were incorporated into mobile phones that were later sold in the United

States..." *Id.* at *1.

First, the District Court rejected Motorola's argument that the products at

issue were "imports" and thus not subject to the FTAIA because "Motorola had not

alleged that the foreign-purchased products were brought to the United States by

Defendants, but rather by Motorola affiliates, and so the products at issue were not 'imports.'" *Id.* at *10 (citation omitted).

Second, the District Court found that, despite Motorola's alleged approval of prices paid for the LCD panels, the "claim belongs to the Motorola foreign affiliates," since the antitrust "injury arose when Motorola's foreign affiliates purchased LCD panels at inflated prices, not when Motorola decided at what price those purchases would be made." *Id.* at *9. The fact "[t]hat Defendants targeted Motorola in the United States [was] . . . irrelevant . . ." *Id.* at *10.

The Seventh Circuit (Posner, J.) affirmed the District Court's dismissal. *Motorola Mobility LLC*, 2014 WL 1243797. It held that because Motorola's foreign subsidiaries had purchased the price-fixed LCD screens, which were then incorporated into cell phones manufactured abroad and later imported into the U.S. for sale to U.S. customers, the effect on U.S. commerce was indirect and Motorola's claims arising from these LCD screen sales were barred by the FTAIA. *Id.* at *2-3. The Court specifically rejected the argument that the FTAIA did not apply because Motorola itself negotiated the prices its subsidiaries paid for the LCD screens.[1]

---

[1] As Judge Posner said in response to arguments that applying FTAIA would allow cartelists to unfairly overcharge U.S. manufacturers: "Not true; the defendants did not sell in the United States and, if they were overcharging, they were overcharging other foreign manufacturers the Motorola subsidiaries." *Id.* at *4.

The Seventh Circuit further held that even if "Motorola had bought the panels from the defendants outright [in the U.S. and] then resold the panels to its foreign subsidiaries, which then used them in manufacturing cell phones that they then exported to the United States . . . [t]he effect on prices in the United States would be the same as if the foreign subsidiaries had negotiated the price charged by the alleged cartel to Motorola, because the price would be the same– it would be the cartel price. And so the (indirect) effect on U.S. domestic commerce . . . would be the same." *Id.* at \*3.[2]

Thus, the Court in *Motorola* rejected the very premise of GE's claim that it can recover for the price fixed compressors that MABE purchased and incorporated into refrigerators manufactured for sale in the U.S. because, allegedly, MABE was an affiliate of GE, GE had minority stock ownership, had "representation on MABE's board of directors," held "veto rights over certain categories of board decisions," and was involved in the negotiation of "the price and quantity of compressors that MABE purchased for the refrigerators it manufactured for GE." GE Opposition Brief ("Opp.") 21. None of the above is sufficient to avoid dismissal of claims based on MABE's purchases of compressors

---

[2] Likewise, to the extent GE itself purchased compressors directly in the U.S. and shipped them to MABE for incorporation into refrigerators which were then shipped to GE for sale in the U.S., it similarly is barred under FTAIA since the impact on U.S. commerce is "indirect." *Id.* at \*3.

which MABE incorporated into refrigerators shipped to GE in the U.S.[3]

**B.     The Control Exception to *Illinois Brick* Does Not Apply to MABE's Compressor Purchases**

GE has abandoned the cost-plus exception to *Illinois Brick* alleged in its Complaint (Compl. ¶54) instead arguing that the control exception applies to those claims which are based on MABE's compressor purchases.  Opp. 21-23.

The Sixth Circuit has held that "the 'control' exception is limited to relationships involving such functional economic or other unity between the direct purchaser and either the defendant or the indirect purchaser that there effectively has been only one sale." *Jewish Hosp. Ass'n v. Stewart Mech. Enters., Inc.*, 628 F.2d 971, 975 (6th Cir. 1980).

