# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE: REFRIGERANT COMPRESSORS ANTITRUST LITIGATION | Master Docket No. 2:09-MD-2042 MDL<br><br>Hon. Sean F. Cox |
| THIS DOCUMENT RELATES TO:<br><br>*General Electric Company v. Whirlpool Corporation, et al.* | Civil Action No. 2:13-cv-12638 |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION BY DANFOSS A/S TO DISMISS THE COMPLAINT OF GENERAL ELECTRIC COMPANY FOR LACK OF PERSONAL JURISDICTION

# **TABLE OF CONTENTS**

Page

I. ARGUMENT ...................................................................................................1

    A. GE Misstates Relevant Facts ................................................................1

    B. Danfoss A/S, Like General Electric Company Itself, Is Not the Alter Ego of its Subsidiaries .........................................................................4

    C. Under Controlling Sixth Circuit Law, There Is No Personal Jurisdiction Over Danfoss A/S .............................................................7

        1. There Is No Jurisdiction Under *Auto Parts* ................................7

        2. There Is No Jurisdiction Under *Conley* ...................................10

        3. There Is No Jurisdiction Under *Carrier* ..................................11

    D. GE Must Prove Personal Jurisdiction Over Danfoss A/S by a Preponderance of the Evidence ..........................................................13

II. CONCLUSION ............................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Carrier Corp. v. Outokumpu Oyj,*
  673 F.3d 430 (6th Cir. 2012) .................................................................. 7, 11, 12

*Conley v. MLT, Inc.,*
  No. 11-11205, 2012 U.S. Dist. LEXIS 71821 (E.D. Mich. May 23, 2012) ... 9, 10

*Daimler AG v. Bauman,*
  134 S. Ct. 746 (2014) .............................................................................. 9, 10, 11

*Dean v. Motel 6 Operating L.P.,*
  134 F.3d 1269 (6th Cir. 1998) ............................................................................ 14

*Harvey v. GE Co.,*
  No. 4:10CV021, 2012 U.S. Dist. LEXIS 121762 (E.D. Mo. Aug. 28,
  2012) ............................................................................................................. 4, 5

*In re Automotive Parts Antitrust Litig.,*
  Nos. 12-MD-02311; 2:12-CV-00102; 2:12-CV-00103, 2013 U.S. Dist
  LEXIS 80336 (E.D. Mich. June 6, 2013) ......................................................... 7, 8

*In re Automotive Parts Antitrust Litig.,*
  Nos. 12-MD-02311; 2:12-CV-00102; 2:12-CV-00103, 2013 U.S. Dist
  LEXIS 80338 (E.D. Mich. June 6, 2013) ............................................................. 8

*McAnaney v. Astoria Financial Corp.,*
  665 F. Supp. 2d 132 (E.D.N.Y. 2009) ................................................................ 13

*Parejas v. GE Capital Servs., Inc.,*
  No. 10-CV-3348, 2011 U.S. Dist. LEXIS 71996 (E.D.N.Y. July 5, 2011) ..... 4, 6

*Precision, Inc. v. Kenco/Williams, Inc.,*
  66 F. App'x 1 (6th Cir. 2003) ............................................................................... 5

*Pro Tanks Leasing v. Midwest Propane & Refined Fuels, LLC,*
  No. 5:12-CV-00129, 2013 U.S. Dist. LEXIS 177221 (W.D. Ky. Dec. 18,
  2013) .................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

*Steele v. GE Money Bank,*
   No. 08C1880, 2009 U.S. Dist. LEXIS 11536 (N.D. Ill. Feb. 17, 2009) ..........4, 6

*Theunissen v. Matthews,*
   935 F.2d 1454 (6th Cir. 1991) ...........................................................................10

nydocs1-1031003.7

## I. ARGUMENT

### A. GE Misstates Relevant Facts

In its effort to make the three independent Danfoss companies that it has sued into one Procrustean unit, GE makes a set of factual errors that doom its action. In this section of this Reply, we correct those errors. In the sections that follow, we demonstrate that based on reality and the relevant case law, Danfoss A/S ("A/S") is not the alter ego of either Danfoss LLC ("LLC") or Danfoss Flensburg GmbH ("Flensburg"), and therefore A/S is not subject to the personal jurisdiction of this Court.

