# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE: REFRIGERANT COMPRESSORS ANTITRUST LITIGATION | Master Docket No. 2:09-MD-2042 MDL<br><br>Hon. Sean F. Cox |
| THIS DOCUMENT RELATES TO:<br><br>*General Electric Company v. Whirlpool Corporation, et al.* | Civil Action No. 2:13-cv-12638 |

## DECLARATION OF JESPER VAAGELUND CHRISTENSEN

Pursuant to 28 U.S.C. § 1746, Jesper Vaagelund Christensen declares as follows:

1. My name is Jesper Vaagelund Christensen. This is my second declaration made in support of the motion of Danfoss A/S to dismiss this action for lack of personal jurisdiction; my initial declaration was signed 28 February, 2014 (the "February Declaration").

2. I make this declaration to correct certain inaccuracies in the Opposition to Motion by Defendant Danfoss A/S to Dismiss the Complaint,

1

nydocs1-1030990.7

submitted by plaintiff General Electric Company ("GE") and dated April 8, 2014, and to supplement my February Declaration.

3. GE alleges that "Danfoss A/S 'corporate officers' were in charge of the household and commercial compressor divisions of the company," referencing the 1999 Danfoss Group Annual Report at page 3. It appears that GE is not aware that in 1999 and thereafter household and light commercial compressors were manufactured by separately incorporated and managed companies that were grouped for overall supervision and reporting purposes in the Danfoss Household Compressors division ("HC"). HC was an administrative grouping of companies within the Danfoss Group, and was itself not a corporate entity.

4. Neither in 1999 nor at any time thereafter was the senior executive of HC a "corporate officer," or even an employee, of Danfoss A/S.

5. Karsten Moe, who in 1999 was the senior executive for HC, was then the managing director of Danfoss Flensburg GmbH, and was on the payroll of that company.

6. In 2001, Mr. Moe was succeeded as senior executive for HC by Jørn Westermann, who likewise became the managing director of Danfoss Flensburg GmbH and went on the payroll of that company.

7. In 2007, Mr. Westermann was succeeded as senior executive for HC by Mogens Søholm, who likewise became the managing director of Danfoss Flensburg GmbH and went on the payroll of that company.

8. Within the Danfoss Group, it is generally the case that product lines are manufactured by plants in different countries, and each plant is owned by a company registered in such country. Each company within the Danfoss Group is separately listed in the Group's Annual Reports, see e.g. pages 32-33 of the 1999 Annual Report, which is Exhibit 8 to the Declaration of David M. Schnorrenberg submitted by GE in support of GE's Opposition to the Danfoss A/S motion.

9. As is true of every company within the Danfoss Group, the performance of Danfoss Flensburg GmbH was reported on an annual basis to the Danfoss A/S executive committee, both through communication of each company's managing director and through the individually audited financial reports of such company, which form the basis of the Group's consolidated financial reports.

10. A typical example of the difference in authority and control between the parent company and the subsidiary companies is provided by the decision in 2009 to close the production at HC's plant in Flensburg, Germany (owned by

3

nydocs1-1030990.7

Danfoss Flensburg GmbH), see Exhibit 3 to the Declaration of David M. Schnorrenberg.

11. Such a fundamental decision was naturally taken at the A/S level, but responsibility for its implementation lay with the managing director of Danfoss Flensburg GmbH and senior executive of HC, who at the time was Mr. Søholm.

12. The suggestion that Mr. Kim Fausing, the Chief Operating Officer of Danfoss A/S at the time, "managed" the closing, GE opposition at page 10, is wrong. Mr. Fausing announced the approval of the closing as a matter of fundamental Group policy, but otherwise had no involvement.

13. Until its reorganization as a limited liability company in July 2009, Danfoss LLC was a corporation, named Danfoss Inc., organized under the laws of Delaware. As such, it was and remains the understanding of the Danfoss A/S executive committee that Danfoss Inc. was required to have a board of directors with the power and duty to appoint the senior officers of that corporation, and to appoint the members of the board.

14. To fulfill these legal requirements, members of the Danfoss A/S Executive Committee were appointed as the titular members of the board of directors of Danfoss Inc., but in that capacity undertook no direction or control of

that company. I have attached as Exhibit A to this declaration copies of written consents to take the indicated actions (appointment of directors and officers) without a meeting for a number of years in the 2000-2009 period. While I have not found a written consent for each year, I am informed by my colleagues on the Danfoss A/S executive committee that the board of Danfoss Inc. never met in the indicated period.

15. I am perplexed by GE's statement, opposition at page 14, that the absence of meetings of the board of directors of Danfoss LLC indicates the complete control of Danfoss A/S over Danfoss LLC. Let me reiterate; the fundamental business policies of the Danfoss Group are determined by the Danfoss A/S executive committee. But implementation thereof is in the hands of senior management of each subsidiary company. Were the executive committee members to actually oversee, let alone undertake, the day to day control of the hundreds of Danfoss Group companies, the corporate goals that the owners of the Group have placed in the hands of the executive committee and which have led to the notable success of the Group could never occur. To be blunt, we run the Group by making the big decisions like opening and closing plants, and by appointing senior management of the subsidiaries who are charged with making their efforts succeed.

5

Each subsidiary is expected to act in its best interests, and in so doing each subsidiary carries out the policies of the Group as a whole.

16. Thus, for example, the Danfoss A/S executive committee did not know, and did not care to know, whether John Galyen, the President (the equivalent in U.S. parlance of Managing Director) of Danfoss LLC, filled orders for products bearing the Danfoss name and carrying the Danfoss reputation from companies in Slovenia or China. As he stated in his declaration previously submitted, Danfoss LLC buys its product on an arm's length basis from whichever Danfoss company can fill the order, and sells it to U.S. customers at the most advantageous price, to make his company as successful as possible. When Danfoss LLC succeeds, Danfoss A/S succeeds, and Mr. Galyen succeeds.

17. GE's allegations that the Danfoss Group subsidiaries are managed on a day to day basis by the parent company, Danfoss A/S, is wrong. The hallmark of the Group, and the fundamental reason why Danfoss A/S is not the alter ego of its subsidiaries, is that the buck stops at the subsidiary level.

18. I wish to correct note 3 of my February declaration. A further review of A/S records indicates that in 2012 Danfoss A/S sold about US$20,000, and in 2013 about US$8,000, of products to specific U.S. customers.

6

19. I have been informed by our American trial counsel that in the event that this Court is of the view that GE has pled a prima facie case that the Court has jurisdiction over Danfoss A/S, the Court may provide the parties with an opportunity for discovery limited to the jurisdictional claims followed by a hearing on jurisdiction, or may permit the case to continue and reserve testimony and a hearing on jurisdiction for a later time. I respectfully request that if the motion is not granted based on the papers presently submitted, that the limited discovery and hearing option be selected. Full merits discovery in this case might very well involve inquiry by GE into the worldwide operations of the Danfoss Group over a period of nearly 20 years, which would be enormously expensive, disruptive, and I contend unfair, when a far less intrusive procedural approach is available.

WHEREFORE, I respectfully request that the motion to dismiss Danfoss A/S as a defendant in this litigation be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the 29 day of April, 2014.

JESPER VAAGELUND CHRISTENSEN