GE's control argument, which fails under *Motorola,* fails as well under *Illinois Brick*.  GE has not cited any 6th Circuit cases applying the factors (such as minority stock ownership and interlocking directorates) which GE argues should determine whether GE has sufficient control over MABE to have standing to sue for MABE's purchases.[4]  Moreover, the Sixth Circuit has only applied the

---

[3] Notably, the Sixth Circuit in *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) (citing *F. Hoffmann-LaRoche Ltd. v. Empagran SA*, 542 U.S. 155, 162 (2004)), noted that since the alleged price fixed product (ACR copper) was imported directly into the U.S. and sold by defendants directly to U.S. customers, Carrier's claims were limited to domestic purchases and thus did "not involve the type of foreign commerce that would be implicated by FTAIA."  *See id.* at n. 3.

[4] The cases GE cites involving "control" based on stock ownership and board membership only address a defendant's control over the direct purchaser, not the

"control" exception in cases involving circumstances where "market forces were

superseded" such that there is no "[p]roblem[] of proving the amount of the pass-

on ..." *Jewish Hosp. Ass'n*, 628 F.2d at 975. Here, of course, there is such a

problem as the alleged price-fixed components are but one component in

refrigerators which the direct purchaser (MABE) sold to GE and the so-called

"pass-on" would involve all material components as well as the costs of labor and

overhead.

      GE argues that "the incorporation of a price-fixed component into a finished

product has no bearing on the application of the control exception." Opp. n.19.

However, GE only cites cases holding that *Illinois Brick* "does not apply in

---

indirect purchaser's control over the direct purchaser, which is at issue here. *See Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 371-72 (3d Cir. 2005) (finding that dental labs could not recover for price fixed artificial teeth which defendant manufacturer sold to dealers who in turn sold to the labs); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605-06 (7th Cir. 1997)(finding that retail pharmacies could not recover for price fixed drugs which defendant manufacturer sold to wholesalers who in turn sold to the pharmacies); *In re G-fees Antitrust Litig.*, 584 F. Supp. 2d 26, 33-34 (D.D.C. 2008)(finding sufficient control between defendants Fannie Mae and Freddie Mac and intermediary banks which issued price fixed loans to plaintiffs); *In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 366 (D.N.J. 2001) (finding that *Illinois Brick* would not bar claims for purchase of price fixed automobiles financed by non-party credit corporation, which was a subsidiary of defendant manufacturer).

The single case GE cites which concerns the *indirect purchaser's* control over the direct purchaser, *Cleveland v. Cleveland Electric, Illuminating Co.*, 538 F. Supp. 1320,1323 (N.D. Ohio 1980), is not instructive here as there were no allegations concerning corporate control via stock ownership or interlocking directorates and the court did *not* find sufficient control to meet the exception to *Illinois Brick*.

situations where a plaintiff purchases a product containing a price-fixed component directly from an alleged violator who makes both the component and the product containing the component" and, as this Court stated, such a rule has not been adopted by the 6th Circuit.[5] *In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647, 657, 659 (E.D. Mich. 2011). Moreover, such rule, even if it were endorsed by the 6th Circuit, would not help GE here since GE has not "alleged that it bought a finished product containing a compressor from a Defendant who both manufactured the compressors and used those compressors to manufacture the finished good." *Id.* at 658.

### C.   GE's Claims Are Not Tolled Under Section 5(i)[6]

GE essentially admits that its claims would be barred except for the pendency of the Heinzelmann Indictment. To allow tolling until the last of the Heinzelmann defendants dies would be prejudicial to Danfoss and violates due process. There can be no dispute that tolling based on the Heinzelmann Indictment violates the congressional intent behind 5(i). As the Supreme Court stated, 5(i) "is

---

[5] The cases cited by GE for this point are *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 15 (3d Cir. 1978), and *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 862 (N.D. Cal. 2012).

[6] With regard to GE's claim that class action tolling applies here, there can be no dispute that *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005) bars tolling for class members who file independent actions prior to class certification. *Timmreck v. United States*, 577 F.2d 372, 374 n.6 (6th Cir. 1978), *rev'd on other grounds*, 441 U.S. 780 (1979).

a statute of repose." *Greyhound Corp. v. Mt. Hood Stages*, 437 U.S. 322, 334

(1978) (quotation omitted).