We address each material error in the order in which it appears in GE's Opposition Brief.

| GE ALLEGATIONS | THE FACTS |
|---|---|
| "That 'family-owned company' only has a 'two-tier management system,' consisting of a Board of Directors and an executive Committee. GE Opposition Brief ("Opp. Br.") at 8 (citing to the Declaration of David M. Schnorrenberg ("GE Ex.") Ex. 11 at 16). | As GE's Exhibit 11 makes plain, the "family-owned company" in question is not the Danfoss Group of companies but A/S. A/S reports, and is required by law to report, on an annual basis on behalf of itself and the Danfoss Group. The Management Statement and Audit Report in the 2005 Annual Report (GE Ex. 11) establishes that the nine person Board of Directors and the four person Executive Committee are the Board and Executive Committee of A/S. *See also* page 4 of the 1999 Annual Report (GE Ex. 8), consisting of a photo of the "Danfoss A/S Board of Directors and Executive Committee." |

| | |
|---|---|
| "[t]he 'Executive Committee is responsible for day-to-day operations' of the Danfoss Group and 'holds the day-to-day responsibility for the Group's operations.'" Opp. Br. at 9 (quoting from various A/S Annual Reports). | The "day-to-day operations" referred to in the Annual Reports are at the Danfoss Group level. There is no support for GE's implication that the Executive Committee has any control over or even knowledge of the "day-to-day operations" of the hundreds of subsidiary companies within the Danfoss Group. |
| "Danfoss A/S 'corporate officers' were in charge of the household and commercial compressors divisions of the company." Opp. Br. at 9 (referring to 1999 Annual Report at 3 (GE Ex. 8)). | Neither in 1999 nor at any time thereafter was the senior executive of the Danfoss Household Compressors division ("HC"), which was a group of independently incorporated and managed companies by which household and light commercial compressors were manufactured for sale under the Danfoss name, a "corporate officer," or even an employee, of Danfoss A/S. Rather, the senior executive of HC was the managing director of Flensburg, and was on the payroll of that company. In 1999, that individual was Karsten Moe. Declaration of Jesper Vaagelund Christensen, dated April 29, 2014 ("April Christensen Decl.") (Ex. 1 hereto), ¶¶3-5. |
| "[i]n 2007, Danfoss A/S announced that one of its Senior Vice Presidents, Mogens Søholm, was being appointed as the 'managing director' for Danfoss Flensburg.'" Opp. Br. at 9 (citing to GE Ex. 2). | In 2007, Mr. Søholm was not a "Senior Vice President", or even an employee, of A/S. Rather, he was the senior executive of HC. As such, he was the managing director of Flensburg, and was on the payroll of that company. April Christensen Decl.¶7. |

2

| | |
|---|---|
| "Danfoss A/S's control over Danfoss Flensburg is found in the company's 2009 decision to shut down the production of household compressors at its Flensburg plant." Opp. Br. at 10. | The decision to close a facility made at the parent level but carried out by the managing director of the subsidiary is not an indication of alter ego identity. While the ultimate decision to close HC's production in Flensburg was taken at the A/S level, responsibility for its implementation lay with Mr. Søholm (not Kim Fausing as alleged by GE), who was both the managing director of Flensburg and the Senior Vice President of HC. *See* April Christensen Decl.¶ ¶7, 10-12. |
| "Danfoss A/S officers attended compressors cartel meetings." Opp. Br. at 10 (referencing Jorn Westermann as "a corporate officer of Danfoss A/S"). | During the period of his alleged attendance at cartel meetings, Mr. Westermann was not an "officer", or even an employee, of A/S. Rather, he was the senior executive of HC. As such, he was the managing director of Flensburg, and was on the payroll of that company. April Christensen Decl. ¶6. |
| "Danfoss A/S played a role in the compressor manufacturing process…" Opp. Br. at 11 (referencing Ex. E to the Declaration of Tonya Williams). | Out of $17 million dollars of compressors that Ms. Williams alleged GE purchased from companies in the Danfoss Group in 1996-1998, she has found one email in which an employee of A/S apparently lent his expertise to Flensburg technicians trying to solve a problem for GE. If that was A/S's role in the process, it confirms that making A/S litigate in the U.S. is the definition of unreasonableness. |
| "So complete was the control Danfoss A/S exerted over Danfoss US that Danfoss US never even held board meetings." Opp. Br. at 13. | The proof is overwhelming that the only function of the LLC Board was to perpetuate itself and to appoint the officers of the American company. The distance from the day to day operations of LLC was so great that not a single substantive Board decision is noted in the one page annual waiver of meeting notices that is the only document evidencing even the existence of that Board. April Christensen Decl.¶14, Ex. A. |
| "Danfoss US merely acts as Danfoss A/S's domestic sales company." Opp. Br. at 14. | LLC sells products made by a great many Danfoss subsidiaries. In doing so, LLC selects the subsidiary that can fill the customer's order. April Christensen Decl.¶16. |