> The Senate Report accompanying the 1955 amendments [to the
> Clayton Act] reflects congressional policy against "undue
> prolongation of [antitrust] proceedings" by extending the limitations
> period.  It noted: "While the committee believes it important to
> safeguard the rights of plaintiffs by tolling the statute during the
> pendency of Government antitrust actions, it recognizes that in many
> instances the long duration of such proceedings taken in conjunction
> with a lengthy statute of limitations may tend to prolong stale claims,
> unduly impair efficient business operations, and overburden the
> calendars of courts."

*Id.* at 335 (citation omitted; first alteration added).

Allowing GE to use 5(i) to toll the statute of limitations based on the

criminal indictment of three aliens would plainly contravene "the congressional

emphasis on certainty and predictability" underlying 5(i).  *Id.*  In addition, there is

no new evidence to be adduced from the government proceedings at issue as the

corporate defendants pled guilty years ago and GE's Complaint dwarfs the

government allegations in terms of time and subject matter. [7] For example, the

government conspiracy period spans only from "at least October 14, 2004" to on or

about December 31, 2007 but the Complaint alleges a conspiracy *five* times as

long, and GE's allegations concerning technology allocation and secret agreements

not to compete vastly enlarges the subject matter of the government indictment.

---

[7] None of the cases cited by GE in support of tacking remotely involve the
expansive nature of claims in terms of time and subject matter at issue here.

Compl. ¶¶65, 65-70, 71-83, 75.[8]

**D.   GE's Post-February 2009 and Pre-April 2004 Conspiracy Allegations Fail Under *Twombly***

GE's only real argument against Danfoss's motion to dismiss its pre-2004 and post-2009 claims is that there is no precedent for dismembering an alleged conspiracy. Opp. 3. However, dismissal of part of a claim spanning a conspiracy period so broad as that alleged here is entirely reasonable. *See, e.g., In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1076-77 (D. Kan. 2009). Further, dismissal is plainly supported by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in which the Supreme Court sought to limit expansive and oppressive antitrust claims.

Also in *Twombly*, the Court applied a plausibility standard. There, the Supreme Court instructed courts to "identify[] facts that are suggestive enough to render a § 1 conspiracy plausible . . ." 550 U.S. at 556. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its *judicial experience and common sense*." *Ashcroft v. Iqbal*. 556 U.S. 662, 679 (2009) (emphasis added).

---

[8] GE's reference to the extradition of an Italian national from Germany (Opp. n.16) is improper as it relies on material outside of the Complaint and is irrelevant. GE has presented no evidence that the U.S. intends to extradite any defendant named in the Heinzelmann Indictment nor that extradition treaties exist with any of the countries at issue. Moreover, a press release concerning a single antitrust extradition in over a 100+ years of antitrust law enforcement is not instructive.

### 1.    The Post-February 2009 Conspiracy Allegations

The post-2009 allegations are "no more than conclusions" and not entitled to the assumption of truth.  GE cites paragraphs 183-187 of its Complaint in support, but such paragraphs concern past events, not an ongoing conspiracy.  GE also cites paragraphs 75, 80, and 83 of its Complaint, but these paragraphs at best are legal conclusions that Panasonic and Embraco continued the conspiracy until 2011 with respect to high efficiency compressors.

In any event, *Twombly* teaches that even well-pleaded allegations of conspiracy must be tested by courts as to whether they are plausible using judicial experience and common sense.  Here, GE's claim of continuing conspiracy after the institution of governmental investigations, multiple class actions and even after the institution of criminal proceedings, utterly fails the "plausibility" standard.