3

### B. Danfoss A/S, Like General Electric Company Itself, Is Not the Alter Ego of its Subsidiaries

The Danfoss Group is a conglomeration of hundreds of separately incorporated companies around the world that manufacture and sell products involved in heating and cooling, controlling electric motors, and powering mobile machinery. GE Ex. 4. A/S is the "parent company" of the hundreds of companies "owned 100% by Danfoss." *See* 1999 Danfoss Group Annual Report (GE Ex. 8) at 32; 2006 Danfoss Group Annual Report (GE Ex. 12) at 101. It is startlingly similar to GE, which lists in its 2013 filings with the SEC well over 100 subsidiary companies worldwide. *See* Declaration of Jeffrey E. Glen, dated April 29, 2014 ("Glen Decl.") (Ex. 2 hereto) at Ex. A.

And like A/S, GE, which is the parent of the GE subsidiaries, maintains in litigation that it is not the alter ego of its subsidiaries. In at least three cases in which there are reported decisions, *Harvey v. GE Co.*, No. 4:10CV021, 2012 U.S. Dist. LEXIS 121762 (E.D. Mo. Aug. 28, 2012), *Parejas v. GE Capital Servs., Inc.*, No. 10-CV-3348, 2011 U.S. Dist. LEXIS 71996 (E.D.N.Y. July 5, 2011), and *Steele v. GE Money Bank*, No. 08C1880, 2009 U.S. Dist. LEXIS 11536 (N.D. Ill. Feb. 17, 2009), GE argued that that it and its subsidiaries were separate entities and thus not alter egos.

In *Harvey*, plaintiff alleged that GE subsidiaries were wholly owned, directly or indirectly, by General Electric Company, that the subsidiaries "never had a genuine and separate corporate existence and exist solely as alter egos of the greater defendant corporate entity," that the subsidiaries "represented themselves as departments or divisions of … General Electric Company's business enterprise," and that the subsidiaries "represent themselves as 'GE Money Companies'" – all comparable to the claims that GE makes about the Danfoss corporate defendants in the instant case. 2012 U.S. Dist. LEXIS 121762, at *4. The *Harvey* plaintiff also alleged that the subsidiaries' business had been undercapitalized, and that GE had created these subsidiaries to commit fraud, *id.*, allegations that GE does not make about the Danfoss companies here.[1]

GE moved to dismiss, arguing that even this plethora of allegations failed to state a cognizable claim of alter ego jurisdiction over the parent company. Plaintiff, arguing for jurisdiction, sought discovery "to obtain additional information relevant to his veil-piecing claim," so as to amend his complaint to meet the requisite pleading requirements. *Id.* at *9. Discovery was granted, but to

---

[1] An allegation that the corporate entity within the forum was created to commit fraud or other wrong is essential to establish alter ego liability under either the law of Delaware, which is the state of incorporation of LLC, and under the law of Michigan, which is the law often used by courts within this District to analyze alter ego claims. *Precision, Inc. v. Kenco/Williams, Inc.*, 66 F. App'x 1, 4-6 (6th Cir. 2003).

nydocs1-1031003.7

no avail, and Plaintiff voluntarily dismissed GE from the case without ever amending his complaint. Glen Decl. Ex. B.