### 2.    The Pre-April 2004 Conspiracy Allegations

To survive a motion to dismiss, a complaint "must be specific enough to establish the relevant 'who, what, where, when, how or why'" and "must 'specify how [each] defendant [was] involved in the alleged conspiracy.'"  *Carrier*, 673 F.3d at 445 (citations omitted; alterations in opinion).  The pre-April 2004 allegations GE highlights in its Opposition do not come close to sufficiently specifying how *Danfoss* participated in the conspiracy in general, much less from

"at least as early as January 1, 1996." Compl. ¶¶62, 84, 85, 193.[9]

**E.     GE Fails to Plead Fraudulent Concealment for the Post-February 2009 and Pre-April 2004 Periods**

This Court has already set forth in depth the requirements for adequate

pleading of fraudulent concealment. *Refrigerant*, 795 F. Supp. 2d at 662-66.

Contrary to GE's arguments otherwise, this Court also has dismissed *part* of a

claim for fraudulent concealment where such claims were inadequately pleaded.

*Id.* at 666.

**1.     The Post-February 2009 Fraudulent Concealment Allegations**

GE alleges tolling after February 2009 based on fraudulent concealment.

This claim is patently frivolous in view of the public pronouncement of

government investigations and class action civil complaints filed in February 2009

and even guilty pleas by corporate defendants (6/30/10-10/4/11) and this Court's

decision of 12/13/2011 (*Refrigerant*, 795 F. Supp. 2d 647).[10]

There is no case law support for GE's arguments concerning a purported

---

[9] GE also cites paragraphs 93-95, 103, and 192 for this proposition but they concern the period post-April 1, 2004.  GE also argues, citing *Chiropractic Coop. Ass'n of Michigan v. Am. Med. Ass'n*, 867 F.2d 270, 274-75 (6th Cir. 1989), that Danfoss would be liable even if it did not join the conspiracy until 2004, but that case concerned only withdrawal from a conspiracy while here the issue is whether the Complaint adequately alleges that Danfoss participated in the conspiracy during the entire time frame alleged by GE.

[10] *See* Compl. ¶¶ 116-129 for a listing of various investigations and proceedings related to the alleged cartel.

distinction between "inquiry notice" and "constructive notice." Opp. 7-9. Even were the distinction caselaw-sanctioned, here GE admits that there were storm warnings as early as February 2009 and that GE began investigating the alleged cartel in March 2009. Compl. ¶¶ 196-197. But then GE alleges that it did not discover the facts underlying its claim until February 2012. Compl. ¶202. GE's several years of "investigation" without any alleged discovery of a claim cannot satisfy due diligence especially in light of the fact that the class plaintiffs filed complaints based on the very violations at issue here in February 2009.[11] The bottom line is that GE cannot avail itself of fraudulent concealment to justify its delay in filing its lawsuit until February 2013.

### 2.   The Pre-April 2004 Fraudulent Concealment Allegations

Despite substantial caselaw finding that denial of wrongdoing is not sufficient fraudulent concealment (Opening Br. 21, n.9), GE continues to claim

---

[11] The facts alleged here are unlike those at issue in *Carrier* where the wrongdoing alleged was not publicly known until later. Carrier alleged that after it became aware of an EC investigation of defendant in 2001, Carrier inquired unsuccessfully with several copper tubing suppliers about the alleged conspiracy and examined public statements and filings for evidence of a possible cartel *before* acquiring additional information from the EC decision which became the basis of its claim. *Carrier*, 673 F.3d at 448. Here, GE alleges that it received a letter from Embraco announcing it was under investigation for "'business practices in the refrigeration compressor industry'" on February 18, 2009. Comp. ¶181. GE further admits that that the DOJ and EC investigations were "publicly known" by late February 2009. Comp. ¶196. Also by late February 2009, GE was aware that multiple class actions had been filed. Compl. ¶197. Accordingly, here, in contrast to *Carrier*, GE had several substantive sources and actual litigations from which it should have discovered the operative facts underlying its claims.

that it has satisfied due diligence for the pre-2004 time period based on such denials, invoking once again, for example, the non-collusion certificates (Opp. 14). Its claim falls far short of the requisite showing for fraudulent concealment.