The same fate befell two other plaintiffs seeking to litigate GE's alleged alter ego status with its subsidiaries. The plaintiff in *Parejas,* despite lengthy quotes from GE's filings with the SEC establishing common ownership, consolidated financial reporting, and overlapping directors and officers (as is alleged in the present case), was dismissed for failure to adequately plead alter ego, without even limited jurisdictional discovery. And in *Steele*, allegations that a wholly owned GE subsidiary that serviced loans from another such subsidiary, both operating out of the same location and using the same trade name, should be deemed one entity under an alter ego theory resulted in dismissal on motion, again without even limited jurisdictional discovery.

For GE to try to hold A/S legally responsible for allegedly illegal acts by its subsidiaries, on grounds certainly no more persuasive than those alleged in cases where GE has extricated itself from litigation at the outset on the same arguments that the movant makes here, is surely ambitious if not reckless. What's sauce for the goose …

### C. Under Controlling Sixth Circuit Law, There Is No Personal Jurisdiction Over Danfoss A/S

#### 1. There Is No Jurisdiction Under *Auto Parts*

The most relevant precedent for determining whether the instant facts warrant the exercise of personal jurisdiction over A/S is the decision of *In re Automotive Parts Antitrust Litig.*, Nos. 12-MD-02311; 2:12-CV-00102; 2:12-CV-00103, 2013 U.S. Dist. LEXIS 80336 (E.D. Mich. June 6, 2013) ("*Auto Parts*"). There, the court dismissed a prima facie claim for personal jurisdiction over a foreign parent company in light of and after *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012).

A/S has demonstrated in its Opening Brief at 12-13, that as in *Auto Parts*, the relationship between the Danish parent and its American subsidiary is not such as to make the two companies a single entity for jurisdictional purposes. GE's attempt to differentiate the Danfoss corporate relationships from those that were held in *Auto Parts* to not even allege a prima facie case of alter ego jurisdiction rests on its contention that there is overlap between A/S and LLC at the officer and board member level, while in *Auto Parts* the overlap was between the foreign parent and a non-party subsidiary. Opp. Br. at 13. But once again, GE has its facts wrong.

7

In *Auto Parts*, directors of the foreign parent "held positions on the boards of directors of the U.S. subsidiaries" through October of 2009. 2013 U.S. Dist. LEXIS 80336 at *27-28. The conspiracy period in *Auto Parts,* as established by a guilty plea in the underlying antitrust prosecution, was from January 2006 through February 2010. *In re Autmotive Parts Antitrust Litig.,* Nos. 12-MD-02311; 2:12-CV-00102; 2:12-CV-00103, 2013 U.S. Dist. LEXIS 80338, at *37 (E.D. Mich. June 6, 2013). For three and three-quarter years out of a four year criminal conspiracy period, the defendant parent and the defendant subsidiaries had common directors. Despite this overlap the parent company's motion to dismiss was granted. And in the instant case, the "overlap" is even more tenuous; members of the A/S executive committee, not A/S board members, sat on the board of the American subsidiary, but that board never met, and its only function, carried out through a consent to waiver of the annual meeting, was to appoint the directors and officers of LLC for the following year. No A/S officer or director ever served as an officer of LLC, and no LLC officer ever presented anything to the LLC board.

In every relevant way, the role of the parent company in *Auto Parts* and the role of A/S are the same. The parent in each case provides certain financial and administrative services, consolidates its group financial reporting, and shares information technology with its subsidiaries. While A/S manufactures products

8

abroad for sale abroad, unlike the parent in *Auto Parts*, A/S's U.S. sales are infinitesimal.[2] There is absolutely no justification for GE's repeated allegation that A/S does business in the U.S. to any degree that supports a claim of purposeful availment of the American market.

---

[2] In his initial declaration, Mr. Christiansen stated that A/S had made American sales of US$4,000 in 2011 and had recorded no sales in 2012. Declaration of Jesper Vaagelund Christiansen, dated Feb. 28, 2014, n.3. A further review of A/S records indicates that in 2012 A/S sold about US$20,000, and in 2013 about US$8,000, of its products to U.S. customers. April Christensen Decl. ¶18.