GE also argues that Panasonic falsely assured GE that it was developing a high efficiency compressor but actually was letting Embraco dominate the high-efficiency market. Opp. 13. That allegation has nothing to do with a conspiracy involving Danfoss to fix prices for compressors.

Finally, GE references an alleged statement by Embraco in January 2004. Opp. 13. How that justifies (even assuming it is sufficient to establish fraudulent concealment, which is doubtful) fraudulent concealment going back to at least as early as 1996 is bewildering.

### F.    There Is No Personal Jurisdiction Over Flensburg

GE argues that this Court has "specific jurisdiction" over Flensburg because "Danfoss" sold millions of dollars of compressors directly to GE in the U.S. during the alleged conspiracy period, and because Flensburg employees met with GE in connection with "the GE-Danfoss relationship." Opp. 24.

Specific jurisdiction over a non-forum corporation requires proof that the defendant purposefully availed itself of acting in the jurisdiction. "[T]he purposeful availment requirement ensures that the defendant's actions create a 'substantial connection' to the forum state, such that the defendant 'should

reasonably anticipate being haled into court there." *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 692 F.3d 469, 472 (6th Cir. 2012) (citation omitted).

Since it is undisputed that Flensburg itself sold no household compressors in the U.S. from April 2004 - February 2009, the only basis upon which specific jurisdiction over Flensburg during such period can be grounded is the sales by other Danfoss subsidiaries.[12] As GE acknowledges in its opposition to A/S's motion, amalgamating the U.S. contacts of the three Danfoss Group companies named as defendants in this action is predicated upon a finding that these three companies are alter egos of each other. A/S demonstrates that they are not, and therefore it is only the contacts of Flensburg with the U.S. that are relevant to the instant motion. With Flensburg's U.S. sales of light commercial compressors amounting to about .001% of its world-wide sales of household and light commercial compressors for April 2004 - February 2009, even if sales of light commercial compressors were relevant here, GE's claim to jurisdiction over Flensburg still utterly fails the substantiality requirement.

---

[12] Flensburg agrees that if the appropriate conspiracy period encompasses years in the 1990s, its alleged sales of household compressors in the U.S. and the alleged meeting of its personnel with GE in Kentucky may be relevant to pleading requirements for specific jurisdiction. But if this Court accepts Flensburg's argument that the litigable conspiracy period commenced no earlier than April 2004, then there is no purposeful availment by Flensburg during that period, and thus no basis for any claim of specific jurisdiction.

**G.    GE's State Law Claims Fail to Meet *Twombly* and Are Barred By the Statute of Limitations**

GE's Kentucky conspiracy claim is plainly barred by the one year statute of limitations (Ky. Rev. Stat. Ann. § 413.140) as GE fails to adequately allege a conspiracy or fraudulent concealment thereof within one year of its Complaint.

As to the fraud claim, GE cannot satisfy the elements with respect to Danfoss. There are no allegations that *Danfoss* made any misrepresentations to GE. GE cannot allege fraud against Danfoss based on the alleged actions of other conspirators. *See In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009).

GE's claim that, under Ky. Rev. Stat. Ann. § 413.130(3), it can reach fraud committed ten years prior to the Complaint, is of no assistance to GE since the only fraud that could possibly be alleged against Danfoss is based on sales between 1996 and 1998 (Compl. ¶33), which is more than ten years prior to the Complaint. Respectfully Submitted on April 30, 2014,

by: s/ Lawrence Kill
ANDERSON KILL, P.C.
Lawrence Kill (NY No.1312933)
Jeffrey Glen (NY No.1246099)
Carrie Maylor DiCanio (NY No.4736773)
1251 Avenue of the Americas
New York, NY 10020
Tele: (212) 278-1722
E-Mail:lkill@andersonkill.com

by: s/ John W. Allen
VARNUM LLP
John W. Allen (P10120)
251 North Rose Street, 4th Floor
Kalamazoo, MI 49007
Tele: (269) 553-3501
E-Mail:jwallen@varnumlaw.com

*Attorneys for Danfoss Flensburg GmbH and Danfoss LLC*