Under *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), it is incontestable that sales from a foreign parent to an American subsidiary are not "doing business" in the US by the parent. Daimler AG sold to MBUSA, its wholly owned American subsidiary, over $2 billion of vehicles for resale in California alone, yet the sales *to*, rather than *by*, the subsidiary were irrelevant. If, as GE suggests (Opp. Br. at 16), one could establish alter ego identity from sales between the parent and the subsidiary, then *Daimler* would necessarily have come out the other way, because the volume of activity that made MBUSA "at home" in California would have been attributed to the parent. And just to make the record clear, the Supreme Court in *Daimler* specifically noted that "Daimler argues … that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego." 134 S. Ct. at 759. GE's dismissal of *Daimler* in its Opposition Brief at note 3, is simply wrong. The Court held that it need not deal with the Ninth Circuit's view that jurisdiction could be sustained under an agency theory because "in no event can the appeals' courts analysis be sustained." *Id.* As the only possible ground to sustain jurisdiction over Daimler AG would have been on an alter ego theory, just as the only possible ground available to GE here is alter ego theory, the reversal in *Daimler* is conclusive that sales in bulk to a wholly-owned subsidiary do not result in alter ego jurisdiction.

9

### 2. There Is No Jurisdiction Under *Conley*

In *Conley v. MLT, Inc.*, No. 11-11205, 2012 U.S. Dist. LEXIS 71821 (E.D. Mich. May 23, 2012), this Court found that the American sales subsidiary of a foreign hotel chain that shared many officers with its parent, was not designed to earn a profit and had its budget controlled from abroad, was the alter ego of its parent.[3] The distinctions from the present case are legion. The *Conley* parent was not a multinational conglomerate with hundreds of subsidiaries throughout the world. Day to day direction was conceded to be at the parent level, enforced through the parent's officers on site. Most importantly, the subsidiary's vice president of marketing reported directly to the parent's senior vice president for

---

[3] As this Court demonstrated in *Conley*, when analyzing a claim of specific jurisdiction it is the contacts of the particular defendant itself, and not of its claimed alter ego within the forum, that is relevant to the jurisdictional inquiry. A/S Opening Br. at 15. The suggestion to the contrary in *Pro Tanks Leasing v. Midwest Propane & Refined Fuels, LLC*, No. 5:12-CV-00129, 2013 U.S. Dist. LEXIS 177221 (W.D. Ky. Dec. 18, 2013) does not survive the holding in *Daimler*, 134 S.Ct. at 760, that even if the one imputes the forum contacts of a subsidiary to the parent – whether under an alter ego or an agency theory – it is the "slim contacts" of the parent, and not the multiple and voluminous contacts of the subsidiary, that are relevant to jurisdiction.

If the inquiry is limited to the contacts of A/S with the U.S., there can be no specific jurisdiction because GE's claims do not arise out of the activity of A/S here. A/S simply does not sell, and never has sold, household compressors to customers in the U.S., and GE's substantive claims all stem from alleged pricefixing of household compressors. GE's cause of action just does not arise out of the U.S. contacts of A/S, and the GE case therefore flounders under the second prong of the *Theunissen* test. Opening Br. at 14 (citing *Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991)).

10

sales and marketing, and the subsidiary officer testified at deposition both that he had to receive authorization from the parent's vice president for various decisions, "and that Mr. Kirby [the parent's VP] makes the ultimate determination if there is a disagreement between himself and Mr. Kirby on 'what course to take.'" *Id.* at *13. Compare the Danfoss situation; no common officers, no ongoing communication between parent and subsidiary, competitive arm's length pricing, local budgeting and financial auditing.

### 3. There Is No Jurisdiction Under *Carrier*

GE, faced with the decision in *Daimler*, 134 S.Ct. 746, has all but abandoned any claim that this Court has general jurisdiction over A/S. Opp. Br. at 24. It acknowledges that in order to obtain specific jurisdiction, it must allege and ultimately establish that A/S is the alter ego of Flensburg and LLC.

GE suggests that the factual connections between A/S and its two co-defendant subsidiaries are "strikingly similar" to those between the holding company charged with Sherman Act violations in *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir 2012) and its co-defendant subsidiaries. While there are simplistic kindred aspects, such as 100% ownership of the subsidiary's stock at the parent level and membership by parent executives on the U.S. subsidiary's board, the differences are far more "striking."

11

A critical distinction between *Carrier* and this case is that in *Carrier,* the Finnish subsidiary manufacturing the alleged price fixed products, a wholly owned subsidiary of the parent company, was itself the parent of the American sales company. Here, A/S owns Flensburg, the subsidiary that previously manufactured household and light commercial compressors, and also owns LLC, the US sales subsidiary. However, Flensburg neither owns LLC, nor shares or ever shared any officers or directors with LLC. In fact, as President John Galyen averred, LLC fills its order from the entire universe of Danfoss Group companies, and bills them for each item it sells under the "arms' length principal." Declaration of John Galyen ¶12. Whatever the arguable validity of viewing companies in a vertical chain as functional divisions of the ultimate parent, there is no case support for treating sister companies as if they were parent and child.

Key to GE's argument is its oft-repeated claim that A/S had day to day control of its subsidiaries. We have demonstrated *supra* that this is a mis-reading of the Danfoss Group publications, but our point here is that unlike in *Carrier*, GE has not alleged, because it would be untrue, that "many high-ranking [A/S] executives held day-to-day management responsibilities with the U.S. subsidiaries." *Carrier*, 673 F.3d at 450.

nydocs1-1031003.7

### D. GE Must Prove Personal Jurisdiction Over Danfoss A/S by a Preponderance of the Evidence

The law in the Sixth Circuit is clear; it is a plaintiff's burden to plead *and prove* that the Court has personal jurisdiction over a defendant who contests the point. Even *Carrier*, which grants plaintiff the most leeway of any reported decision as to its pleading obligation, specifically reserves for further litigation whether plaintiff therein can prove its allegations.

A/S contends that GE has not pled a prima facie case for jurisdiction. It does not even attempt to allege that A/S created its subsidiaries for a wrongful purpose, let alone to commit a fraud, an essential pleading requirement, see footnote 1 *supra*. Its pleading amounts to nothing other than a description of how a huge organization like the Danfoss Group, or for that matter GE itself, sets about running a multitude of operations and businesses throughout the world in a way to promote fundamental goals without undertaking the quotidian tasks of carrying those goals out. The instant inquiry is well encapsulated in a single sentence in *McAnaney v. Astoria Financial Corp.*, 665 F. Supp. 2d 132, 144-145 (E.D.N.Y. 2009):

> The facts which plaintiffs claim indicate excessive control and domination in the instant case -- controlling ownership interest in subsidiaries, reporting of consolidated results of such subsidiaries in public filings, and overlapping directors and officers between parent

13

and subsidiary corporations – are commonplace as generally-accepted corporate form, and are insufficient without more, as a matter of law, to eviscerate the presumption of corporate separateness.

A/S respectfully submits that there is no "more" here, and its motion should be summarily granted. But if the Court believes that the minimal pleading requirements have been met, then in light of the very strong factual showing made by A/S as to how the Danfoss Group actually runs, this Court should order jurisdictional discovery and a hearing at which GE will have to "establish that jurisdiction exists by the same standard that would obtain if the matter were deferred to trial: the preponderance of the evidence." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). To compel A/S to go through full merits discovery and a trial before GE is forced to meet its burden of proof is to impose an unreasonable burden on a foreign company that does nothing more than own an American subsidiary.

## II. CONCLUSION

For the reasons set forth in Danfoss A/S' motion and supporting papers, Danfoss A/S respectfully requests that this Court dismiss the Complaint herein or alternatively order jurisdictional discovery and an evidentiary hearing.

14

Respectfully Submitted on April 30, 2014,

by: s/ Lawrence Kill
ANDERSON KILL, P.C.
Lawrence Kill (NY No.1312933)
Jeffrey Glen (NY No.1246099)
Carrie Maylor DiCanio (NY No.4736773)
1251 Avenue of the Americas
New York, NY 10020
Tele: (212) 278-1722
E-Mail:lkill@andersonkill.com

by: s/John W. Allen
VARNUM LLP
John W. Allen (P10120)
251 North Rose Street, 4th Floor
Kalamazoo, MI 49007
Tele: (269) 553-3501
Fax: (269) 382-2382
E-Mail:jwallen@varnumlaw.com

*Attorneys for Danfoss A/S*

15